Chad S. Hummel (SBN 139055)
chummel@sidley.com
Amy P. Lally (SBN 198555)
alally@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: (310) 595-9662
Facsimile: (310) 595-9501

Eric B. Schwartz (SBN 266554)
eschwartz@sidley.com
Anna Tutundjian (SBN 309969)
atutundjian@sidley.com
Marissa X. Hernandez (SBN 341449)
marissa.hernandez@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Attorneys for Defendant
FASHION NOVA, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN ALCAZAR, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FASHION NOVA, INC., a California Corporation, and DOES 1 to 10, inclusive,<br><br>Defendants. | Case No. 4:20-cv-01434-JST<br><br>Assigned to Hon. Jon S. Tigar<br><br>**DEFENDANT FASHION NOVA, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date:    January 4, 2024<br>Trial Date:    April 8, 2024<br>Complaint Filed:  February 26, 2020 |

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that on January 4, 2024, at 2:00 p.m., or as soon thereafter as counsel may be heard, before the Honorable Jon S. Tigar in Courtroom 6 of the above-entitled Court, located at 1301 Clay Street, Oakland, California via Zoom webinar, Defendant Fashion Nova, Inc. will and hereby does move for summary judgment on all claims for relief asserted by Plaintiff pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Defendant seeks and is entitled to summary judgment under Rule 56 because the undisputed facts demonstrate that Plaintiff cannot establish essential elements of his claims under the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. ("ADA"), and California's Unruh Civil Rights Act, California Civil Code § 51 *et seq*.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, any reply documents to be submitted in support, the pleadings on file herein, exhibits and declarations attached in support, and upon such other oral or documentary evidence as may be presented at the time of the hearing on this Motion.

## **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

INTRODUCTION ...................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................... 2

      A.    Screen Reading Technology ........................................................... 2

      B.    Fashion Nova ................................................................................. 2

      C.    Procedural History ........................................................................ 3

LEGAL STANDARD.................................................................................................. 4

ARGUMENT ............................................................................................................... 5

    I.    SUMMARY JUDGMENT SHOULD BE GRANTED FOR FASHION
         NOVA ON PLAINTIFF'S ADA CLAIM (COUNT I). ................................. 5

      A.    The ADA does not apply to Fashion Nova's website because it is not a
           "place of public accommodation" and does not have sufficient nexus
           to a "place of public accommodation."............................................ 6

      B.    Plaintiff cannot show that he was discriminated against in his
           enjoyment of a place of public accommodation because of Fashion
           Nova's website design. ................................................................ 10

    II.   SUMMARY JUDGMENT SHOULD BE GRANTED FOR FASHION
         NOVA ON PLAINTIFF'S UNRUH ACT CLAIM (COUNT II). ........................... 12

CONCLUSION ......................................................................................................... 16

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................................................................................................4

*Belton v. Comcast Cable Holdings, LLC*,
151 Cal. App. 4th 1224 (2007) ...................................................................................15

*Brooks v. Lola & Soto Business Group, Inc.*,
No. 2:21-CV-00158-TLN-DB, 2022 WL 616798 (E.D. Cal. Mar. 2, 2022)............9, 10

*Brooks v. See's Candies, Inc.*,
No. 2:20-CV-01236-MCE-DB, 2021 WL 3602153 (E.D. Cal. Aug. 13, 2021)........9, 10

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................................................................................................5

*Cullen v. Netflix, Inc.*,
600 F. App'x 508 (9th Cir. 2015) ................................................................................6

*Cullen v. Netflix, Inc.*,
880 F. Supp. 2d 1017 (N.D. Cal. 2012) ...............................................................15, 16

*Earll v. eBay, Inc.*,
599 F. App'x 695 (9th Cir. 2015) ..............................................................1, 6, 14, 15

*Erasmus v. Ryan A. Dunlop, D.M.D., Inc.*,
No. 1:21-cv-01236-AWI-SAB, 2022 WL 2805961 (E.D. Cal. July 18, 2022) ...........10

*Estavillo v. Blizzard Entm't, Inc.*,
No. 5:19-CV-05540-EJD, 2019 WL 6612061 (N.D. Cal. Dec. 5, 2019) .....................6

*Gomez v. Gates Ests., Inc.*,
No. C 21-7147 WHA, 2022 WL 458465 (N.D. Cal. Feb. 15, 2022)......................10, 11

*Gomez v. Miersch*,
No. 21-CV-08936-CRB, 2022 WL 1271009 (N.D. Cal. Apr. 28, 2022)......................11

*Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*,
742 F.3d 414 (9th Cir. 2014) .............................................................12, 13, 14, 16

*Martinez v. Cot'n Wash, Inc.*,
81 Cal. App. 5th 1026 (2022) .......................................................................... *passim*

*Nat'l Fed. of the Blind v. Target Corp.*,
582 F. Supp. 2d 1185 (2007) ....................................................................................11

*National Federation of the Blind v. Target Corp.*,
452 F. Supp. 2d 946 (N.D. Cal. 2006) ........................................................................7

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
   210 F.3d 1099 (9th Cir. 2000) ............................................................................4, 12

*Ouellette v. Viacom*,
   No. CV 10-133-M-DWM-JCL, 2011 WL 1882780 (D. Mont. Mar. 31, 2011) ...........................11

*Price v. Everglades Coll., Inc.*,
   No. 6:18-cv-492-Orl-31GJK, 2018 WL 3428156 (M.D. Fla. July 16, 2018)..............................10

