Chad S. Hummel (SBN 139055)
chummel@sidley.com
Amy P. Lally (SBN 198555)
alally@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: (310) 595-9662
Facsimile: (310) 595-9501

Eric B. Schwartz (SBN 266554)
eschwartz@sidley.com
Anna Tutundjian (SBN 309969)
atutundjian@sidley.com
Marissa X. Hernandez (SBN 341449)
marissa.hernandez@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

*Attorneys for Defendant*
*FASHION NOVA, INC.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN ALCAZAR, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FASHION NOVA, INC., a California Corporation, and DOES 1 to 10, inclusive,<br><br>Defendants. | Case No. 4:20-cv-01434-JST<br><br>Assigned to Hon. Jon S. Tigar<br><br>**DEFENDANT FASHION NOVA, INC.'S NOTICE OF MOTION AND MOTION TO EXCLUDE, OR ALTERNATIVELY, TO LIMIT, THE EVIDENCE, TESTIMONY, AND/OR ARGUMENT RE: EXPERT OPINIONS OF ROBERT MOODY**<br><br>Hearing Date:    January 4, 2024<br>Trial Date:    April 8, 2024<br>Complaint Filed:    February 26, 2020 |

1

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

2

NOTICE IS HEREBY GIVEN that on January 4, 2024 at 2:00 p.m., or as soon thereafter as

3

counsel may be heard, before the Honorable Jon S. Tigar in Courtroom 6 of the above-entitled

4

Court, located at 1301 Clay Street, Oakland, California, Defendant Fashion Nova, Inc. will and

5

hereby does move Court for an order excluding any evidence, testimony, and/or argument regarding

6

certain expert opinions of Robert Moody. Said motion will be made pursuant to pursuant to Federal

7

Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), on the

8

grounds that Moody's opinions related to web accessibility and ADA compliance are unreliable and

9

based on the wrong standard, Moody is not qualified, and Moody offers impermissible legal

10

conclusions.

11

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points

12

and Authorities, any reply documents to be submitted in support, the pleadings on file herein,

13

exhibits and declarations attached in support, and upon such other oral or documentary evidence as

14

may be presented at the time of the hearing on this Motion.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Dated:  November 30, 2023                    By:   */s/ Amy Lally*
                                                Chad S. Hummel (SBN 139055)
2                                               chummel@sidley.com
                                                Amy P. Lally (SBN 198555)
3                                               alally@sidley.com
                                                SIDLEY AUSTIN LLP
4                                               1999 Avenue of the Stars, 17th Floor
                                                Los Angeles, CA 90067
5                                               Telephone: (310) 595-9662
                                                Facsimile: (310) 595-9501
6
                                                Eric B. Schwartz (SBN 266554)
7                                               eschwartz@sidley.com
                                                Anna Tutundjian (SBN 309969)
8                                               atutundjian@sidley.com
                                                Marissa X. Hernandez (SBN 341449)
9                                               marissa.hernandez@sidley.com
                                                SIDLEY AUSTIN LLP
10                                              555 West Fifth Street, Suite 4000
                                                Los Angeles, California 90013
11                                              Telephone: (213) 896-6000
                                                Facsimile: (213) 896-6600
12
                                                *Attorneys for Defendant*
13                                              *FASHION NOVA, INC.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

    A.    Plaintiff's Allegations ...................................................................................... 2

    B.    Fashion Nova and Its Website ......................................................................... 3

    C.    The Threshold Legal Question......................................................................... 4

LEGAL STANDARD............................................................................................................ 5

ARGUMENT ........................................................................................................................ 6

    A.    Moody's Speculative Opinions Related to Web Accessibility and ADA
           Compliance Must Be Excluded for Lack of Qualifications and Lack of
           Foundation. ...................................................................................................... 6

    B.    Moody's Testimony Is Unreliable and Based on the Wrong Standard ....................... 9

    C.    Moody's Opinions are Inadmissible Because They Consist of Legal
           Conclusions.................................................................................................... 11

    D.    Moody's Sole Reliance on the WCAG Guidelines Renders His Opinions
           Unreliable...................................................................................................... 13

    E.    Moody's Opinions are Inadmissible Because They Are Unreliable, Unhelpful,
           and/or Not Based On Any Specialized Knowledge...................................... 15

    F.    Moody's Testimony Cannot Be Used to Circumvent the Requirements of the
           Rules of Evidence......................................................................................... 18

CONCLUSION.................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcazar v. Bubba Gump Shrimp Co. Restaurants*,
  No. 20-CV-02771-DMR, 2020 WL 4601364 (N.D. Cal. Aug. 11, 2020) ...................... 12, 14, 15

*Alves v. Riverside Cnty.*,
  No. EDCV 19-2083 JGB (SHKx), 2023 WL 2983583, at *11 (C.D. Cal., Mar. 13,
  2023) .................................................................................................................................. 17

*Bona Fide Conglomerate, Inc. v. SourceAmerca*,
  No. 3:14-CV-00751-GPC-AGS, 2019 WL 1369007 (S.D. Cal., Mar. 26, 2019) .......................... 6

*Bragdon v. Abbott*,
  524 U.S. 624 (1998) ............................................................................................................ 13

*Broussard v. Univ. of California*,
  192 F.3d 1252 (9th Cir. 1999) ............................................................................................ 12

*Cooper v. Brown*,
  510 F.3d 870 (9th Cir 2007) ................................................................................................. 5

*Daubert. Pascal v. Nissan N. Am., Inc.*,
  No. 8:20-CV-00492-JLS-JDE, 2022 WL 19076763 (C.D. Cal., Dec. 21, 2022) ...................... 11

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) .................................................................................................... 5, 13, 17

*Daubert v. Merrell Dow Pharms., Inc. (Daubert II)*,
  43 F.3d 1311 (9th Cir. 1995) ........................................................................................ 11, 16

*Earll v. eBay, Inc.*,
  599 F. App'x 695 (9th Cir. 2015) ........................................................................................... 4

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) ............................................................................................................ 13

*Henderson v. Lindland*,
  No. CV11-01350 DDP, 2012 WL 12885104 (C.D. Cal., Aug. 15, 2012) ................................. 18

*Hubbard v. Twin Oaks Health and Rehab. Or.*,
  408 F. Supp. 2d 923 (E.D. Cal. 2004) .................................................................................. 12

*In re James Wilson Assocs.*,
  965 F.2d 160 (7th Cir. 1992) ............................................................................................... 17

