# Exhibit A

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

JUAN ALCAZAR, individually and on
Behalf of others similarly situated,
      Plaintiff,

vs.

FASHION NOVA, INC., a California
Corporation; and DOES 1 TO 10, inclusive,
      Defendants.
_____ /

## Expert Report of Robert D. Moody

Forensic Data Services, Inc., d/b/a FDS Global (hereafter referred to as FDS Global), have been retained by the Wilshire Law Firm on behalf of its client(s), who includes Juan Alcazar.

The Wilshire Law Firm, in this present case, has brought a class action lawsuit alleging the Defendant, Fashion Nova, Inc's website contains barriers that prevent the use of the website by disabled persons, the Plaintiff being one.

I, Robert D. Moody, am the President, CEO, and Principal Investigator for FDS Global. I am certified in the areas of Information Systems Auditing, Information Security, and Computer Forensics, among others.

I have undertaken and completed training relating to the ADA application to websites and the development and use of websites by disabled persons.

I have been asked and authored ADA audit reports on approximately 2000 different websites.

I have provided my expertise to both Plaintiffs and Defendants and have on occasion been asked to help Defendants remediate their websites post-settlement and to provide post-settlement evaluations of websites once remediation efforts have been completed.

I am being compensated at a rate of $450/hour. No part of my compensation is contingent upon my opinion.



To further improve its FDS Global has partnered with Deque Systems, Inc., a leader in the ADA website issue identification and remediation space, and have incorporated its identification software and methodologies into FDS' own practices for website auditing and reporting. I have attached my CV as **Exhibit 1** to better explain my education and experience.

## Defendant website

The Defendant's website, as identified in the complaint, is https://www.fashionnova.com. This is the website FDS Global evaluated and is the subject of this report.

## Material Reviewed as part of FDS' Examination

FDS was retained to audit the afore-identified website and to render an opinion as to whether or not the website https://www.fashionnova.com included barriers that would prevent disabled persons, such as the Plaintiff, Mr. Juan Alcazar, from using the website.

As part of my review, I was provided with the following supporting information:

- 42 declarations were submitted by disabled persons who attempted to use the afore-identified website.

- Expert report of Accessibility Consultant, Kannan Arumugam.

- Expert report of Dr. Jon A. Krosnick.

Additionally, I have access to the website located at https://www.fashionnova.com as well as earlier instances of the website through the Wayback machine located at web.archive.org.

The above information was reviewed as to create an understanding of the issues and facts in this matter. All opinions and conclusions are based on my work and the results from my testing and analysis.

## Review Process

FDS Global's review process can be summarized as follows:

- First, there is a review of the complaint and all supporting material. This is to identify both general and specific issues raised with Defendant's website.

- Second, a manual review of the website is performed to test the elements of WCAG as well as any concerns raised in paragraph 16.

- Third, Automated analysis of Defendant's website using industry standard tools that may include WAVE and Deque.

- Fourth, A review of any third-party accessibility software or widgets (if any exist) are reviewed and tested to determine if the add-on features improve accessibility.

- Fifth, when possible, a review of earlier websites is performed through the Wayback machine in an attempt to understand whether or not the issues (if any exist) are systemic to the site or whether they are specific to the version that is active at the time of the review.

- Sixth, the website's accessibility policy (if it exists) is reviewed and tested. This is to identify if Defendant has provided an alternate means for its patrons to access the store's resources and obtain the information and/or make the purchase the patron could not accomplish through the direct use of the website.

**Issues Raised in Declarations by Plaintiff and Others**

A review of 42 declarations, provided by Plaintiff's counsel, showed that all patrons were attempting to visit the https://www.fashionnova.com website for the purpose of researching and purchasing products sold by Fashion Nova.

In each of the 42 declarations reviewed, the attempt to access the website and use assistive technology resulted in barriers occurring thus making it impossible for the declarant from accessing, researching, and purchasing products.

Specific examples of the issues include but are not limited to:

- Issues with the website loading into the Plaintiff's screen reader and having its contents properly and clearly interpreted so that the patron could understand what was being relayed by the software, for that portion of the website.

- There was a conflict in content being loaded when it had to be interpreted by the screen reader.

- Contrast issues.

- Links contained within the website were broken, unavailable or lacked proper functionality.

- Links and pictures lacked descriptions and could not be properly interpreted by screen readers.

- Functionality and workflow of the site did not work correctly when a screen reader was enabled.