*Rios v. New York & Co., Inc.*,
   No. 2:17-cv-04676-ODW(AGRx), 2017 WL 5564530 (C.D. Cal. Nov. 16, 2017) ......................7

*Robles v. Domino's Pizza*,
   LLC, 913 F.3d 898 (9th Cir. 2019) .....................................................................7, 10

*Summers v. Teichert & Son, Inc.*,
   127 F.3d 1150 (9th Cir. 1997) ............................................................................4, 11

*Young v. Facebook, Inc.*,
   790 F. Supp. 2d 1110 (N.D. Cal. 2011) ................................................................6, 15

**Statutes**

42 U.S.C. § 12103(1)(B) .........................................................................................7

42 U.S.C. § 12182(a) .......................................................................................1, 5, 10

42 U.S.C. § 12182(b)(2)(A)(iii) ..........................................................................1, 5, 10

Fed. R. Civ. P. 56(a)..............................................................................................4

**Other Authorities**

Americans with Disabilities Act ....................................................................... *passim*

California's Unruh Civil Rights Act .................................................................... *passim*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## <u>INTRODUCTION</u>

Plaintiff Juan Alcazar claims that Fashion Nova, Inc.'s website is inaccessible to visually impaired people, in violation of the Americans with Disabilities Act ("ADA") and California's Unruh Civil Rights Act. Because the undisputed facts fail to substantiate Plaintiff's claims, Fashion Nova is entitled to summary judgment.

Two separate failures of proof doom Plaintiff's ADA claim. *First*, Plaintiff cannot point to facts establishing that the ADA even applies to Fashion Nova's website. Websites, standing alone, are not "*place[s]* of public accommodation" covered by the ADA. 42 U.S.C. § 12182(a) (emphasis added); *see Earll v. eBay, Inc.*, 599 F. App'x 695, 696 (9th Cir. 2015) (mem.). So to make out an ADA claim, Plaintiff must supply proof that Fashion Nova's website integrates with or is a means to access Fashion Nova's products at its physical locations. He cannot do so: the undisputed evidence shows that Fashion Nova is an almost exclusively online retailer, and its website does not serve as a gateway, ordering system, or marketing tool for the physical stores. *Second*, even if the ADA applies to Fashion Nova's website, Plaintiff has no claim under the ADA because there is no evidence that he was denied equal enjoyment of Fashion Nova's stores "*because of*" its website design. 42 U.S.C. § 12182(b)(2)(A)(iii) (emphasis added). To survive summary judgment, Plaintiff must do more than allege a theory that the website impeded his access to the physical locations; he must present actual evidence that the website has done so. Because there is no such evidence, Fashion Nova is entitled to summary judgment on the ADA claim.

For the same two reasons, Plaintiff cannot maintain a claim under the Unruh Act based on a violation of the ADA. Nor can he maintain a claim under the Unruh Act based on the theory that Fashion Nova intentionally discriminated against him based on his disability. Plaintiff's intentional discrimination theory—that Fashion Nova knew about access barriers and failed to correct them—has been rejected as insufficient time and again by California courts, courts in this district, and the Ninth Circuit. Intentional discrimination requires willful and affirmative misconduct with the specific intent to discriminate. Because there is no evidence of that here,

Fashion Nova is entitled to summary judgment on the Unruh Act claim.

<u>**FACTUAL BACKGROUND**</u>

**A.   Screen Reading Technology**

Blind and visually impaired people often use keyboards and screen-reading software that vocalizes visual information in order to use computers and the internet. Dkt. 1, Class Action Complaint ("Compl.") ¶ 14. The degree to which a blind or visually impaired user can access and utilize a website varies considerably from individual to individual as a result of a number of factors, including the web browser, screen reader, operating system, and computer that is used, as well as the user's familiarities with the computer, web browser, and screen reader. *See* Dkt. 57-1, Declaration of Aaron Cannon ("Cannon Decl.") ¶¶ 4–8. For example, websites can be usable in one browser but not others, or compatible with one type of screen reader but not others. *Id.* ¶¶ 5–6. The operating system and type of computer can impact not only what web browser and screen readers are usable, but also how well the screen reader works. *Id.* ¶ 7. And one's ability to use a screen reader depends at least in part on one's training and experience with that screen reader. *Id.* ¶ 8.

**B.   Fashion Nova**

Fashion Nova is a US-based fashion retail company that sells a variety of men's and women's clothing, shoes, and other accessories. Compl. ¶ 5. The company operates predominantly online, and it has just five brick-and-mortar locations—all in Southern California—in Burbank, Montebello, Northridge, Panorama City, and Los Angeles. Declaration of Ricky Chandnani ("Chandnani Decl.") ¶ 4. The merchandise available in Fashion Nova's physical stores is available online, but only approximately 3.8% of merchandise available online is also available in its physical stores. *Id.* ¶ 7. Fashion Nova does not offer online customers the option of in-store pickup for online merchandise purchases. *Id.* ¶ 8. Fashion Nova also does not sell or advertise merchandise from its physical locations with coupons or promotions on its website or elsewhere. *Id.* ¶ 9. Fashion Nova customers also do not use the website to reach the physical stores. "For example, in the seven days ending November 29, 2023, 778,412 unique searches were run on the www.fashionnova.com website and only 1 of those searches was for 'store' and only 1 search was

1     for 'stores.'" *Id*. ¶ 10. Online sales account for 99.6% of Fashion Nova's revenue. *Id*. ¶ 10.