*Michael Grecco Prods. Inc. v. NetEase Info. Tech. Corp.*,
  No. CV 18-3119 DSF 2018 WL 6443082 (C.D. Cal., Sept. 24, 2018) ..................................... 18

*Miller v. Adonis*,
    No. 1:12-CV-00353-DAD-EPG-PC, 2019 WL 4076441 (E.D. Cal., Aug. 29,
    2019) .................................................................................................................... 9

*Nat'l Fed'n of Blind v. Target Corp.*,
    582 F. Supp. 2d 1185 (N.D. Cal. 2007) ............................................................ 9

*Nationwide Trans. Fin. v. Cass Info. Sys., Inc.*,
    523 F.3d 1051 (9th Cir. 2008) .................................................................. 11, 12

*Navarro v. Hamilton*,
    No. 5:16-CV-1856-CAS(SPx), 2019 WL 351873 (C.D. Cal., Jan. 28, 2019) ........................... 15

*Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*,
    No. 15-CV-595-BAS(MDD), 2017 WL 1174756 (S.D. Cal. Mar. 29, 2017) ............................... 6

*Reed v. CVS Pharm., Inc.*,
    No. 17-CV-3877 MWF, 2017 WL 4457508 (C.D. Cal. Oct. 3, 2017) ........................ 14

*Rios v. New York & Co., Inc.*,
    No. 2:17-cv-04676-ODW(AGRx), 2017 WL 5564530 (C.D. Cal. Nov. 16, 2017) ...................... 4

*Robles v. Yum! Brands, Inc.*,
    No. 16-CV-8211, 2018 WL 566781 (C.D. Cal. Jan. 24, 2018) ....................... 14

*Strategic Partners, Inc. v. Vestagen Protective Techs., Inc.*,
    777 Fed.Appx. 224 (9th Cir. 2019) .................................................................. 9

*Triton Energy Corp. v. Square D Co.*,
    68 F.3d 1216 (9th Cir. 1995) .................................................................. 11, 16

*U.S. v. Boulware*,
    558 F.3d 971 (9th Cir. 2009) .......................................................................... 12

*U.S. v. Brodie*,
    858 F.2d 492 (9th Cir. 1988), *overruled on other grounds, U.S. v. Morales*, 108
    F.3d 1031 ........................................................................................................ 11

*U.S. v. Brody*,
    No. 3:22-CR-00168-WHO-1, 2023 WL 2541118 (N.D. Cal., Mar. 16, 2023) ........................ 6

*U.S. v. Chang*,
    207 F.3d 1169 (9th Cir. 2000) ................................................................... 6, 8

*U.S. v. Hanna*,
    293 F.3d 1080 (9th Cir. 2002) ........................................................................ 12

*U.S. v. Santini*,
    656 F.3d 1075 (9th Cir. 2011) .......................................................................... 6

*U.S. v. Sullivan*,
No. 20-cr-00337, 2022 WL 3716594 (N.D. Cal. Aug. 28, 2022) ................................... 5

*U.S. v. Valencia-Lopez*,
971 F.3d 891 (9th Cir. 2020) ........................................................................................ 5

*Wander v. Kaus*,
304 F.3d 856 (9th Cir. 2002) ........................................................................................ 3

**Statutes and Rules**

42 U.S.C. § 12101 .................................................................................................. *passim*

42 U.S.C. § 12181 ................................................................................................. 2, 13

42 U.S.C. § 12182(a) .................................................................................................. 4

42 U.S.C. § 12186(b) ............................................................................................... 13

Cal. Civ. Code § 51 ............................................................................................. 2, 3, 4

Cal. Civ. Code § 52(a) ................................................................................................ 3

Fed. R. Evid. 702 ............................................................................................. 5, 6, 15

Fed. R. Evid. 703 ...................................................................................................... 17

**Other Authorities**

18F Accessibility Guide published by 18F, a digital services agency under the
General Services Administration ............................................................................. 14

Guidance on Web Accessibility and the ADA, March 18, 2022 (available at
https://www.ada.gov/resources/web-guidance/) ................................................... 13

Section 508 Information and Communication Technology Accessibility Standards
published by the U.S. Access Board ...................................................................... 14

Using the Wayback Machine, https://help.archive.org/help/using-the-wayback-
machine/ (last visited Nov. 29, 2023) .................................................................... 17

Web Content Accessibility Guidelines (WCAG), published by the Web Accessibility
initiative of the World Wide Web Consortium ....................................................... 14

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff Juan Alcazar ("Plaintiff") served the expert report of Robert Moody ("Moody") for the purpose of establishing that Fashion Nova's website was not complaint with Web Content Accessibility Guidelines ("WCAG"), published by the Web Accessibility initiative of the World Wide Web Consortium, a consortium of businesses and, thus, not complaint with accessibility requirements imposed by the Americans with Disabilities Act ("ADA").  Moody's report should be stricken because (1) his report is not helpful to the trier of fact because his conclusions about alleged non-compliance with WCAG guidance do not mean that Fashion Nova's website is not ADA compliant, (2) his report improperly asserts a legal conclusion that Fashion Nova's website is not compliant with the ADA, (3) his report is unreliable and not based on sufficient facts and data, and (4) Moody has inadequate qualifications.

First, and perhaps not surprisingly, the report should be excluded because Moody is not qualified.  He does not have a single one of the certifications available in his field, including the leading web accessibility certification for which he claimed he does not have time to obtain. Moody offers pages of educational, training, and professional experiences, but concedes that hardly any of these experiences relate to web accessibility or ADA compliance. Moody is not a certified expert, and his irrelevant, misleading and unreliable report should be excluded from this case.

Even if Moody was qualified, applicable law, as well as guidance published by the Civil Rights Division of the U.S. Department of Justice ("DOJ"), makes it clear that, assuming the ADA applies to websites, then the manner in which companies comply is "flexible."  There is no authority at all for the proposition that websites must comply with the WCAG guidelines, much less any of the other published guidelines on accessibility.  Thus, Moody's opinion and analysis regarding alleged non-compliance with WCAG guidelines is confusing and misleading for the trier of fact.  To be helpful to the trier of fact, Moody should have analyzed whether visually impaired people can shop for and purchase products on Fashion Nova's website, but he claims not to have done so.  The clear reason: visually impaired users can buy products on Fashion Nova's website using screen readers

1   and other technology.  Visually impaired users can also access information about Fashion Nova's

2   five physical locations on its website.

3         Worse still, Moody then makes the leap and opines that because Fashion Nova's website is

4   allegedly not WCAG compliant, that is it also not compliant with the ADA.  That is just wrong

5   under the law.  That is also a legal opinion that Moody is not qualified or permitted to offer under

6   the rules of evidence.