## Issues Identified by Kannan Arumugam, Accessibility Consultant

Mr. Arumugam's testing of Defendant's website mirrored how Plaintiff(s) would have accessed the site.

The testing employed by Mr. Arumugam identified many of the issues identified by the patrons who submitted declarations and are referenced above.

Issues identified include but are not limited to:

- Links could not be interpreted by the screen reader software.

- Color Contrast issues exist.

- Images and links lacked Alt-Text thus hindering screen readers' interpretation of the link or the image's content.

- Forms found on the website were not properly designed and could not be interpreted using assistive technology.

- Program issues exist thus making the use of a keyboard-only environment impossible.

## Manual Review of https://www.fashionnova.com

The manual review FDS performs of Defendant's website is a key component in understanding how a website behaved given the different variables each Plaintiff would bring with their technology.

FDS' review used different computer operating systems, different screen readers, and different web browsers among other variables.

During its testing WCAG guidelines provided the standard for FDS' review. This allowed FDS to evaluate the site and its components but also claims made by the Declarant and the accessibility consultant.

In its review, FDS identified that there is an issue in the website in the way in which it interacts with different screen readers.

The screen readers do not work properly on the Defendant's website and will begin and stop reading content without user interaction, skip content, skip over links and text if the interaction is required and the user pauses for too long.

A contrast check was performed and found that some images failed the WCAG recommended color balance. This was further verified in the automated testing.

The forms and special features such as the checkout feature will cause the system to freeze or in the alternative stop the screen reader from working correctly.

Simpler issues such as account links, images having no alternate text, being mislabeled, or having program issues causing the screen reader to skip them altogether exist as well.

**Automated Review Tools**

Two ADA Site audit tools were used to evaluate the current version of the website. These tools are:

- WAVE
- Deque

These tools are designed to examine the website's logic and computer code for issues that would create barriers to the website's use by disabled patrons.

The main advantage of using these programs is that it allows for an effective way to look for issues that may be hidden from the naked eye and point toward systemic design problems or flaws.

FDS evaluated the Defendant's current website with WAVE.  As described, the software evaluated the website's code and logic for issues that would point to the creation of barriers for disabled patrons.

WAVE identified the following:

- Errors             126
- Contrast Errors    11
- Alerts             26
- Features           19

- Structural Elements     72
- Aria Issues     121

Deque Site Evaluation was performed, and the following were identified:

- Total Issues:     444
- Critical:     358
- Serious:     74
- Moderate:     1
- Minor:     11

The two reports provide data regarding the logic and programming and where issues exist that would create barriers for disabled patrons. These reports strongly suggest that critical operations are being overlooked and thus making the use of the website an impossibility for those with disabilities.

### 3rd Party Accessibility Software and Widgets

This website does not employ 3rd Party Accessibility Software or Widgets as a way to overcome the technical issues being experienced by patrons.

### Earlier Website Review

FDS reviewed the 42 Declarations provided by Plaintiff's Counsel. These declarations provided that the Defendant's website was accessed in 2019 but the majority of the access was in 2020.

No matter the date of access, the Declarant stated that they had issues with navigating the Defendant's website, even with the use of assistive technologies such as screen readers.

The Internet Archive Wayback machine (hereafter referred to as Wayback) is a website archival tool owned by the Internet Archive, a non-profit whose mission is to build "a digital library of Internet sites and other cultural artifacts in digital form."

Wayback uses computer programs known as "bots" or "spiders" to capture the contents of websites. The bots are autonomous and crawl across the internet looking for data to copy/capture and then return and store the information.

Wayback's portal provides users with a place to put in a URL for a particular website. If the website had been captured, information about the website is displayed.

In the case of the Defendant's website, Wayback has captured the site 4,752 times between 2004 and 2023.

Based on the Declarations reviewed, the Declarants stated that their access was primarily in the months of August, September, and October 2020.

During this time period, Wayback captured and stored 61 renditions of Defendant's website.

Using a combination of Wayback and the automated testing of Deque, FDS was able to test the Defendant's website for specific dates in 2019 and 2020.

The following chart identifies a date the Defendant's website was visited by a Declarant, the date Wayback captured a copy of the website, and errors identified by the Deque software.

| Item # | Visit Date | Wayback Capture | Errors |
|---|---|---|---|
| 1 | 5/31/2019 | 5/29/2019 | 46 |
| 2 | 8/2/2020 | 8/5/2020 | 86 |
| 3 | 8/27/2020 | 8/29/2020 | 85 |
| 4 | 9/1/2020 | 9/1/2020 | 81 |
| 5 | 9/15/2020 | 9/19/2020 | 128 |
| 6 | 10/6/2020 | 10/7/2020 | 121 |

The data presented is representative of the errors that existed in the Defendant website and strongly suggests that there are systemic or programmatic errors that existed at this time and well into the present.