2           Fashion Nova has devoted considerable time and resources to ensuring that its website is

3     accessible to all members of the public, including visually impaired individuals. For example,

4     Fashion Nova hired third-party companies, including Accessibility Partners, accessiBe, Dyode,

5     and Interstellar, to perform at least annual audits of its website to identify potential accessibility

6     issues for its internal technical team and third-party vendors to resolve. *See* Declaration of Eric B.

7     Schwartz ("Schwartz Decl."), Ex. 1 (Fashion Nova's Supp. Responses to Plaintiff's First Set of

8     Special Interrogatories ("Supp. Responses")) Nos. 19–23; *Id.*, Ex. 2 (Deposition of Roger Satur

9     ("Satur Dep.")) 123:8–15, 124:3–9, 137:19–22, 139:20–23, 193:22–25. Following the audits,

10    Fashion Nova met with the companies that performed the audits, and based on the companies'

11    feedback, improved the accessibility of its website—with the goal of conforming with the World

12    Wide Web Consortium's Success criteria for version 2.0 of the Web Content Accessibility

13    Guidelines ("WCAG 2.0"),[1] Compl. ¶ 17, and making the "website accessible to as many people

14    as possible," Schwartz Decl., Ex. 2 (Satur Dep.) 194:6–9, 198:25–199:15, 215:14–23, 217:7–13,

15    246:13–19. Moreover, in late 2020 or early 2021, rather than accept one auditor's assessment that

16    Fashion Nova's website was "compliant" with WCAG 2.1 level standards (*see* Schwartz Decl.,

17    Ex. 3 (FASHIONNOVA00000165–91), accessiBe's October 2020 Compliance Audit at -165),

18    Fashion Nova switched third-party auditors and instead hired a "better partner" that would

19    perform a "more thorough" audit. Schwartz Decl., Ex. 2 (Satur Dep.) 236:1–12.

20         **C.**     **Procedural History**

21          Plaintiff, a resident of Northern California, on behalf of himself and others similarly

22    situated, alleges that Fashion Nova's website, www.fashionnova.com, violates the regulations

23    underlying Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*., and

24    California's Unruh Act, California Civil Code § 51 *et seq*. Plaintiff alleges that he "encountered

25    multiple access barriers" on Fashion Nova's website, which "deterred [him], on a regular basis,

26    from accessing [Fashion Nova's] website." *Id*. ¶ 25; *see also id*. ¶ 28. Plaintiff further alleges that

_____

27

28    [1] The WCAG 2.0 are guidelines for making websites accessible to blind and visually-impaired people, and are adopted by many companies to ensure that their websites are accessible with screen reading software. Compl. ¶ 17.

the "access barriers . . . deterred [him] from visiting [Fashion Nova's] physical locations, and enjoying them equal to sighted individuals because: Plaintiff was unable to find the location and hours of operation of [Fashion Nova's] store locations on its website, preventing Plaintiff from visiting the locations to view and purchase products and/or services." *Id.* ¶ 30. Additionally, Plaintiff alleges that Fashion Nova "engaged in acts of intentional discrimination" because Fashion Nova "construct[ed] and maintain[ed] a website that is inaccessible to visually-impaired individuals," "fail[ed] to construct and maintain a website that is ... equally accessible to visually-impaired individuals," and "fail[ed] to take actions to correct these access barriers." *Id.* ¶ 33. On behalf of himself and those similarly situated, Plaintiff seeks both injunctive relief under the ADA and the Unruh Act, *id.* ¶¶ 54–59, as well as statutory damages of $4,000 per offense per person under the Unruh Act, *see id.* ¶¶ 60–67 & Prayer for Relief ¶ C. On September 9, 2022, the Court granted Plaintiff's motion for class certification. *See* Dkt. 70, Order Granting Motion for Class Certification.

## LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if there is sufficient evidence "such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When deciding a motion for summary judgment, the court must draw "all justifiable inferences" in the nonmoving party's favor and may not weigh evidence or make credibility determinations. *Id.* at 255. A "mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997) (quoting *Anderson*, 477 U.S. at 252).

Where the party moving for summary judgment would not bear the burden of proof at trial, that party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential

1   element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz*

2   *Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party satisfies its initial burden of

3   production, the nonmoving party must produce admissible evidence to show that a genuine issue

4   of material fact exists. *Id.* at 1102–03. If the nonmoving party fails to make this showing, the

5   moving party is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23

6   (1986).

7                                              **ARGUMENT**

8   **I.    SUMMARY JUDGMENT SHOULD BE GRANTED FOR FASHION NOVA ON
           PLAINTIFF'S ADA CLAIM (COUNT I).**
9

10          The ADA provides that "[n]o individual shall be discriminated against on the basis of

11  disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages,

12  or accommodations of any place of public accommodation by any person who owns, leases (or

13  leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). A place of public

14  accommodation engages in unlawful discrimination if it fails to "take such steps as may be

15  necessary to ensure that no individual with a disability is excluded, denied services, segregated or

16  otherwise treated differently than other individuals because of the absence of auxiliary aids and

17  services." *Id.* § 12182(b)(2)(A)(iii).

18          Plaintiff's ADA claim fails for two independent reasons. *First*, the ADA does not apply to

19  Fashion Nova's website because the site, standing alone, is not a place of public accommodation.

20  Instead, concerns about website access can support an ADA claim only when the website has a

21  sufficient nexus to a place of public accommodation, which, in this case, is one of Fashion Nova's

22  physical stores. Plaintiff has failed to produce evidence that the Fashion Nova website integrates

23  with or is a means to access Fashion Nova's products at its physical locations. *Second*, even if the

24  ADA applies to Fashion Nova's website, Plaintiff cannot show that he was discriminated against

25  in his use or enjoyment of a place of public accommodation "because of" Fashion Nova's website

26  design.