7         Even if Moody's report were helpful to the trier of fact (and it is not), his methodology is

8   unreliable and the report should be stricken as well.  Moody purports to opine that Fashion Nova's

9   website was not compliant with WCAG because he tested both the live website and archived copies

10   located on the "Wayback Machine," using automated testing.  But, again, he did not analyze the

11   fundamental issue of whether visually impaired users could purchase products on the site.

12                                    **BACKGROUND**

13        A.     **Plaintiff's Allegations**

14        Plaintiff Juan Alcazar, a resident of Northern California, on behalf of himself and others

15   similarly situated, alleges that Fashion Nova's website, www.fashionnova.com, violates the

16   regulations underlying Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*

17   ("ADA"), and the California Unruh Act, California Civil Code § 51 *et seq.* Plaintiff alleges that he

18   "encountered multiple access barriers" on Fashion Nova's website, which "deterred [him], on a

19   regular basis, from accessing [Fashion Nova's] website." Dkt. 1, Class Action Complaint ("Compl.")

20   ¶ 25; *see also id.* ¶ 28. Plaintiff further alleges that the "access barriers . . . deterred [him] from

21   visiting [Fashion Nova's] physical locations, and enjoying them equal to sighted individuals

22   because: Plaintiff was unable to find the location and hours of operation of [Fashion Nova's] store

23   locations on its website, preventing Plaintiff from visiting the locations to view and purchase

24   products and/or services." *Id.* ¶ 30.

25        On behalf of himself and those similarly situated, Plaintiff seeks both injunctive relief under

26   the ADA and the Unruh Act, *id.* ¶¶ 54–59, as well as statutory damages of $4,000 per offense per

27   person under the Unruh Act, *see id.* ¶¶ 60–67 & Prayer for Relief ¶ C. Plaintiff defines his California

28   class as "all legally blind individuals in the State of California who have attempted to access

1    Defendant's website by the use of a screen reading software during the applicable limitations period

2    up to and including final judgment in this action." *Id.* ¶ 42. Only the California class seeks damages.

3    *Id.* ¶ 65.

4          On September 9, 2022, the Court granted Plaintiff's motion for class certification. *See* Dkt.

5    70, Order Granting Motion for Class Certification. The Court certified two classes: (1) a nationwide

6    class seeking injunctive relief under the ADA, and (2) a California class seeking injunctive relief and

7    statutory damages under the Unruh Act. *Id.* at 2–3; Compl., Prayer for Relief ¶¶ B–C. Damages are

8    not available under the ADA. *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002) (citing 42 U.S.C. §

9    12188(a)(1)). The Unruh Act, however, provides for $4,000 in statutory damages per violation. Cal.

10   Civ. Code § 52(a). So only the California class—not the nationwide class—seeks statutory damages.

11   Compl., Prayer for Relief ¶ C.

12        **B.    Fashion Nova and Its Website**

13        Fashion Nova is a U.S.-based fashion retail company that sells a variety of men's and

14   women's clothing, shoes, and other accessories. Compl. ¶ 5. The company operates predominantly

15   online, and it has just five brick-and-mortar locations—all in Southern California—in Burbank,

16   Montebello, Northridge, Panorama City, and Los Angeles. Declaration of Ricky Chandnani

17   ("Chandnani Decl.") ¶ 4. The merchandise available in Fashion Nova's physical stores is available

18   online, but only approximately 3.8% of merchandise available online was also available in its

19   physical stores as of October 2023. *Id.* ¶ 7. Fashion Nova does not offer online customers the option

20   of in-store pickup for online merchandise purchases. *Id.* ¶ 8. Fashion Nova also does not sell or

21   advertise merchandise from its physical locations with coupons or promotions on its website or

22   elsewhere. *Id.* ¶ 9. Fashion Nova's store revenue represents 0.4% of the total company revenue, with

23   99.6% of the company's revenue derived from its online channel. *Id.* ¶ 10.

24        Blind and visually impaired people often use keyboards and screen-reading software that

25   vocalizes visual information in order to use computers and the internet. Compl. ¶ 14. The degree to

26   which a blind or visually impaired user can access and utilize a website varies considerably from

27   individual to individual as a result of a number of factors, including the web browser, screen reader,

28   operating system, and computer that is used, as well as the user's familiarities with the computer,

1   web browser, and screen reader. *See* Dkt. 57-1, Declaration of Aaron Cannon ("Cannon Decl.") ¶¶

2   4–8. For example, websites can be usable in one browser but not others, or compatible with one type

3   of screen reader but not others. *Id.* ¶¶ 5–6. The operating system and type of computer can impact

4   not only what web browser and screen readers are usable, but also how well the screen reader works.

5   *Id.* ¶ 7. And one's ability to use a screen reader depends at least in part on his or her training and

6   experience with that screen reader. *Id.* ¶ 8.

7           **C.      The Threshold Legal Question**

8           As detailed in Fashion Nova's Motion for Summary Judgment (Dkt. 143), the gravamen of

9   Plaintiff's Complaint is that Fashion Nova has violated Section 12182(a) of the ADA and

10  California's Unruh Civil Rights Act by denying him and other legally blind persons equal access to a

11  "place of public accommodation." To establish an Unruh violation, Plaintiff must prove either that:

12  (1) Fashion Nova violated the ADA, or (2) Fashion Nova intentionally discriminated against him

13  based on his disability. Plaintiff must establish a nexus in order to prevail on his ADA claim and, to

14  the extent that his Unruh Act claim is premised on an ADA violation, he also needs to establish a

15  nexus in order to prevail on such claim. Plaintiff must "establish[] a nexus between the online

16  services and the physical place." *Rios v. New York & Co., Inc.*, No. 2:17-cv-04676-ODW(AGRx),

17  2017 WL 5564530, at *3 (C.D. Cal. Nov. 16, 2017).  The undisputed facts make clear that Plaintiff

18  has failed to establish the required nexus in this case.