**Defendant's Website Accessibility Policy**

The accessibility policy (hereafter referred to as AP) on any website serves as notice to the user of the website's owner's commitment to providing access to its website and the products and services the owner sells. Additionally, the AP provides an alternate means for the patron to connect with the owner and receive assistance in obtaining information, researching products and services, making purchases, returns and conduct whatever business the patron may have or would have conducted through the website itself.

Not having an AP or not having a properly functioning AP is a barrier for disable patrons and will prevent the disabled patron from being able to use and interact with the company on any level.

In the current matter, FDS checked the current website for an accessibility policy. None could be found.

Additionally, using Wayback, FDS checked earlier versions of the Defendant's website, specifically at or around the dates the Declarant accessed the website and no AP could be found.

**Conclusion**

The data and documents provided to FDS, for its review, clearly show that the Defendant's website located at https://www.fashionnova.com has been systematically and programmatically flawed since at least 2018 and thus has created barriers for disabled patrons for years.

The Defendant's website is fluid by the nature of its industry always subject to updating photos and customer discounts in an attempt to drive traffic and sales. Unfortunately, where there are issues with picture contrasts or proper alternate texts for the newly added items, the main issues have to do with operational and program issues that are magnified when a disabled user has to use assistive technology during their visit to the website.

Whether it be from the declarations, the testing by other accessibility consultants, or from FDS' own analysis, the record is clear, and Defendant's website has major issues when a user is accessing the website while using screen readers or other ADA-approved assistive technologies.

Once the site falters or fails, a company that has an Accessibility Policy and provides dedicated phone numbers and emails can provide an alternate means for the disabled patron to continue or save their shopping experience.

In the present case, this is not possible as the Defendant does not provide this option.

The failure of the Defendant's website and its compatibility issues with screen readers does more than limit the access to online research and purchases. It can and does impact the disabled user from accessing brick-and-mortar locations, phone numbers, and store hours thus preventing any commerce with the store directly.

To conclude, it is my opinion, and based upon reasonable scientific certainty that the Defendant, Fashion Nova Inc., who operates the website https://www.fashionnova.com, has program and design issues in its website that has been systemic for years and as such has created access barriers for disabled users that are both physical and digital in nature and thus violates the disabled users rights as provided under the ADA.

The Defendant's ability to provide a WCAG compliant website does not appear to have been undertaken and even though an alternate means for providing assistance in the event of a website issue is available to the Defendant, a properly functioning Accessibility Policy, the Defendant has not availed themselves of this option.

As presented in the declarations provided, a disabled user, using assistive technology such as a screen reader, would be frustrated by the Defendant's website partially failing or crashing thus preventing its use and forcing the disabled user to disconnect and not complete his or her business with the Defendant. Given that no alternate means was available to the disabled user, as well as creating the physical barrier of preventing the disabled user from locating phone numbers, store locations, and hours of operation is out of the question.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Respectfully Submitted,

Robert D Moody
Rmoody@fds.global
(954) 727 – 1957

23 June 2023

# EXHIBIT 1



# Robert D. Moody

 

## Contact Information

**Robert D. Moody**
Forensic Data Services, Inc. (d/b/a FDS Global)
3325 South University Drive, Suite 206
Davie, Florida 33328
(954) 727 – 1957
(954) 854 - 6004

## Education

Nova Southeastern University, Broward County Florida, Bachelor of Science, 1990

St. Thomas University School of Law, Miami-Dade County Florida, Juris Doctorate, 1993

Oxford University, Oxford England, PGDip — Global Business, 2017

## Certification

Certified as an Information Systems Auditor (CISA), Information Systems Audit and Control Association, 2002

Certified as an Information Security Manager (CISM), Information Systems Audit and Control Association, 2003

Certified in Computer Forensics, Oregon State University, 2003

Certified as an Access Data Certified Examiner (ACE), Access Data Corporation, 2009, 2015