27

28

**A.    The ADA does not apply to Fashion Nova's website because it is not a "place of public accommodation" and does not have sufficient nexus to a "place of public accommodation."**

The gravamen of Plaintiff's Complaint is that Fashion Nova has violated Section 12182(a) of the ADA by denying him and other legally blind persons equal access to a "place of public accommodation." Plaintiff does not allege that Fashion Nova's e-commerce website, standing alone, is a "place of public accommodation" under the ADA. That claim would fail under settled Ninth Circuit law, which holds that websites on their own are not covered by the ADA. In *Earll v. eBay, Inc.*, for example, the Ninth Circuit held that eBay, also an e-commerce website, "is not subject to the ADA" because its "services are not connected to any 'actual, physical place[].'" 599 F. App'x at 696 (quoting *Weyer v. TwentiethCentury Fox Film* Corp., 198 F.3d 1104, 1114 (9th Cir. 2000)). The *Earll* court relied upon the Ninth Circuit's construction of the ADA in *Weyer*, which "interpreted the term 'place of public accommodation' to require 'some connection between the good or service complained of and an actual physical place,'" and concluded that such a connection is lacking for an e-commerce website such as eBay. *Id.* (quoting *Weyer*, 198 F.3d at 1114). The Ninth Circuit likewise has held that Netflix, a web-based video streaming service, "is not subject to the ADA" because its "services are not connected to any 'actual, physical place[].'" *Cullen v. Netflix, Inc.*, 600 F. App'x 508, 509 (9th Cir. 2015) (mem.) (quoting *Weyer*, 198 F.3d at 1114).

This Court has similarly dismissed ADA claims against web-based businesses on the ground that they are not places of public accommodation under the statute. *E.g., Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1115 (N.D. Cal. 2011) (dismissing ADA claim because "Facebook operates only in cyberspace, and [] thus is not a 'place of public accommodation' as construed by the Ninth Circuit"); *Estavillo v. Blizzard Entm't, Inc.*, No. 5:19-CV-05540-EJD, 2019 WL 6612061, at *3–4 (N.D. Cal. Dec. 5, 2019) (dismissing ADA claim because Blizzard's "digital storefront" does not "function[] as a gateway to physical stores" and therefore does not "constitute[] a place of public accommodation under the ADA").

As the Complaint concedes, then, Plaintiff must prove that access to at least one of Fashion Nova's five physical stores—each of which is a "public accommodation[]"—was inhibited by

1   problems he encountered with the website because of his visual impairment. Compl. ¶¶ 5, 7, 57.

2   There is no evidence or even claim that the physical stores themselves have accessibility barriers

3   or are not in compliance with the ADA. Instead, Plaintiff alleges that the website is "a service,

4   privilege, or advantage of Defendant's services and product and locations," *id*. ¶ 7, and that the

5   "inaccessibility [of the website] denies visually-impaired customers full and equal enjoyment of

6   and access to the facilities and services, privileges, advantages, and accommodations that

7   Defendant made available to the non-disabled public," *id*. ¶ 57. The Complaint also cites

8   provisions of the ADA that can require entities to provide "auxiliary aids and services," *id*. ¶ 56,

9   which include "effective methods of making visually delivered materials available to individuals

10  with visual impairments," 42 U.S.C. § 12103(1)(B).

11         This kind of claim—one involving alleged inaccessibility to a website that prevents

12  disabled persons from using or enjoying a place of public accommodation—may succeed,

13  according to Ninth Circuit law, only if "the plaintiff establishes a nexus between the online

14  services and the physical place." *Rios v. New York & Co., Inc*., No. 2:17-cv-04676-ODW(AGRx),

15  2017 WL 5564530, at *3 (C.D. Cal. Nov. 16, 2017). In *Robles v. Domino's Pizza*, LLC, 913 F.3d

16  898 (9th Cir. 2019), for example, the Ninth Circuit held that the Domino's Pizza website and

17  mobile app could give rise to an ADA claim because they "facilitate[d] access to the goods and

18  services of a place of public accommodation . . . physical restaurants." *Id*. at 905. For Domino's,

19  the website and app were "two of the primary (and heavily advertised) means of ordering

20  Domino's products to be picked up at or delivered from Domino's restaurants." *Id*. at 905; *see*

21  *also id*. at 902, 905–06 (the website and app "connect customers to the goods and services of

22  Domino's physical restaurants" and offer "exclusive discounts").[2] Similarly, in *National*

23  *Federation of the Blind v. Target Corp*., 452 F. Supp. 2d 946, 952 (N.D. Cal. 2006), the court held

24  that Target's website gave rise to an ADA claim because it was "heavily integrated" with Target's

25  1,400 retail stores across the country and allowed customers to "perform functions related to

26  Target stores" and products, such as "refill[ing] a prescription," "order[ing] photo prints for pick-

27  ───────────────
    [2] The *Robles* court expressly reserved the question "whether the ADA covers the websites or apps
28  of a physical place of public accommodation where their inaccessibility does not impede access to
    the goods and services of a physical location." *Id*. at 905 n.6.

1   up at a store," and "print[ing] coupons to redeem at a store." *Id*. at 949, 954–55; *see also id*. at 956

2   n.4 ("Target treats Target.com as an extension of its stores" and a means to "gain access" to the

3   stores).