19          Plaintiff does not allege that Fashion Nova's e-commerce website, standing alone, is a "place

20  of public accommodation" under the ADA. That claim would fail under settled Ninth Circuit law,

21  which holds that websites on their own are not covered by the ADA. *See, e.g.*, *see Earll v. eBay,*

22  *Inc.*, 599 F. App'x 695, 696 (9th Cir. 2015).  As the Complaint concedes, then, Plaintiff must prove

23  that access to at least one of Fashion Nova's five physical stores—each of which is a "public

24  accommodation[]"—was inhibited by problems he encountered with the website because of his

25  visual impairment. Compl. ¶¶ 5, 7, 57. However, there is no evidence or even claim that the physical

26  stores themselves have accessibility barriers or are not in compliance with the ADA. Instead,

27  Plaintiff alleges that the website is a "a service, privilege, or advantage of Defendant's services and

28  product and locations," *id.* ¶ 7, and that the "inaccessibility [of the website] denies visually-impaired

customers full and equal enjoyment of and access to the facilities and services, privileges, advantages, and accommodations that Defendant made available to the non-disabled public," *id.* ¶ 57. Plaintiff has offered a single allegation purporting to link Fashion Nova's physical stores to its website. He claims he "was unable to find the location and hours of operation of Defendant's store locations on its website, preventing [him] from visiting the locations to view and purchase products and/or services." Compl. ¶ 30. Yet, Fashion Nova's website provides little information to anyone, including those without visual impairments, who might be intending to visit a Fashion Nova physical store. The hours of the five retail stores are not listed on Fashion Nova's website. Nor does the website contain a "store locator" function that enables a customer to search for nearby stores. Instead, the five store addresses are simply listed on a page on the website. *See* https://www.fashionnova.com/pages/locations.

## LEGAL STANDARD

The Federal Rules of Evidence require district courts to ensure that testimony based on "scientific, technical, or other specialized knowledge" is both relevant and reliable before admitting it. Fed. R. Evid. 702(a), (c)-(d). By its terms, Rule 702 requires that an expert witness's testimony must be grounded in "knowledge," *id.* 702(a), which the Supreme Court has explained must amount to "more than subjective belief or unsupported speculation." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-90 (1993). Rule 702 further requires that expert opinions "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). The Ninth Circuit has explained that this relevancy standard is the "central concern of Rule 702." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir 2007).

Crucially, the proponent of expert testimony has the burden of proving relevance and reliability by a preponderance of the evidence. *See, e.g., U.S. v. Sullivan*, No. 20-cr-00337, 2022 WL 3716594, at *7 (N.D. Cal. Aug. 28, 2022). To avoid exclusion, "[t]he expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded." Fed. R. Evid. 702 Advisory Committee Note (2000). Reliability is the "lynchpin" of Rule 702, and the Ninth Circuit has held that it goes directly to the

1  admissibility—not merely the weight—of expert testimony. *U.S. v. Valencia-Lopez*, 971 F.3d 891,

2  899 (9th Cir. 2020).

3  **ARGUMENT**

4      **A.**    **Moody's Speculative Opinions Related to Web Accessibility and ADA**

5          **Compliance Must Be Excluded for Lack of Qualifications and Lack of Foundation.**

6        Moody's testimony fails to meet the threshold requirements for expert testimony and this

7  Court should exclude his testimony and opinions regarding Fashion Nova's web accessibility and

8  compliance. As set forth below, Moody is wholly unqualified to testify as an expert on the subject of

9  web accessibility and compliance measures, his testimony is not reliable, and his opinions will not

10  be helpful to this Court. *See* Fed. R. Evid. 702. In order for expert testimony to be admissible, the

11  expert must be "qualified as an expert by knowledge, skill, experience, training, or education." Fed.

12  R. Evid. 702. In order to admit his testimony, this Court must find that Moody "show special

13  knowledge of the very question upon which he is to express an opinion." *Bona Fide Conglomerate,*

14  *Inc. v. SourceAmerica*, No. 3:14-CV-00751-GPC-AGS, 2019 WL 1369007, at *5 (S.D. Cal., Mar. 26,

15  2019). While an expert may be qualified based on practical experience or training rather than formal

16  education in an area, "[i]f the witness is relying solely or primarily on experience, then the witness

17  must explain how that experience leads to the conclusion reached, why that experience is a sufficient

18  basis for the opinion, and how that experience is reliably applied to the facts." *U.S. v. Brody*, No.

19  3:22-CR-00168-WHO-1, 2023 WL 2541118, at *5 (N.D. Cal., Mar. 16, 2023) (*quoting* Fed. R. Evid.

20  702 advisory committee's note (2000)); *see Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*, No.

21  15-CV-595-BAS(MDD), 2017 WL 1174756, at *2 (S.D. Cal. Mar. 29, 2017) (same).

22        In this regard, an expert witness may be qualified to testify on a particular subject matter, but

23  be unqualified to testify on a related subject matter. *U.S. v. Chang*, 207 F.3d 1169, 1172-73 (9th Cir.

24  2000) (affirming district court's exclusion of professor's testimony as he was not qualified to testify

25  on another relevant issue in case); *see U.S. v. Santini*, 656 F.3d 1075, 1078-79 (9th Cir. 2011)

26  (explaining that Rule 702 requires that "an expert in one field…cannot express an opinion relying on

27  data that requires expertise in another field").

28

Moody has three educational experiences and admits that none of these educational experiences included any courses or training on web accessibility or ADA compliance. Declaration of Eric B. Schwartz ("Schwartz Decl."), Ex. B (Moody Dep.) 67:7-69:7. Moody identifies six certifications he holds and admits that with the exception of one certificate that he obtained over 20 years ago that has to do with IT systems, none relate to web accessibility or ADA compliance. *Id.* 69:9-74:7. With respect to the one certificate that is over 20 years old, Moody testified that "[i]t has to do with auditing IT systems, which a website would be an IT system," but again admitted, it has nothing to do with ADA training or work. *Id*. Moody admitted that he does not (and never has) had any certification in web accessibility:

Q So you do not have any certifications in web accessibility?

A Not currently.

Q And you never have?

A Not currently.

Q Aside from currently, you've never held them previously as well?

A That's correct. (*Id.* 78:25-79:7).

Critically, Moody conceded familiarity with the Certified Professional in Web Accessibility ("CPWA"), which is the leading certificate in the web accessibility space. Moody testified that "the certification is one of the very few that exist within the industry" and "something to work towards." *Id.* 76:13-78:24. Moody admitted that he is not and has never been CPWA certified. He also admitted that he has not taken the Web Accessibility Specialist exam (which is part of the CPWA certification). *Id*. He explained that he does not have time to obtain the certifications. *Id*. ("I haven't taken any of the certification exams. I have been taking the coursework, again, as part of the certification process – or the continuing education credit process. But there's 160 hours a week and most of my hours are full. So I don't get the school time as one would like.").