Certified in Blockchain Essentials, eCornell, Cornell University, 2021

Forensic Explorer Certified Examiner (FEXCE), GetData Forensics, 2022

**Blockchain Training**

- Cryptocurrencies and Ledgers, eCornell, Cornell University

- Blockchain Fundamentals, eCornell, Cornell University

- Cryptography Essentials, eCornell, Cornell University

- Applications of Blockchain Technology, eCornell, Cornell University

**ADA / Website Accessibility Training**

- Web Accessibility: Learn the Best Practices, Tools, and Techniques

- Web Accessibility Testing – Selenium, BDD, Axe, Pally, Jaws, NVDA

- Responsive Web and Mobile Development in HTML, CSS & JavaScript

- Creating Accessible Websites

- HTML

- Create Mobile-Friendly Web Apps with HTML

- Web Content Accessibility Guidelines (WCAG) 2.1 Simplified

- Introduction to UX design for Accessibility and WCAG 2.0

- Technological Adaptability

- What to Look for in an Accessibility Audit

- The ROI of Digital Accessibility

- What to Expect from an Accessibility Audit

- Accessibility and Compliance: How to Measure Digital Accessibility

- Introduction to Screen Readers

- Android Native Mobility Accessibility

- IOS Native Mobile Accessibility

## Expert Witness Experience

<u>United States of America v. Christopher Chappell,</u> In the United States District Court for the Southern District of Florida, Case No. 22-60148-CR-SMITH, testified at Sentencing Hearing as to the lack of CSAM on the Defendant's devices and to the condition of metadata from mobile devices that contradicted the testimony of the Government's witnesses.

<u>State of Florida v. Joseph Baldino,</u> In the Circuit Court of the 19th Judicial Circuit In and For St. Lucie County, Florida, Case No. 562011CF1300, Case on Appeal, Testified as to work I performed in support of Defendant's appeal.(Deposition)

<u>State of Florida v. Michael Tateishi,</u> In the Circuit Court of the 10th Judicial Circuit, In and For Polk County Florida, Case No. 2020-CF009494, testified as to the need to inspect evidence and the protocol for doing so when evidence contained CSAM. (Hearing)

<u>Dean Allen Burri, et al v. EBS South, Inc., et al,</u> In the Circuit Court of the 11th Judicial Circuit, in and for Miami-Dade County, Florida (Civil Division), Case No. 2021-004363-CA-01, Testified as to different issues that occurred in the case. (Multiple Hearings)

<u>Latasha West v. Moral Foods. LLC. ,</u> In the Circuit Court of the 17th Judicial Circuit, In and For Broward County, Florida, Case No.: CACE-14-017346 (09), Testified as to the process and analysis associated with surveillance video footage provided by Defendant. (Deposition)

<u>Coastal Construction Company of Palm Beach. Inc. d/b/a Coastal Construction of Palm Beach v. Roll Plumbing Company. Inc.,</u> In the Circuit Court for the 11th Judicial Circuit, In and for Miami-Dade County, Florida, Case No.: 08-56455-CA-23, Testified at Evidentiary Hearing regarding the destruction of data and the likelihood of valuable evidence existing if the hard drive had not been tampered with. (Evidentiary Hearing)

<u>Jason Lee and Fine Marketing Solutions. LLC v. Kenneth A. Orr, Evan H. Berger. Triumph Small Cap Fund. Inc. J.D. Lauren, Inc. Solar Grid Capitol. Inc. and Ecologix Resource Group, Inc.,</u> In the Circuit Court for the 11th Judicial Circuit, In and For Miami-Dade County, Florida, Case No.: 2012-031582-CA-OI, Testified at Evidentiary Hearing regarding the process for examining evidence. (Evidentiary Hearing)

<u>C.T. and L.T. individually and as parents and Guardians of B.T., a minor v. A.S. and M.S. and SS, a Minor,</u> In the United States District Court for the Southern District of Florida … Records Sealed. (Testified at Hearings)

<u>Mary Laurine Umstead v. Horizon Bay Mgt, LLC, et al.</u> In the Circuit Court of the 13th Judicial Circuit of the State of Florida in and For Hillsborough County, Circuit Civil, Testified at Trial as to whether or not the information contained in an Electronic Medical Record system was accurate and whether or not certain operational practices were followed. (Trial)

<u>In Re: Rothstein Rosenfeld and Adler,</u> US Bankruptcy Court for the Southern District of Florida, Case No. : 09-34791-BKC-RBR, Testified at Evidentiary Hearing to qualifications and to be appointed as the Court's expert. Accepted as an Expert and appointed to address complex technical issues facing the Court and issued a report on the same. (Evidentiary Hearing)