4           The undisputed facts make clear that Plaintiff has failed to establish the required nexus in

5   this case. Domino's and Target have a near-ubiquitous brick-and-mortar presence and have

6   established websites that are highly integrated with those physical stores. The websites are a

7   common means to access the products and services offered at their physical locations. Fashion

8   Nova, by contrast, is almost exclusively an online retailer, except for a limited brick-and-mortar

9   presence in greater Los Angeles. *See* https://www.fashionnova.com/pages/about-us (Fashion

10  Nova's "online store" has "become its major identifiable presence and primary source for

11  shoppers worldwide"). As a result, Plaintiff does not even allege, nor has he produced any

12  evidence, that Fashion Nova's website is, in any material sense, integrated with its five physical

13  stores. The website is not a means of purchasing items from the retail stores or even planning a

14  visit to those stores. Only approximately 3.8% of merchandise available online is even available in

15  Fashion Nova's physical stores. *See* Chandnani Decl. ¶ 7. Plaintiff has produced no evidence to

16  the contrary. In addition, Fashion Nova, unlike establishments like Target and Domino's, does not

17  offer online customers the option of in-store pickup for online merchandise purchases. *Id*. ¶ 8.

18  Fashion Nova also does not sell or advertise merchandise from its physical locations with coupons

19  or promotions on its website. *Id*. ¶ 9. Fashion Nova's online sales account for 99.6% of its

20  revenue. *Id.* at ¶ 10. In short, Fashion Nova has an "online store" and a few geographically

21  concentrated physical stores, but there is little connection between the two. The online store is the

22  principal business and does not serve as a "gateway," ordering system, or marketing tool for the

23  stores.

24          Given this backdrop, it is not surprising that Plaintiff does not allege in the Complaint—

25  and there is no evidence to show—that he suffered discrimination because he was unable to

26  purchase merchandise from Fashion Nova's stores via the website; unable to learn through the

27  website which items are sold in the stores or are in-stock in the stores at any given moment;

28  unable to order online merchandise for in-store pickup; or unable to take advantage of store

promotions offered through the website. *No customer* can do any of these things because the website is not integrated with the stores and does not offer these services.

Plaintiff has offered a single allegation purporting to link Fashion Nova's physical stores to its website. He claims he "was unable to find the location and hours of operation of Defendant's store locations on its website, preventing [him] from visiting the locations to view and purchase products and/or services." Compl. ¶ 30. But the hours of the five retail stores are not listed on Fashion Nova's website, so that supposed obstacle is unrelated to any visual impairment. Chandnani Decl. ¶ 5. Everyone visiting the website would be unable to find that information. Nor does the website contain a "store locator" function that enables a customer to search for nearby stores. *Id.* ¶ 6. Instead, the five store addresses are simply listed on a page on the website. *See* https://www.fashionnova.com/pages/locations.

Other courts have found identical allegations insufficient to establish the necessary nexus between a website and stores. In *Brooks v. See's Candies, Inc.*, No. 2:20-CV-01236-MCE-DB, 2021 WL 3602153 (E.D. Cal. Aug. 13, 2021), and *Brooks v. Lola & Soto Business Group, Inc.*, No. 2:21-CV-00158-TLN-DB, 2022 WL 616798 (E.D. Cal. Mar. 2, 2022), the courts dismissed the plaintiffs' ADA claims because the complaints were "devoid of any allegation that the website is integrated with Defendant's physical locations in any specific way." *See's Candies*, 2021 WL 3602153, at *4; *Lola & Soto*, 2022 WL 616798, at *7. Exactly like the Complaint here, the complaints in *See's* and *Lola & Soto* alleged "only that [the plaintiff] 'was unable to find the location and hours of operation of Defendant's locations on its website.'"[3] *See's Candies*, 2021

---

[3] *Compare* Compl. ¶ 30 ("These access barriers on Defendant's website have deterred Plaintiff from visiting Defendant's physical locations, and enjoying them equal to sighted individuals because: Plaintiff was unable to find the location and hours of operation of Defendant's store locations on its website, preventing Plaintiff from visiting the locations to view and purchase products and/or services."); *with* Amended Class Action Complaint, *Brooks v. See's Candies*, Inc., No. 2:20-CV-01236-MCE-DB (Sept. 1, 2021), ECF No. 20, ¶ 31 ("These access barriers on Defendant's website have deterred Plaintiff from visiting Defendant's physical locations, and enjoying them equal to sighted individuals because: Plaintiff was unable to find the location and hours of operation of Defendant's locations on its website, preventing Plaintiff from visiting the locations to view and purchase products and/or services."); *and* Class Action Complaint, *Brooks v. Lola & Soto Bus. Grp., Inc.*, No. 2:21-CV-00158-TLN-DB (Jan. 26, 2021), ECF No. 1, ¶ 32 ("These access barriers on Defendant's website have deterred Plaintiff from visiting Defendant's physical location and enjoying them equal to sighted individuals because: Plaintiff was unable to find the location and hours of operation of Defendant's store on its website, preventing Plaintiff

WL 3602153, at *3 (quoting complaint); *see also Lola & Soto*, 2022 WL 616798, at *1. And, as those courts recognized, the mere presence of location information on the website could not establish a nexus between the website and the physical stores. After all, a list of stores on the defendant's website "ha[s] no functional difference from the results obtained by a simple Google search for [the defendant's] shops on any internet browser." *See's Candies*, 2021 WL 3602153, at *3; *Lola & Soto*, 2022 WL 616798, at *7.