Moody lists several trainings on his CV which he purports relates to ADA or Web Accessibility. Schwartz Decl., Ex. B (Moody Dep.) Ex. 1 at 10-16 & 71:18-90:2.  Moody testified that each of these trainings were conducted online; as part of the training, he watched videos and completed exercises; no testing was required; the trainings generally lasted between 2 to 5 hours;

and he does not know whether any of the trainings were offered by accredited organizations. Schwartz Decl., Ex. B (Moody Dep.) 79:17-88:14.

With respect to Moody's expert witness experience, Moody identified in his CV and testimony 27 experiences. *Id.*, Ex. 1 at 10-16 & 90:4-92:10. He testified that none of these experiences relate to web accessibility or ADA compliance and that he has never testified regarding the issues in the present case.

Q So none of these expert experiences relate to web accessibility; is that right?

A That is correct.

Q And none of these expert experiences relate to ADA compliance; is that right?

A That is correct.

Q Have you ever testified regarding the issues in this case?

A No.

(Schwartz Decl., Ex. B (Moody Dep.) 92:2-10); *see also, id.* 93:3-10 ("I have never testified on ADA (or web accessibility) issues before. This is the first time that anyone has taken my deposition for anything in an ADA-related (or web accessibility) case")

Similarly, Moody does not have any teaching or lecture experiences that relate to web accessibility or ADA-compliance. Schwartz Decl., Ex. B (Moody Dep.) 93:11-23. Nor does he have any publications that relate to web accessibility or ADA-compliance. *Id.* 93:24-94:7.

Moody's only relevant experience in web accessibility and ADA-compliance work then consists of having audited 2,000 websites. Where, as here, Moody relies on experience, his experience "does not amount to practical experience" in determining "the fact at issue in this case." *Chang*, 207 F.3d at 1173. In this instance, Moody declined to offer any specific answers as to the nature of his audits, including identifying the 24 websites he claimed did not have any accessibility issues because there are purportedly "non-disclosures" in place. Schwartz Decl., Ex. B (Moody Dep.) 159:6-161:4. As such, it is unclear, what, if any, relevance—let alone "close relationship"— the prior audit work Moody performed has on his audit of Fashion Nova's website. In any event, it is clear that Moody lacks the educational and professional experience to offer expert testimony as to web accessibility and ADA compliance issues.

1   Because Moody is not qualified by knowledge, skill, experience, training, or education to

2   offer opinions related to the web accessibility and ADA compliance issues, these opinions must be

3   excluded.

4   **B.      Moody's Testimony Is Unreliable and Based on the Wrong Standard**

5       To be helpful to the trier of fact, an expert, such as Moody, who purports to assess the

6   accessibility of Fashion Nova's website, must provide testimony relevant to the central question of

7   whether Fashion Nova's website "impeded [Plaintiff's] access to the goods and services in the

8   store." *Nat'l Fed'n of Blind v. Target Corp.*, 582 F. Supp. 2d 1185, 1204 (N.D. Cal. 2007) (granting

9   Target's motion for summary judgment where plaintiff's declaration and other evidence failed to

10  "demonstrate[] that his inability to access Target.com renders him unable to access the goods and

11  services of Target stores"). In order to determine whether a given webpage or document provides

12  such access to goods or service, an assessment of functional usability of the Website page or

13  function is required. The question is: does a visually impaired individual in fact have meaningful

14  access to the specific information or transaction in question such that the visually impaired

15  individual can make online purchases?

16      Moody, however, altogether fails to address this question as it applies to the tested content of

17  Fashion Nova's website. He opines on whether the Websites at issue, as a whole, "include[s] barriers

18  that would prevent disabled persons, such as the Plaintiff, Mr. Juan Alcazar, from using the

19  website." Schwartz Decl., Ex. A (Moody Rep.) at 2. Moody opines that pursuant to the WCAG

20  Guidelines, he has identified barriers that exist on Fashion Nova's website and "they're impacting

21  the people visiting the site." *Id.*, Ex. B (Moody Dep.) 121:20-123:15. But Moody fails to answer the

22  threshold question of whether Fashion Nova's website "impeded [Plaintiff's] access to the goods and

23  services in the store." *Nat'l Fed'n of Blind v. Target Corp.*, 582 F. Supp. 2d 1185, 1204 (N.D. Cal.

24  2007). As such, the Moody's Report therefore should be excluded because it does not actually relate

25  to the issue before the Court—it does not address, or consider in any useful way, the practical

26  usability of any specified function of the Websites by the blind and visually impaired. *See, e.g.,*

27  *Miller v. Adonis*, No. 1:12-CV-00353-DAD-EPG-PC, 2019 WL 4076441, at *4 (E.D. Cal., Aug. 29,

28  2019) (recommending that expert's testimony in orthopedic care be striken because the expert failed

to establish sufficient expertise "to give a medical opinion on that subject in this case"); *Strategic Partners, Inc. v. Vestagen Protective Techs., Inc.,* 777 Fed.Appx. 224 (9th Cir. 2019) (finding district court did not err in excluding expert testimony because expert was not qualified to testify about the relevant subject matter).

Perhaps realizing this critical omission, Moody concludes in his report that "The failure of the defendant's website and its compatibility issues with screen readers does more than limit the access to online research and purchases. It can and does impact the disabled user from accessing brick-and-mortar locations, phone numbers, and store hours thus preventing any commerce with the store directly." Schwartz Decl., Ex. A (Moody Rep.) at 8. This is the *only* mention of whether disabled users are limited in accessing Fashion Nova's brick-and-mortar locations; there is no other analysis, testing, or methodology on this point. When asked what Moody's basis was for reaching this conclusion, Moody explained that he has no basis for this opinion other than having read the declarations which indicated that at least some of the declarants had issues accessing Fashion Nova's brick and mortar locations.  *Id.*, Ex. B (Moody Dep.) 218:2-221:16. Moody acknowledged that Fashion Nova's website includes a "Store Locations" page which identifies contact information for its brick and mortar locations. *Id*. Nevertheless, he again confirmed that his *sole basis* for concluding that visually impaired individuals might not access Fashion Nova's brick and mortar locations was having read the declarations. *Id*.

> Q So here we have a listing of Fashion Nova's five brick-and-mortar stores that are listed on
>
> its website. Do you see that?
>
> A I do.
>
> Q So given that this information is on Fashion Nova's website, what is the basis for your
>
> conclusion that visually impaired individuals can't access information about Fashion Nova's
>
> brick-and-mortar locations?
>
> You had declarant stating that their screen readers weren't interpreting this data.
>
> Q And that is the sole basis?
>
> A Yes.