<u>United States of America v. Michael Meister,</u> United States District Court Middle District of Florida, Case No. 8:10-CR-339-T-26AEP, Testified at Evidentiary Hearing regarding the complex issues involved in the collection, and preservation review, and analysis associated with the Governments case. (Evidentiary Hearing)

United States of America v. William Vazquez Rivera, In the United States District Court for the District of Puerto Rico, Criminal Number 09-361 (JAF), Testified at Trial regarding issues with identifying the specific location of a computer as well as identifying the individual who was at the computer at a specific date and time. (Trial)

Mathew Beck. et al. v. Boce Group, LLC d/b/a Next Café. et al. US District Court for the Southern District of Florida, Case No.: 04-20683-CIV-Cooke, testified regarding the destruction of computer data, the existence of an audit trail, and the possible manipulation of time-keeping records. (Deposition and Trial)

Health Trio v. Ralph Korpman. et al. In the Chancery Court for Davidson County, Tennessee, 20th Judicial District, Civil Action No., 05-559-111, Testified on the potential destruction of evidence, a possible violation of a court order preserving all information on the computer, and the possible destruction of evidence through the use of file scrubbing software. (Deposition and Trial)

William P. Planes, Sr. v. Rocky Shirey. et al., In the Circuit Court for the 6th Judicial Circuit in and for Pinellas County, Florida, Case No.: 06-9077-CI-19, Testified at Evidentiary Hearing regarding issues involving the identification and preservation of data belonging to the Defendants. (Evidentiary Hearing)

Jan Bronstein v. Marc Bronstein, United States District Court, Southern District of Florida, Case No.: 0680656, Testified at deposition regarding the ownership and go-live date of a company's website and its domain. (Deposition)

In Re: The Marriage of Stuart Pressman and Wendy Bulgrin. In the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida, Case No.: 06-008172, Testified on topics that included the collection, preservation, and processing of data stored within a Point-of-Sale System used by the couple's business and inventory issues. (Evidentiary Hearing, Deposition, and Trial)

Building Education Corporation v. Jose Manuel Fernandez. et al. In the Circuit Court of the 11th Judicial Circuit in and for Miami Dade County, Florida, Case No.: 03-15909 CA 09, Testified at Evidentiary Hearing providing information to the Court for possible selection as a neutral expert in the investigation and tracking ESI through a large IT infrastructure. (Evidentiary Hearing)

Microsoft Corporation V. Big BQY Distribution. LLC/ In the United States District Court in and for the Southern District of Florida, Case No.: 07-80296-CIV-Hurley/Vitunac, testified at deposition regarding the examination of Plaintiff's expert's report and the methods used by the said expert in coming to their conclusions. (Deposition)

Orlando/Orange County Expressway Authority v. Tuscan Ridge. et al., In the Circuit Court of the 9th Judicial Circuit in and for Orange County, Florida, Case No.: 2006-CA-006250-O, Testified at Evidentiary Hearing regarding establishing the true and correct Metadata information associated with computer files created by an expert in an Eminent Domain action. (Evidentiary Hearing)

Med Qata Infotech USA, Inc. v. Unnikrishnan Thankappan. et al, In the Circuit Court of the 6th Judicial Circuit in and for Pasco County, Florida. Case No.: 51-2004-CA-00321WS, testified at deposition regarding the contents of several hard drives containing information relating to computer software created by Plaintiff. (Deposition)

Contractors. Inc. v. Turner Construction Company, et al. In the Circuit Court of the 11th Judicial Circuit, in and for Miami-Dade County, Florida, Complex Business Litigation Section, Case No.: 02-32516CA-40, Testified at Evidentiary Hearing regarding addressing the collection, preservation, processing, analysis, and possible destruction of evidence. (Evidentiary Hearing)

Benjamin J. Philips, Ill v. Oracle USA, Inc: In the Circuit Court of the 4th Judicial Circuit, in and for Duval County, Florida, Case No.: 16-2007-CA-006905-XXXX-MA, Division CV-E, Testified at Evidentiary Hearing regarding issues surrounding the destruction of evidence from a company-owned laptop used by Plaintiff. (Evidentiary Hearing)

Jessica Lane v. Adam Gerry. In the Circuit Court for the 20th Judicial Circuit in and for Collier County, Florida, Civil Action No. 08-9521-CA, testified at deposition regarding issues surrounding the disappearance of a laptop and the information found on the device after it had been recovered. (Deposition)

The Florida Bar v. Jeremy W. Alters, In and for the Supreme Court of Florida (Before a Referee) Supreme Court Case No.: SC14-100, Testified at Trial regarding cellphone data being deleted and process for examining evidence. (Trial)

Teaching and lectures by Topic

- FBI Retired Agent's Event – "What one can recover from a mobile device."