Plaintiff's ADA claim is legally insufficient for the same reason. The Complaint and the record are "devoid" of any allegations or evidence that Fashion Nova's stores and its website are integrated in any "specific" way. *See's Candies*, 2021 WL 3602153, at *3; *Lola & Soto*, 2022 WL 616798, at *7. His sole allegation pertinent to the nexus requirement concerns the store address information on the website. *See* Compl. ¶ 30. That information cannot make the website a "gateway" for gaining access to the stores: Such access is readily available elsewhere on the internet and in other public sources; any customer who wanted to shop at Fashion Nova's stores could easily learn how to do so even if Fashion Nova's website did not exist.

Plaintiff's ADA claim must therefore be dismissed because the allegations in the Complaint are insufficient as a matter of law. Nor could Plaintiff belatedly present facts to create a nexus. As shown, the undisputed facts establish that Fashion Nova's online store is its primary business, and that its website does not serve as a "gateway," ordering system, marketing tool, or anything else for the stores.

## B.    Plaintiff cannot show that he was discriminated against in his enjoyment of a place of public accommodation because of Fashion Nova's website design.

Even if the ADA applies to Fashion Nova's website, Plaintiff's ADA claim fails because he cannot establish that he was denied equal enjoyment of Fashion Nova's stores "*because of*" its website design. 42 U.S.C. § 12182(b)(2)(A)(iii) (emphasis added); *id*. § 12182(a).

Applying this statutory language, courts in the Ninth Circuit and elsewhere have explained that "the ADA protects [a] plaintiff's interest in using [a] website *only if* its inaccessibility

---

from visiting the location to purchase goods and/or services."). Plaintiff's counsel here was also counsel to the plaintiff (who was the same plaintiff) in both *See's Candies* and *Lola & Soto*.

impedes his access to … defendant's physical" locations—which are the relevant places of public accommodation. *Gomez v. Gates Ests., Inc.*, No. C 21-7147 WHA, 2022 WL 458465, at *4 (N.D. Cal. Feb. 15, 2022) (emphasis added) (applying *Robles*, 913 F.3d 898 and granting motion to dismiss).[4] Thus, Plaintiff's ADA claim can survive summary judgment only if there is "significant probative evidence," *Summers*, 127 F.3d at 1152, "that the inaccessibility of the website has deterred him from using the *services of the physical location*," *Gates Ests.*, 2022 WL 458465, at *4; *see also Summers*, 127 F.3d at 1152 (affirming summary judgment for defendant on ADA claim and explaining that "[s]ummary judgment may be granted if the evidence" supporting the complaint "is merely colorable or is not significantly probative" (cleaned up)).

Plaintiff's claim cannot clear that bar. As discussed above, his sole theory that the "website has deterred [him] from using the services of the physical" Fashion Nova stores, *Gates Ests.*, 2022 WL 458465, at *4, appears to be that he could not access the store hours or locations on Fashion Nova's website, *see* Compl. ¶ 30. The single fact supporting that theory is a sentence in Plaintiff's declaration accompanying his motion to certify the class: "I was not able to determine any store hours or locations while using the website."[5] Dkt. 56-5, Decl. of Juan Alcazar ("Alcazar Decl.") ¶ 6. That is not "significantly probative" evidence, *Summers*, 127 F.3d at 1152, that the website itself impeded Plaintiff from accessing Fashion Nova's physical stores. Plaintiff could easily have "locat[ed] (and tak[en] advantage of) [the] physical place[s] of accommodation," *Gomez v. Miersch*, No. 21-CV-08936-CRB, 2022 WL 1271009, at *2 (N.D. Cal. Apr. 28, 2022), by other

---

[4] *See also, e.g., Erasmus v. Ryan A. Dunlop, D.M.D., Inc.*, No. 1:21-cv-01236-AWI-SAB, 2022 WL 2805961, at *6 (E.D. Cal. July 18, 2022) (explaining that "a nexus requires web-based barriers to impede the plaintiff from accessing or ordering goods or services from a physical location"); *Price v. Everglades Coll., Inc.*, No. 6:18-cv-492-Orl-31GJK, 2018 WL 3428156, at *2 (M.D. Fla. July 16, 2018) ("[C]ourts in the Eleventh Circuit have distinguished between an inability to use a website to gain information about a physical location and an inability to use a website that impedes access to enjoy a physical location, holding that the former is insufficient to state a claim." (quotation marks omitted)); *Ouellette v. Viacom*, No. CV 10-133-M-DWM-JCL, 2011 WL 1882780, at *5 (D. Mont. Mar. 31, 2011), *report and recommendation adopted*, 2011 WL 1883190 (D. Mont. May 17, 2011) ("Absent allegations that a website impedes the plaintiff's access to a specific, physical, concrete space … a plaintiff's allegations fail to state a claim." (quotation marks omitted)).

[5] Again, the store hours are not listed on Fashion Nova's website, so Plaintiff's inability to learn that information from fashionnova.com could not have denied him equal enjoyment of the stores. Chandnani Decl. ¶ 5.

means—such as through a simple Google search. Indeed, given that Plaintiff resides several hundred miles away from any Fashion Nova physical store, the declaration's single sentence does not establish that Plaintiff's problems with the locations page on fashionnova.com caused him to be "unable to access the goods and services" at Fashion Nova's stores. *Nat'l Fed. of the Blind v. Target Corp.*, 582 F. Supp. 2d 1185, 1204 (2007) (granting Target's motion for summary judgment where plaintiff's declaration and other evidence failed to "demonstrate[] that his inability to access Target.com renders him unable to access the goods and services of Target stores").

Plaintiff has failed to present evidence establishing why he could not have learned the location of any physical store through other means. And he has failed to present evidence establishing what basis he would have to visit a physical store that was hundreds of miles from his home. Plaintiff's proof is insufficient, and his ADA claim cannot survive summary judgment.