Perhaps Moody did not undertake this analysis because legally blind individuals can in fact make purchases on Fashion Nova's website. *See* Cannon Declaration Dkt. 57-1, ¶ 9 ("On February 22, 2022, I visited the website fashionnova.com, and I was able to explore products, add those products to my cart, apply a coupon code, and proceed through the checkout process with a screen reader—all without assistance of any kind. I am totally blind, having only light perception, and rely on a screen reader to access my computer and websites"). In any event, Moody did not analyze this himself despite claiming to have run other manual and automatic tests on Fashion Nova's website. An expert's failure himself to examine the evidence impairs his ability to "express a reliable expert opinion based upon specific facts." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1222 (9th Cir. 1995). In fact, "unblinking reliance" on the opinions of others without independent validation of those opinions constitutes a flawed methodology and is barred by *Daubert*. *Pascal v. Nissan N. Am., Inc.*, No. 8:20-CV-00492-JLS-JDE, 2022 WL 19076763, at *16 (C.D. Cal., Dec. 21, 2022). As such, Moody's derivative opinions deserve no credence whatsoever, and the Court should exclude them. *Daubert v. Merrell Dow Pharms., Inc. (Daubert II)*, 43 F.3d 1311, 1317-20 (9th Cir. 1995) ("If the proffered expert testimony is not based on independent research, the party proffering it must come forward with other objective, verifiable evidence that the testimony is based on 'scientifically valid principles.'").

### C.  Moody's Opinions are Inadmissible Because They Consist of Legal Conclusions

There are limits to what an expert witness can do. Chief among these is that an expert is not permitted to render legal opinions or apply the law to facts. *Nationwide Trans. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058-59 (9th Cir. 2008); *U.S. v. Brodie*, 858 F.2d 492, 496-97 (9th Cir. 1988), *overruled on other grounds, U.S. v. Morales*, 108 F.3d 1031 (9th Cir. 1997). Squarely violating this long-established rule, Moody offers a legal conclusion: he instructs the Court on his understanding of a website's compliance with ADA laws, and then he applies his personal view of the law to the facts of this case. However, "[e]xperts 'interpret and analyze factual evidence. They do not testify about the law because the judge's special legal knowledge is presumed to be sufficient.'" *Brodie*, 858 F.2d at 496-97 (internal citation omitted). Such opinions are not only

1   "superfluous but mischievous." *Id*. at 497. For these reasons alone, the Court should exclude

2   Moody's opinions in their entirety.

3        Moody concludes in his report that: "Fashion Nova Inc., who operates the website

4   https://www.fashionnova.com, has program and design issues in its website that has been systemic

5   for years and as such has created access barriers for disabled users that are both physical and digital

6   in nature and thus violates the disabled users rights as provided under the ADA." Schwartz Decl.,

7   Ex. A (Moody Rep.) at 8. Similarly, in his deposition, Moody testified that Fashion Nova's website

8   is not ADA-Complaint. (52:22-24 Q Is it your opinion that Fashion Nova's website is not ADA-

9   complaint? A Yes.). Indeed, on several occasions, he opines that because Fashion Nova's website

10  does not comply with the WCAG Guidelines, the website is not ADA compliant. (42:23-43:25, 53:3-

11  56:4). Despite these opinions, Moody, of course, concedes he does not have any specific legal

12  training to opine on legal issues. (52:25-53:2 Q Do you have any specific legal training as to ADA

13  laws? A No.)

14       The Ninth Circuit has rejected expert opinions that merely recite the language of the

15  applicable law and apply the facts to that law as improper legal conclusions. For instance, in

16  *Broussard v. Univ. of California*, 192 F.3d 1252, 1258 (9th Cir. 1999), the plaintiff retained an

17  expert to establish that she was "substantially impaired in her ability to perform a class of jobs" and

18  thus "disabled" as defined by the ADA. *See id*. The Court struck the expert opinion because, by

19  addressing these dispositive legal issues, the report consisted of nothing more than legal conclusions.

20  *See id*. *See also Hubbard v. Twin Oaks Health and Rehab. Or*., 408 F. Supp. 2d 923, 930 (E.D. Cal.

21  2004) (expert testimony concerning whether facility met disability access requirements under the

22  Americans with Disabilities Act consisted of an improper legal conclusion); *U.S. v. Boulware*, 558

23  F.3d 971, 975 (9th Cir. 2009) ("The trial court's exclusion of the expert testimony to the extent that it

24  constitute a legal opinion was well within its discretion."); *Nationwide Transp. Fin. v. Cass Info.*

25  *Sys.*, 523 F.3d 1051, 1058 (9th Cir. 2008) ("[A]n expert witness cannot give an opinion as to her

26  *legal conclusion*, i.e., an opinion on an ultimate issue of law.") (emphasis in original); *U.S. v.*

27  *Hanna*, 293 F.3d 1080, 1086 (9th Cir. 2002).

28

1       Moody's legal conclusions are particularly egregious because courts have held that just

2  because a website does not comply with the WCAG guidelines, that in it of itself does not mean the

3  website is not ADA compliant. *See, e.g.*, *Alcazar v. Bubba Gump Shrimp Co. Restaurants*, No. 20-

4  CV-02771-DMR, 2020 WL 4601364, at *4 (N.D. Cal. Aug. 11, 2020) ("whether Bubba Gump's

5  website violates WCAG 2.1 standards is informative to, but not dispositive of, whether it violates the

6  ADA.").

7       Because Moody offers impermissible legal conclusions that Fashion Nova's website is not

8  ADA complaint—the ultimate legal issues to be decided in this case—his opinions should be

9  stricken.

### D. Moody's Sole Reliance on the WCAG Guidelines Renders His Opinions Unreliable

11       Here, Moody's opinions are not helpful because there is no fit between Fashion Nova's

12  alleged non-compliance with WCAG 2.1 AA guidelines, and alleged non-compliance with the ADA.

13  For an expert's opinion and testimony to be appropriate, a "fit" must exist between the offered

14  opinion and the facts of the case. *Daubert*, 509 U.S. at 591, 113 S.Ct. 2786. There is no fit where a

15  large analytical leap must be made between the facts and the opinion. *See Gen. Elec. Co. v. Joiner*,

16  522 U.S. 136, 146 (1997) (offering animal studies showing one type of cancer in mice to establish

17  causation of another type of cancer in humans is "simply too great an analytical gap between the

18  data and the opinion offered").