- Adjunct Professor — IE Business School, Madrid Spain, master's in cyber security, my area of responsibility is in Digital Forensics and Computer Crimes.

- Computer Forensic Issues important to the Criminal Defense Bar. Private event sponsored by FDS. In May 2016, Event provided instruction on six different forensic challenges facing criminal defense attorneys in practice.

- Mobile Devices and BYOD/CYOD: the eDiscovery Challenges, Panelist, LawTech Europe Congress 2015 Conference, October 2015.

- The Lifecycle of Electronic Evidence - Have we Finally Got it Right? Panelist, LawTech Europe Congress 2015 Conference, October 2015.

- Cellular Phone Tracking Via Cell Towers - Dispelling the Postmortem Analysis Myth, 7th European Academy of Forensic Science Conference, September 2015.

- Digital Security and the Dangers Facing Every Employer, 7th European Academy of Forensic Science Conference, September 2015.

- Cellular Phone Tracking Via Cell Towers — Dispelling the Postmortem Analysis Myth, High Technology Crime Investigation Association, August 2015.

- 48 Hours of a Cyber Security Breach — What to Do from a Technical Standpoint: A First Responder Case Study, The Daily Business Review's Corporate Counsel Summit, May 2015.

- Data Security: What is a RAT? (Remote Access Trojan), Daily Business Review's Corporate Counsel Summit, November 2014.

- Data Security, Keeping Your Database, Customer Information and Other Proprietary Information Safe and What to Do If There Is A Security Breach, Daily Business Review's Corporate Counsel Summit, April 2013.

- Data Security, LawTech Miami, November 2013.

Publications

- Globalization and Data Protection — An Analysis of Practicality, PGDIP — Global Business, Oxford University, February 2017.

- Electronic Discovery — 21st Century Road map, Georgia Defense Lawyers Association Periodical, May 2006.

- Firms Face Forensic Challenge, South Florida Business Journal, May 2006.

- Electronic Discovery: A Smart Five-Step Approach, South Florida Legal Guide, November 2006, Reprinted 2007.

- What Every Business Needs to Know about Evidence Preservation and Electronic Discovery Issues, September 2007.

- Forensic Times Newsletter, 2007 & 2008. (Trade Publication produced by firm)

- Discovery Requests: Knowing when and how to proceed can save thousands and the case, Smart Business, May 2008.

- How to obtain information from an Internet Service Provider, 2016.

**PROOF OF SERVICE**

*Juan Alcazar, et al. v. Fashion Nova, Inc.*
3:20-cv-01434-TSH

I, Jennifer M. Mitchell, am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to this action. My business address is 3055 Wilshire Blvd., 12th Fl., Los Angeles, California 90010. My electronic service address is *jmitchell@wilshirelawfirm.com*. On **June 23, 2023**, I served the foregoing document described as:

**PLAINTIFF'S EXPERT DISCLOSURE PER FRCP 26(a)(2)(B)**

**[✓]      BY ELECTRONIC SERVICE:** Based on an agreement of the parties to accept electronic service, I caused the document(s) identified above to be sent to the person(s) at the electronic service addresses listed in the below Service List, pursuant to FRCP 5(b)(2)(E). I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

| | |
|---|---|
| Ryan L. Eddings | Kara Adelle Ritter Cole |
| Bar No. 256519 | Bar No. 306515 |
| *reddings@littler.com* | *kcole@littler.com* |
| LITTLER MENDELSON, P.C. | LITTLER MENDELSON, P.C. |
| 5200 North Palm Avenue | 501 W. Broadway |
| Suite 302 | Suite 900 |
| Fresno, CA  93704–2225 | San Diego, California 92101–3577 |
| Telephone:  559.244.7500 | Telephone:  619.232.0441 |
| Facsimile:   559.244.7525 | Facsimile:   619.232.4302 |

*Attorneys for Fashion Nova, Inc.*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this **June 23, 2023** at Los Angeles, California.

*/s/ Jennifer M. Mitchell*
Jennifer M. Mitchell

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137