## II.    SUMMARY JUDGMENT SHOULD BE GRANTED FOR FASHION NOVA ON PLAINTIFF'S UNRUH ACT CLAIM (COUNT II).

To establish a violation of the Unruh Act, Plaintiff must prove either that: (1) Fashion Nova violated the ADA, or (2) Fashion Nova intentionally discriminated against him based on his disability. *Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.* (GLAAD), 742 F.3d 414, 425 (9th Cir. 2014); *Martinez v. Cot'n Wash, Inc.*, 81 Cal. App. 5th 1026, 1035 (2022). For the reasons discussed in Part I, Plaintiff cannot maintain a claim under the Unruh Act based on an alleged violation of the ADA. As discussed below, Plaintiff also cannot maintain a claim under the Unruh Act on the second theory: On the undisputed facts in the record, no reasonable jury could find that Fashion Nova *intentionally* discriminated against Plaintiff based on his disability. *See Nissan Fire*, 210 F.3d at 1102 (summary judgment warranted where "nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial").

"[T]o establish a violation of the Unruh Act independent of a claim under the [ADA], [the plaintiff] must 'plead and prove intentional discrimination in public accommodations in violation of the terms of the Act.'" *GLAAD*, 742 F.3d at 425 (quoting *Munson v. Del Taco, Inc.*, 46 Cal. 4th

1    661, 668 (2009)). Because "the Unruh Act contemplates 'willful, affirmative misconduct on the

2    part of those who violate the Act,'" the plaintiff must "show[] more than the disparate impact of a

3    facially neutral policy." *Id*. (quoting *Koebke v. Bernardo Heights Country Club*, 36 Cal. 4th 824,

4    853 (2005)); *see also Martinez*, 81 Cal. App. 5th at 1036 ("[T]he Unruh Act requires allegations

5    supporting 'willful, affirmative misconduct' with the specific intent 'to accomplish discrimination

6    on the basis of [a protected trait].'" (quoting *Koebke*, 36 Cal. 4th at 853–54)). And a plaintiff must

7    show more than a defendant's "deliberate indifference"—that is, more than the "knowledge that a

8    protected right is substantially likely to be infringed upon, and a failure to act upon that

9    knowledge." *GLAAD*, 742 F.3d at 427; *see also Martinez*, 81 Cal. App. 5th at 1038 (a company's

10   "failure to address known discriminatory effects of a policy" is not "sufficient to establish

11   intentional discrimination under the Unruh Act"). Instead, a plaintiff must show "willful,

12   affirmative misconduct with the specific intent to accomplish discrimination on the basis of a

13   protected trait." *Martinez*, 81 Cal. App. 5th at 1036 (cleaned up).

14          There is no evidence that would allow a reasonable jury to find that Fashion Nova

15   intentionally discriminated against Plaintiff or any other Class Member on the basis of their

16   disability. Plaintiff's intentional discrimination theory is that (1) Fashion Nova "constructed a

17   website that is inaccessible to Plaintiff and Class Members"; (2) Fashion Nova "maintains the

18   website in [an] inaccessible form"; and (3) Fashion Nova "has failed to take adequate actions to

19   correct these barriers even after being notified of the discrimination that such barriers cause."

20   Compl. ¶ 62; *see also id*. ¶¶ 32–33 (alleging Fashion Nova had "actual knowledge of the access

21   barriers that make [its website] inaccessible and independently unusable by blind and visually

22   impaired people" yet "fail[ed] to take actions to correct these access barriers"). Such allegations—

23   even if supported by undisputed evidence—are not sufficient to prove an Unruh Act violation

24   premised on intentional discrimination.

25          The California Court of Appeal recently rejected a virtually identical Unruh Act claim. The

26   plaintiff in *Martinez* was "permanently blind and use[d] screen readers in order to access the

27   internet and read website content." 81 Cal. App. 5th at 1034 (quoting complaint). He alleged that

28   "'it was [Cot'n Wash]'s policy and practice to deny blind users, including [the plaintiff] equal

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

1    enjoyment of and access to [its] website' by 'fail[ing] and refus[ing] to remove access barriers on

2    the website' 'that prevent free and full use of [the plaintiff] and other blind persons using screen

3    reading software.'" *Id*. (quoting complaint). Further, the plaintiff alleged that Cot'n Wash "failed

4    to take adequate action to correct these barriers even after being notified of the discrimination that

5    such barriers cause," citing a specific example of a letter his counsel sent to the company

6    regarding the issue. *Id*. (quoting complaint).

7              Based on the Unruh Act's intent requirement, the court held that the plaintiff failed to state

8    an Unruh Act claim. *Id*. at 1036–38. The court expressly rejected the plaintiff's argument that he

9    could prove intent by showing that Cot'n Wash "'failed to take adequate actions to correct'

10   accessibility barriers in its website 'even after being notified' of them." *Id*. at 1036. As the court

11   explained, if a plaintiff "cannot establish [a defendant's] intent to discriminate by showing only

12   that its website does not allow visually impaired individuals the same access available to those

13   who are not visually impaired (*i.e.*, a disparate effect of a neutral structure), it follows that [a

14   defendant's] *failure to address* this disparate effect likewise cannot establish [its] intent to

15   discriminate." *Id*.; *see also id*. at 1032 ("[W]e cannot infer intentional discrimination from

16   [plaintiff's] alleged facts that he made [Cot'n Wash] aware of the discriminatory effect of [Cot'n