20       Guidance from the Civil Rights Division of the U.S. Department of Justice ("DOJ") confirms

21  that the necessary fit between opinion and facts does not exist here. The DOJ is charged with

22  issuing regulations concerning the implementation of the ADA. See 42 U.S.C. § 12186(b) ("[T]he

23  Attorney General shall issue regulations in an accessible format to carry out the provisions of this

24  subchapter...."); *Bragdon v. Abbott*, 524 U.S. 624, 646 (1998) (noting that DOJ is "the agency

25  directed by Congress to issue implementing regulations, to render technical assistance explaining the

26  responsibilities of covered individuals and institutions, and to enforce Title III in court"). As noted

27  above, according to the Guidance on Web Accessibility and the ADA published by the DOJ,

28  "[b]usinesses and state and local governments have flexibility in how they comply with the ADA's

1   general requirements of nondiscrimination and effective communication." *See* Guidance on Web

2   Accessibility and the ADA, March 18, 2022 (available at https://www.ada.gov/resources/web-

3   guidance/).  "The Department of Justice does not have a regulation setting out detailed standards,"

4   *id.*, and no guideline has been prescribed by any other court or government body of which Fashion

5   Nova is aware.

6        There are *optional* guidelines that businesses and governmental organizations can follow to

7   improve accessibility, such as (1) the 18F Accessibility Guide published by 18F, a digital services

8   agency under the General Services Administration; (2) Section 508 Information and Communication

9   Technology Accessibility Standards published by the U.S. Access Board; and (3) the Web Content

10  Accessibility Guidelines (WCAG), published by the Web Accessibility initiative of the World Wide

11  Web Consortium, comprised essentially of businesses.  Within the WCAG guidelines, are different

12  levels of compliance, called A, AA, and AAA.

13       Instead, compliance with the WCAG is ultimately "a question of *remedy*, not liability." *Reed*

14  *v. CVS Pharm., Inc.,* No. 17-CV-3877 MWF (SKx), 2017 WL 4457508, at *4 (C.D. Cal. Oct. 3,

15  2017); *see also Robles v. Yum! Brands, Inc.*, No. 16-CV-8211, 2018 WL 566781, at *5 (C.D. Cal.

16  Jan. 24, 2018) ("Whether [the defendant's] digital offerings must comply with the WCAG[,] or any

17  other set of noncompulsory guidelines, is a question of remedy, not liability."); *Alcazar*, 2020 WL

18  4601364, at *4 ("whether Bubba Gump's website violates WCAG 2.1 standards is informative to,

19  but not dispositive of, whether it violates the ADA").  In other words, even if Fashion Nova's

20  website is not compliant with WCAG 2.1, that does not mean it is in violation of the ADA.  At most,

21  WCAG 2.1 compliance could be imposed as a remedy if a jury finds Fashion Nova to be liable.

22  However, expert testimony is not needed to impose such a remedy.

23       Moody opines on whether Fashion Nova's website as a whole, "include[s] barriers that

24  would prevent disabled persons, such as the Plaintiff, Mr. Juan Alcazar, from using the website."

25  Schwartz Decl., Ex. A (Moody Rep.) at 2. Moody opines that pursuant to the WCAG Guidelines, he

26  has identified barriers that exist on Fashion Nova's website and "they're impacting the people

27  visiting the site." *Id.* 121:20-123:15. Moody acknowledges the Department of Justice's Guidance on

28

Web Accessibility and ADA, and agrees there are guidelines other than the WCAG Guidelines that are used to determine whether or not a website is ADA-compliant. *See id.; see also generally* Schwartz Decl., Ex. B (Moody Dep.) Ex. 13 & 221:17-235:9. Yet, Moody concedes that he *only* consulted the WCAG Guidelines in making this determination and not any of the other available standard. *Id*. Moody further concedes that his belief that the WCAG is the "best standard" is based purely on his personal opinion and not supported by any publications or other sources. *Id*. Moody's sole reliance on the WCAG is particularly problematic, where, as here, he concludes that Fashion Nova's website is not ADA-compliant because it does not comply with the WCAG. Not only is this an impermissible legal conclusion, but it is a flawed one. *See, e.g.*, Alcazar, 2020 WL 4601364, at *4 (N.D. Cal. Aug. 11, 2020).

### E.   Moody's Opinions are Inadmissible Because They Are Unreliable, Unhelpful, and/or Not Based On Any Specialized Knowledge

Simple regurgitation of information reviewed by the expert must be excluded because such opinions do not meet the helpfulness criterion of Rule 702. *Navarro v. Hamilton*, No. 5:16-CV-1856-CAS(SPx), 2019 WL 351873, at *2 (C.D. Cal., Jan. 28, 2019) ("[w]hen an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's") (citing *U.S. v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017)).To be admissible, an expert's opinion must, at a minimum, be based on his "specialized knowledge." Fed. R. Evid. 702; *Navarro*, 2019 WL 351873, at *2 ("the value of expert testimony lies in the specialized knowledge that an expert brings to bear on an issue in dispute"). Perhaps with the sole exclusion of the manual testing that Moody conducted on Fashion Nova's website, the remainder of Moody's opinions fail this requirement because he does not draw on any "specialized knowledge" or expertise. *Id*. (excluding expert testimony that did not rely on any "specialized knowledge."

*First*, Moody states that he has relied on 42 declarations that were submitted by disabled persons who attempted to use Fashion Nova's website. Schwartz Decl., Ex. A (Moody Rep.) at 2, 3. Based on *merely reading* these declarations, Moody concluded that "all patrons were attempting to

1  visit the https://www.fashionnova.com website for the purpose of researching and purchasing

2  products sold by Fashion Nova. In each of the 42 declarations reviewed, the attempt to access the

3  website and use assistive technology resulted in barriers occurring thus making it impossible for the

4  declarant from accessing, researching, and purchasing products." *Id*. When testifying as to the

5  declarations, Moody admitted that all his did was read the declarations: he did not speak with any of

6  the declarants, he did not ask any clarifying questions, he does not know the declarants' medical

7  issues, and he does not know what computer systems or assistive technologies the declarants used to

8  access Fashion Nova's website. Schwartz Decl., Ex. B (Moody Dep.)196:9-16; 199:25-200:20.

9  These shortcomings are particularly glaring where, as here, the declarations were largely—sloppy—

10  copy and paste jobs. In several of the declarations, Moody admitted that the declarants concluded

11  that it was "impossible" to use the  "Adidas' website"—not Fashion Nova's. *Id.* 197:15-199:23.