17   Wash]'s facially neutral website, and that [Cot'n Wash] did not ameliorate these effects.").

18             The Ninth Circuit, district courts in California, and other California state courts have

19   likewise rejected Unruh Act claims premised on intentional discrimination where the plaintiff

20   merely alleged that some policy caused a disparate impact, including where the plaintiff alleged

21   that the defendant failed to respond to known issues. In *GLAAD*, for example, the plaintiff brought

22   a claim on behalf of deaf and hard of hearing individuals, alleging that CNN violated the Unruh

23   Act by not offering closed captioning on videos displayed on CNN.com. 742 F.3d at 426. The

24   Ninth Circuit disagreed; it held that "[s]uch conduct does not demonstrate CNN's 'willful,

25   affirmative misconduct' or intentional discrimination," and reasoned that it did not matter whether

26   CNN "failed to act upon [its] knowledge" that its website infringed upon deaf and hard of hearings

27   individuals' protected rights. *Id*. at 426–27. Similarly, in *Earll v. eBay, Inc*., the plaintiff, who is

28   deaf, alleged she could not register on eBay's website because eBay's selling registration process

included telephone verification, and further, that she "repeatedly told eBay" that its procedures prevented her from registering. No. 5:11-CV-00262-EJD, 2012 WL 3255605, at *1 (N.D. Cal. Aug. 8, 2012). The court held that such allegations do not state an Unruh Act claim because they "describe a facially neutral verification process with a disparate impact on the deaf community, but they do not demonstrate intentional discrimination." *Id.* at *5. Critically, the court explained that "the fact that [the plaintiff] contacted eBay's customer service and unsuccessfully requested to have eBay's otherwise applicable procedures modified is not sufficient to state a plausible claim of intentional discrimination." *Id.*; *see also Earll*, 599 F. App'x at 696.

There are many more examples. *See, e.g., Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1024 (N.D. Cal. 2012) (allegations that Netflix's "streaming library is not accessible to hearing-impaired individuals because only a small portion of it is subtitled" did not establish intentional discrimination because such "allegations describe a policy with a disparate impact on hearing-impaired individuals, but do not describe willful, affirmative misconduct"); *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1116 (N.D. Cal. 2011) (rejecting Unruh Act claim against Facebook because plaintiff did "not allege that Facebook treated her differently *because* of her disability, nor does [she] show that Facebook applies its policies in a way that targets individuals with disabilities"); *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1237 (2007) ("The contention that Comcast's policy, despite its equal application to all subscribers, has an adverse impact on blind persons fails, as a matter of law, to state a violation of the Unruh Act.").

Just as in these cases, Plaintiff cannot maintain an intentional discrimination claim under the Unruh Act. His allegations—that Fashion Nova's website was inaccessible to visually impaired individuals and that Fashion Nova learned of the barriers but failed to correct them, Compl. ¶¶ 62, 32–33—merely "describe a facially neutral" website "with a disparate impact on the [visually impaired] community, but they do not demonstrate intentional discrimination." *Earll*, 2012 WL 3255605, at *5. The record contains no evidence of the sort of "willful, affirmative misconduct with the specific intent to accomplish discrimination" that the Unruh Act requires. *Martinez*, 81 Cal. App. 5th at 1036 (cleaned up).

Even though failure to respond to known issues is insufficient to show intentional

discrimination, Fashion Nova notes for the record that the undisputed evidence shows no such failure on its part. To the contrary, the undisputed evidence shows that Fashion Nova has been diligent in addressing accessibility issues relating to its website. For example, when Fashion Nova developed and updated its website, it took into account ADA compliance and its desire that the website meet "standards and expectations" and be "available to as many individuals as possible." Schwartz Decl., Ex. 2 (Satur Dep.) 60:7–24, 72:16–73:7. Moreover, as noted above, Fashion Nova hired outside companies to perform accessibility audits of its website on at least an annual basis, met with the third-party auditors to review the results, and made modifications to its website based on the auditors' feedback. Fashion Nova's active steps to improve accessibility refute any notion that Fashion Nova took "affirmative" actions with the "specific intent" to discriminate against Plaintiff "on the basis" of his "protected trait." *Martinez*, 81 Cal. App. 5th at 1036; *see, e.g.*, *GLAAD*, 742 F.3d at 426 n.4 (citing evidence that CNN had "every intention of complying with the FCC's now-implemented 2012 online captioning rules" (internal quotation mark omitted)); *Cullen*, 880 F. Supp. 2d at 1024 (citing allegations "demonstrating Netflix's efforts to improve access for hearing-impaired customers that offset an inference of intentional discrimination"). Fashion Nova is entitled to summary judgment on Plaintiff's Unruh Act claim.

## **CONCLUSION**

For all of these reasons, Defendant's motion should be GRANTED as set forth in the Proposed Order.

Dated:  November 30, 2023

By: */s/ Amy Lally*
Chad S. Hummel (SBN 139055)
chummel@sidley.com
Amy P. Lally (SBN 198555)
alally@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: (310) 595-9662
Facsimile: (310) 595-9501

Eric B. Schwartz (SBN 266554)
eschwartz@sidley.com
Anna Tutundjian (SBN 309969)
atutundjian@sidley.com
Marissa X. Hernandez (SBN 341449)

1

marissa.hernandez@sidley.com
SIDLEY AUSTIN LLP

2

555 West Fifth Street, Suite 4000
Los Angeles, California 90013

3

Telephone: (213) 896-6000
Facsimile: (213) 896-6600

4

5

Attorneys for Defendant
FASHION NOVA, INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28