12  Although this conclusion was admittedly "confusing," Moody did not attempt to clarify any of this.

13  Moody's mere summation of what he read does not draw on any "specialized knowledge." *Id*.

14      *Second* and similarly, Moody also relies on the expert reports of Kannan Arumugam and Jon

15  A. Krosnick. He states that Arumugam "identified many of the issues identified by the patrons who

16  submitted declarations" and then lists off some of the issues that Arumugam's report identified.

17  Schwartz Decl., Ex. A (Moody Rep.) at 4. Moody again merely read the reports. He admitted that he

18  did not do anything other than read the reports, he did not speak with either Arumugam or Krosnick,

19  he did not perform any of the tests, and he has "no way of assessing their methodology". *Id*., Ex. B

20  (Moody Dep.) 203:19-204:9. An expert's failure himself to examine the evidence impairs his ability

21  to "express a reliable expert opinion based upon specific facts." *Triton Energy Corp. v. Square D*

22  *Co*., 68 F.3d 1216, 1222 (9th Cir. 1995). As such, Moody's derivative opinions deserve no credence

23  whatsoever, and the Court should exclude them. *Daubert v. Merrell Dow Pharms., Inc. (Daubert II)*,

24  43 F.3d 1311, 1317-20 (9th Cir. 1995) ("If the proffered expert testimony is not based on

25  independent research, the party proffering it must come forward with other objective, verifiable

26  evidence that the testimony is based on 'scientifically valid principles.'").

27      *Lastly*, Moody's reliance on the Wayback Machine at Archive.org is fraught with serious

28  errors and should be stricken altogether. Not only is its reliability questionable, but Moody offers no

specialized knowledge in his analysis. In addition to testing a live version of Fashion Nova's website, Moody purported to test prior iterations using data captured by the Wayback. Schwartz Decl., Ex. A (Moody Rep.) at 2, 3, 6-7. Moody admits that if you look at the Wayback Machine's archive of sites you will find broken pages and that the Wayback Machine does not capture the full functionality of a website. *Id.*, Ex. B (Moody Dep.) 175:19-176:23. Indeed, Archive.org's guide to using the Wayback Machine, expressly states that JavaScript elements are hard to archive, and that users will find broken pages and missing graphics. *See* Using the Wayback Machine, https://help.archive.org/help/using-the-wayback-machine/ (last visited Nov. 29, 2023).  Moody also cannot point to any literature, case law, government guidance, industry guidance, or other authority that stands for the proposition that website captures are sufficiently reliable to test accessibility. *Id.* 170:8-172:22.

Moody specifically used the Deque program to run  an automated test on six Wayback captures consisting of screenshots of the Fashion Nova website that the Wayback machine captured on 5/29/2019, 8/5/2020, 8/29/2020, 9/1/2020, 9/19/2020, and 10/7/2020. Schwartz Decl., Ex. A (Moody Rep.) at 2, 3, 6-7. All Moody did was state that "Using a combination of Wayback and the automated testing of Deque, FDS was able to test the Defendant's website for specific dates in 2019 and 2020" and produce a chart which "identifies a date the Defendant's website was visited by a Declarant, the date Wayback captured a copy of the website, and errors identified by the Deque software." *Id.* No further information was provided. *Id.* Moody offers no specialized knowledge because all he did was apply an automated program to six screenshots and report the number of errors the automated program produced—with no analysis or interpretation. Nor does Moody purport to have any "specialized knowledge" with respect to the content on Fashion Nova's webpages, or even the archiving procedures used to capture that content. This is something that any layperson with access to the Deque software (which is available to the public) could have done. *See, e.g.*, *Alves v. Riverside Cnty.*, No. EDCV 19-2083 JGB (SHKx), 2023 WL 2983583, at *11 (C.D. Cal., Mar. 13, 2023) ("District courts frequently exclude proposed expert testimony about what a photograph or video shows, for '[w]hat a photograph depicts is readily visible to a lay person and is not a proper subject of expert testimony.') (citations omitted).

### F.   Moody's Testimony Cannot Be Used to Circumvent the Requirements of the Rules of Evidence

Finally, to the extent Plaintiff is proposing to offer as evidence in this case the webpages accessed through the Wayback Machine for their truth, Plaintiff must comply with the rules of evidence. Although Federal Rule of Evidence 703 allows an expert to rely upon certain types of inadmissible evidence in reaching his conclusions, using an expert to proffer otherwise inadmissible evidence is not proper under *Daubert* or the Federal Rules of Evidence. *See, e.g., In re James Wilson Assocs.*, 965 F.2d 160, 173 (7th Cir. 1992) ("the judge must make sure that the expert isn't being used as a vehicle for circumventing the rules of evidence").

Courts have held that webpages from the Wayback Machine can be authenticated by (1) a witness with personal knowledge about the content of the archived webpage; and/or (2) an affidavit from an Internet Archive employee. *See Henderson v. Lindland*, No. CV11-01350 DDP (DTBx), 2012 WL 12885104, at *4  (C.D. Cal., Aug. 15, 2012)(determining that an affidavit from an Internet Archive employee are sufficient); *Michael Grecco Prods. Inc. v. NetEase Info. Tech. Corp.,* No. CV 18-3119 DSF (RAOx) 2018 WL 6443082, at *1 (C.D. Cal., Sept. 24, 2018) (requiring webpages to be "authenticated by someone with personal knowledge of how the Wayback Machine creates an unaltered copy of a website as it appeared on a particular day"). Moody does not meet either of these criteria. He had no personal involvement in the design of Fashion Nova's websites, nor the Internet Archive's work in archiving any Fashion Nova's website, and he is not an employee of the Internet Archive. Accordingly, Moody's Report and testimony is insufficient to authenticate—much less establish a hearsay exception applicable to—screenshots from the Wayback Machine. The Court should reject any efforts on the part of Plaintiffs to circumvent the rules of evidence through Moody's Report and testimony.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that Court exclude any evidence, testimony, and/or argument regarding certain expert opinions of Robert Moody.

1

Dated:  November 30, 2023

By:  */s/ Amy Lally*

2

Chad S. Hummel (SBN 139055)
chummel@sidley.com
Amy P. Lally (SBN 198555)
alally@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: (310) 595-9662
Facsimile: (310) 595-9501

3

4

5

6

7

Eric B. Schwartz (SBN 266554)
eschwartz@sidley.com
Anna Tutundjian (SBN 309969)
atutundjian@sidley.com
Marissa X. Hernandez (SBN 341449)
marissa.hernandez@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

8

9

10

11

12

Attorneys for Defendant
FASHION NOVA, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION TO EXCLUDE EXPERT OPINIONS OF ROBERT MOODY