Thiago M. Coelho, SBN 324715
*thiago@wilshirelawfirm.com*
Shahin Rezvani, SBN 199614
*srezvani@wilshirelawfirm.com*
Jennifer M. Leinbach, SBN 281404
*jleinbach@wilshirelawfirm.com*
Jesenia A. Martinez, SBN 316969
*jesenia.martinez@wilshirelawfirm.com*
Jesse S. Chen, SBN 336294
*jchen@wilshirelawfirm.com*
**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd., 12th Floor
Los Angeles, California 90010
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

*Attorneys for Plaintiffs*
*and the Nationwide and California Classes*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN ALCAZAR, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> FASHION NOVA, INC., a California corporation; and DOES 1 to 10, inclusive, <br><br> Defendants. | Case No.:  4:20-cv-01434-JST <br><br> <u>CLASS ACTION</u> <br><br> *Assigned to Hon. Jon S. Tigar* <br> *Courtroom 6* <br><br> **PLAINTIFF JUAN ALCAZAR'S OPPOSITION TO DEFENDANT FASHION NOVA, INC.'S MOTION TO EXCLUDE OR, ALTERNATIVELY, TO LIMIT THE EVIDENCE, TESTIMONY, AND/OR ARGUMENT RE: EXPERT OPINIONS OF DR. ROBERT MOODY** <br><br> Date: January 4, 2024 <br><br> Complaint filed:  February 26, 2020 <br> Trial Date:          April 8, 2024 |

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

1

# TABLE OF CONTENTS

2

3   TABLE OF CONTENTS ...........................................................................................i

4   TABLE OF AUTHORITIES ....................................................................................ii

5   MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 1

6   I.    INTRODUCTION ........................................................................................ 1

7   II.   BACKGROUND .......................................................................................... 3

8        A.   Factual Background ............................................................................ 3

9        B.   Procedural Posture ............................................................................. 4

10  III.  ARGUMENT ................................................................................................ 4

11        LEGAL STANDARD .................................................................................. 4

12        A.   Mr. Moody is More than Qualified to Opine on Website Accessibility ...................... 5

13        B.   Mr. Moody Does Not Offer Legal Opinion ........................................ 8

14        C.   Mr. Moody's Testimony is Relevant and Admissible ...................... 10

15              1.   *Defendant's Assertion that Mr. Moody Asked the "Wrong Question" is*

16                  *Unavailing*................................................................................ 10

17              2.   *The WCAG is the Correct Standard* ...................................... 11

18        D.   Mr. Moody's Reliance Upon Declarations Provided by Mr. Alcazar and Class

19              Members, as Well as the Reports of Other Experts in this Action, is Proper............ 14

20        E.   Mr. Moody's Use of the Wayback Machine Is Reliable ......................................... 16

21  IV.   CONCLUSION ........................................................................................... 18

22

23

24

25

26

27

28

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

i

**TABLE OF AUTHORITIES**

**Cases**

*Abaxis, Inc. v. Cepheid,*
No. 10–CV–02840–LHK, 2012 WL 2979019 (N.D. Cal. July 19, 2012) ................................. 6

*Abu-Lughod v. Calis,*
No. CV 13-2702 DMG (RZX), 2015 WL 12746198 (C.D. Cal., May 20, 2015) .................. 18

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.,*
738 F.3d 960 (9th Cir. 2013) ........................................................................................ 5

*Alcazar v. Bubba Gump Shrimp Co. Restaurants, Inc.,*
No. 20-CV-02771-DMR, 2020 WL 4601364 (N.D. Cal. Aug. 11, 2020) ............................ 12

*Allen v. Ghoulish Gallery,*
No. 06CV371 NLS, 2007 WL 4207923 (S.D. Cal. Nov. 20, 2007) ..................................... 18

*Apple, Inc. v. Samsung Elecs. Co.,*
No. 11-CV-01846-LHK, 2012 WL 2571332 (N.D. Cal. June 30, 2012) ............................. 12

*Asetek Danmark A/S v. CMI USA, Inc.,*
No. 13-CV-00457-JST, 2014 WL 5590699 (N.D. Cal., Nov. 3, 2014) (Tigar, J.),
*aff'd,* 852 F.3d 1352 (2017) ......................................................................................... 6

*Broussard v. Univ. of California,*
192 F.3d 1252 (9th Cir. 1999) ...................................................................................... 9

*California Foundation for Independent Living Centers v. County of Sacramento,*
142 F.Supp.3d 1035 (E.D. Cal. 2015) ....................................................................... 1, 8, 9

*Daubert v. Merrell Dow Pharm., Inc.,*
509 U.S. 579 (1993) ............................................................................................. 5, 11, 12

*Erickson v. Nebraska Mach. Co.,*
No. 15-cv-01147-JD, 2015 WL 4089849 (N.D. Cal. July 6, 2015) .................................... 3

*FTC v. Qualcom Inc.,* No.
17-CV-00220-LHK, 2018 WL 6615050 (N.D. Cal. Dec. 17, 2018) ................................... 6

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

*Grewal v. Choudhury,*

377 F. App'x 617 (9th Cir. 2010) ..................................................................7

*Hangarter v. Provident Life & Acc. Ins. Co.,*

373 F.3d 998 (9th Cir. 2000) ...........................................................5, 8, 9, 17

*Hubbard v. Twin Oaks Health and Rehab. Or.,*

408 F.Supp.2d 923 (E.D. Cal. 2004)..............................................................9

*In re Bard IVC Filters Prod. Liability Litig.,*

No. MDL 15-02641-PHX DGC, 2017 WL 11696720 (D. Ariz. Dec. 22, 2017) ...................15

*In re Toyota Motor Corp. Unintended Acceleration Mtkg.,*

Sales Practices, and Prod. Liability Litig.,

978 F.Supp.2d 1053 (C.D. Cal. 2013) ...........................................................15

*In re Twitter, Inc. Sec. Litig.,*

No. 16-CV-05314-JST, 2020 WL 13863616 (N.D. Cal., Jan. 28, 2020) (Tigar, J.) ...............5

*Int'l Adhesive Coating Co., Inc. v. Bolton Emerson Int'l, Inc.,*

851 F.2d 540 (1st Cir. 1998).........................................................................17

*Jerpe v. Aerospatiale,*

No. CIV. S–03–555 LKK/DAD, 2007 WL 1394969 (E.D. Cal. May 10, 2007) ..........2, 14, 15

*Kennedy v. Collagen Corp.,*

161 F.3d 1226 (9th Cir. 1998) .....................................................................11

*Le v. H and S Investments Group, LLC,*

No. EDCV21-16 JGB (SPX), 2023 WL 4247710 (C.D. Cal. Jan. 4, 2023)......................1, 10

*Leer v. Murphy,*

844 F.2d 628 (9th Cir. 1988) ........................................................................7

*Massok v. Keller Indus., Inc.,*

174 Fed.Appx. 651 (9th Cir. 2005)..................................................................6

*Nationwide Trans. Fin. V. Cass Info. Sys., Inc.,*

523 F.3d 1051 (9th Cir. 2008) ......................................................................8

PLAINTIFF'S OPPOSITION TO MOTION TO EXCLUDE OR LIMIT
EXPERT OPINIONS OF MOODY

*Nguyen v. Nissan N. Am., Inc.*,

    487 F. Supp. 3d 845 (N.D. Cal. 2020) ...................................................................................... 7

*Oracle Am., Inc. v. Hewlett Packard Enterprise Co.*,

    No. 16-cv-01393-JST, 2018 WL 6511147 (N.D. Cal. Dec. 11, 2018) (Tigar, J.) ................... 5

*Primiano v. Cook*,

    598 F.3d 558 (9th Cir. 2010) ................................................................................................... 5

*Rearden LLC v. Walt Disney Co.*,

    No. 17-CV-04006-JST, 2023 WL 6796017 (N.D. Cal. Oct. 13, 2023) (Tigar, J.) ................. 17

*Robles v. Yum! Brands, Inc.*,

    No. 16-CV-8211, 2018 WL 566781 (C.D. Cal. Jan. 24, 2018) ............................................... 12

*Syncsort Inc. v. Innovative Routines Int'l, Inc.*,

    No. CIVA 04-3623 (WHW), 2008 WL 1925304 (D.N.J. Apr. 30, 2008) .............................. 18

*Telewizja Polska USA, Inc. v. Echostar Satellite Corp.*,

    No. 02 C 3293, 2004 WL 2367740 (N.D. Ill. Oct. 15, 2004) ................................................ 18

*Todd v. Tempur-Sealy Int'l, Inc.*,

    No. 13-CV-04984-JST, 2016 WL 5462428 (N.D. Cal. Sept. 28, 2016) ........................... 1, 6, 7

*U.S. v. Allen*,

    10 F.3d 405, (7th Cir. 1993) .................................................................................................... 8

*U.S. v. Boulware*,

    558 F.3d 971 (9th Cir. 2009) .................................................................................................. 10

*U.S. v. Brodie*,

    858 F.2d 492 (9th Cir. 1988) ................................................................................................... 9

*U.S. v. Chang*,

    207 F.3d 1169 (9th Cir. 2000) ................................................................................................. 7

*U.S. v. Hanna*,

    293 F.3d 1080 (9th Cir. 2002) ............................................................................................... 10

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

iv

PLAINTIFF'S OPPOSITION TO MOTION TO EXCLUDE OR LIMIT
EXPERT OPINIONS OF MOODY

*U.S. v. Rogers*,

  769 F.2d 1418 (9th Cir. 1985) ................................................... 8

*UL LLC v Space Chariot Inc.*,

  250 F.Supp.3d 596 (C.D. Cal. 2017) ........................................ 16

*United States v. Sandoval-Mendoza*,

  472 F.3d 645 (9th Cir. 2006) ..................................................... 5

*United States v. Shafi*, 2018

  WL 3159769 (N.D. Cal. June 28, 2018) ..................................... 5

*United States v. Williams*,

  382 F. Supp. 3d 928 (N.D. Cal. 2019) ....................................... 5

**Statutes**

42 U.S.C. §§ 12101, *et seq.*.................................................*passim*

Cal. Civ. Code §§ 51, *et seq.*.................................................... 3

**Rules**

29 C.F.R. §1630.2 ........................................................................ 9

Fed. R. Civ. P. 23 ........................................................................ 4

Fed. R. Civ. P. 26 ........................................................................ 4

Fed. R. Evid. 702 ............................................................... 1, 4, 5, 6

Fed. R. Evid. 703 ....................................................................... 15

Fed. R. Evid. 704 ......................................................................... 8

**Treatises**

*Weinstein's Federal Evidence*, § 703.04[3] (2017).................... 15

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

PLAINTIFF'S OPPOSITION TO MOTION TO EXCLUDE OR LIMIT
EXPERT OPINIONS OF MOODY

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Dr. Robert Moody holds decades of comprehensive experience as a certified information systems auditor, a position which requires extensive familiarity with web accessibility standards. Mr. Moody has audited over 2,000 websites in part to bring them into ADA compliance, and companies and counsel routinely rely on his methodology to ensure that their websites are web accessible.

*First*, Mr. Moody is eminently qualified to provide relevant testimony in this action. Defendant erroneously claims Mr. Moody is not qualified to testify on web accessibility related matters because he holds no credential in web accessibility compliance. ECF No. 147 at 1. But this Court has previously held an expert "need not be officially credentialed in the specific matter under dispute" to provide relevant, admissible testimony. *Todd v. Tempur-Sealy Int'l, Inc.*, No. 13-CV-04984-JST, 2016 WL 5462428, at \*2 (N.D. Cal. Sept. 28, 2016). And while Defendant also claims that Mr. Moody lacks training or experience in web accessibility (ECF No. 147 at 1), that is simply untrue. Mr. Moody has decades of experience auditing websites for web accessibility issues and has completed over 16 different web accessibility related training courses. His qualifications cannot be reasonably disputed.

*Second*, Mr. Moody does not offer legal conclusions where he opines that the accessibility barriers deprive visually impaired individuals from equal access to Defendant's services. Defendant baselessly asserts Mr. Moody offers legal conclusions because he references rights provided under (or in compliance) with the ADA. ECF No. 147 at 8. But an expert's opinions are not "legal" simply because they address the ultimate issue of the case. Fed. R. Evid. 702. Indeed, experts in accessibility cases routinely opine on ADA compliance based on their expertise and a reliable methodology, as Mr. Moody's is here. *See California Foundation for Independent Living Centers v. County of Sacramento*, 142 F.Supp.3d 1035, 1049 (E.D. Cal. 2015) (accessibility expert did not offer improper legal opinion where her conclusion was based on her specialist background and experience); *Le v. H and S Investments Group, LLC*, No. EDCV21-16 JGB (SPX), 2023 WL 4247710, at \*8 (C.D. Cal. Jan. 4, 2023) (accessibility expert's conclusion that

PLAINTIFF'S OPPOSITION TO MOTION TO EXCLUDE OR LIMIT
EXPERT OPINIONS OF MOODY

remediation work was not ADA compliant was not improper legal opinion where it was based on factual evidence and a reliable methodology).

*Third*, Defendant sets forth the specious argument that Mr. Moody's testimony will not help the trier of fact because he did not analyze whether "visually impaired users can buy products on Fashion Nova's website using screen readers and other technology." ECF No. 147 at 1-2. Ignoring that Defendant's proposed question bears no relevance to the allegations here—which are that Mr. Alcazar was unable to access Defendant's store locations page on its website and was thereby deterred from visiting Defendant's brick-and-mortar stores—Mr. Moody's report *does* address the question nonetheless: users of screen readers would not have been able to properly navigate the website *or reach the checkout page*. ECF No. 147-03 (Moody Rpt.) at 5.

*Fourth*, Mr. Moody's primary reliance on the WCAG is proper—it is, without question, the leading guideline for determining web accessibility. Defendant disingenuously presents the WCAG standard used by Mr. Moody as merely one of three "optional standards" for ADA compliance and criticizes him for not consulting either of the two optional standards. ECF No. 147 at 18-19. Defendant fails to note that both standards which it raises—the 18F Accessibility Guide and Section 508 standards—expressly state that the WCAG is the "gold standard" and thus the "minimum" bar for website compliance. That is why both standards incorporate *verbatim* the WCAG for website accessibility. Indeed, and as Defendant tellingly fails at to mention, its *own website auditors agree*. They too used the WCAG as their primary standard when they evaluated Defendant's website for accessibility issues.

*Fifth*, Mr. Moody's reference to declarations made by Mr. Alcazar and other Class Members, reports by other experts are proper. But it is well settled that experts may rely on the opinions of others if other evidence also supports his opinion, and where the expert conducted an independent evaluation of that evidence. *See Jerpe v. Aerospatiale,* No. CIV. S–03–555 LKK/DAD, 2007 WL 1394969, at *6 (E.D. Cal. May 10, 2007). That is *precisely* what Mr. Moody did when he used those declarations and reports to confirm the results of his own independent manual and automatic testing.

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

PLAINTIFF'S OPPOSITION TO MOTION TO EXCLUDE OR LIMIT
EXPERT OPINIONS OF MOODY

*Finally*, Mr. Moody's properly relied upon webpages archived using the Wayback. Courts routinely rule that webpages archived using the Wayback Machine are "unquestionably" reliable and accurate: courts even grant judicial notice of those webpages when requested almost as a matter of course. *Erickson v. Nebraska Mach. Co.*, No. 15-cv-01147-JD, 2015 WL 4089849, at *1 (N.D. Cal. July 6, 2015) ("Courts have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that can accurately and readily be determined from sources *whose accuracy cannot be reasonably questioned*.") (emphasis added). Defendant sets forth no basis for this conclusion, failing to even assert that the Wayback pages cited in Mr. Moody's report *are* in fact inaccurate (nor could it do so even if it so chose). *See generally* ECF No. 147 at 16-17.

For these reasons, as explained more fully below, Mr. Alcazar respectfully requests that this Court deny Defendant's Motion in its entirety.

## II.     BACKGROUND

### A.     Factual Background

Fashion Nova is a well-known and sophisticated American retail company, selling modern fashion such as dresses, pants, jackets, and shoes for women and men using discounts and low-price sales strategies. ECF Nos. 56-2 & 56-3. To sell its wares, Fashion Nova often uses celebrities, models, and social media influencers to promote its products. *Id.* Fashion Nova operates both a substantial online e-commerce store and brick-and-mortar stores in Southern California. *Id.* Fashion Nova operates the website www.fashionnova.com ("Website") for its online e-commerce business. ECF No. 56-4 at 24:1–8, 25:14–26:8, 28:3–29:14, 31:25–35:16, and 284:10–20.

Fashion Nova failed to ensure its Website was accessible to visually impaired persons, like Mr. Alcazar, thereby violating the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq*. and the Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code §§ 51, *et seq.* As Fashion Nova was aware, visually impaired persons encountered a myriad of accessibility issues with the Website. ECF No. 56-4 at 197:8–201: 10; ECF Nos. 56-48–50. While the audits Fashion Nova commissioned third parties to perform of its Website were ostensibly made to create a veneer of compliance, each one contains a "Results" section that expressly list numerous ongoing

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

problems with the Website throughout 2018, 2019 and 2021. *See e.g.,* ECF No. 56-48 at pp. 3-4 (Bates Nos. FASHIONNOVA00000114–115). These audit reports directly admit that "[t]he application is currently not W3C WCAG 2.1 AA conformant; the site is also not Section 508 conformant."). *Id.* (Bates Nos. FASHIONNOVA00000054–55); *see also* ECF No. 56-49 (Bates Nos. FASHIONNOVA000000114-5; ECF No. 56-50 (Bates No. FASHIONNOVA0000004). Tellingly, Fashion Nova fails to apprise the Court of its ongoing, years-long awareness of accessibility issues with its Website.

Mr. Alcazar is visually impaired. Like other visually impaired individuals, he relies on screen reading software to experience and use the internet as those without vision impairment do every day, including to purchase clothes. ECF No. 1 ("Compl."), ¶1. Screen-reading software reads aloud both textual and visual elements on websites. This popular and readily available software enables visually impaired people to navigate the internet through auditory cues. It is widely used by millions of Americans nationwide. Declaration of Thiago M. Coelho ("Coelho Decl."), ¶2.

**B. Procedural Posture**

The Court certified two classes on September 6, 2022, a nationwide injunctive relief class under Fed. R. Civ. P. 23(b)(2) and a California damages class per Rule 23(b)(3). ECF No. 70. Thereafter, the Court issued its Scheduling Order. ECF No. 74. Mr. Alcazar timely disclosed his experts, including Mr. Moody, on June 23, 2023 in accordance with the Scheduling Order and Fed. R. Civ. P. 26. No experts were disclosed by Fashion Nova. On August 14, 2023, the Court continued all deadlines then pending, continuing the trial date from January 8, 2024 to April 8, 2024. ECF No. 117.

**III.    ARGUMENT**

## <u>LEGAL STANDARD</u>

Federal Rule of Evidence 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

4

on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

Expert testimony is admissible under Rule 702 if it is both relevant and reliable." *United States v. Williams*, 382 F. Supp. 3d 928, 935 (N.D. Cal. 2019) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). "Under the reliability requirement, the expert testimony must 'ha[ve] a reliable basis in the knowledge and experience of the relevant discipline.'" *Id.* (quoting *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010)). "[A] court has discretion to decide how to test reliability 'based on the particular circumstances of the particular case.'" *Id.* (citation omitted). "When evaluating specialized or technical expert opinion testimony, the relevant reliability concerns may focus upon personal knowledge or experience." *Id.* at 935-36 (quoting *United States v. Sandoval-Mendoza*, 472 F.3d 645, 655 (9th Cir. 2006)); *accord, United States v. Shafi*, 2018 WL 3159769, at *2 (N.D. Cal. June 28, 2018).

Importantly, "[e]xpert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) (quoting *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010)) Thus, courts should "screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car*, 738 F.3d at 969. "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano*, 598 F.3d at 564.

### A. Mr. Moody is More than Qualified to Opine on Website Accessibility

"Federal Rule of Evidence 702 contemplates a *broad conception* of expert qualifications." *In re Twitter, Inc. Sec. Litig.*, No. 16-CV-05314-JST, 2020 WL 13863616, at *3 (N.D. Cal., Jan. 28, 2020) (Tigar, J.) (emphasis in original) (citing *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1018 (9th Cir. 2000). "To be admitted, an expert's experience need not be an 'exact fit with the particulars' of a case." *Id.* (citing *Oracle Am., Inc. v. Hewlett Packard Enterprise Co.*, No. 16-cv-01393-JST, 2018 WL 6511147, at *2 (N.D. Cal. Dec. 11, 2018) (Tigar, J.) (finding that "[w]hether [an expert's] experience is an exact fit with the particulars of this case is a matter

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 900010-1137

for cross-examination.").[1] In other words, an expert "need not be officially credentialed in the specific matter under dispute" in order to provide relevant, admissible testimony. *Todd*, 2016 WL 5462428 at *2 (Tigar, J.) (citing *Massok v. Keller Indus., Inc.*, 174 Fed.Appx. 651, 656 (9th Cir. 2005).

Defendant spills much ink attacking Mr. Moody's extensive expertise in information systems auditing and website development for not having for not focusing on ADA compliance. The essence of Defendant's faulty argument is that only experts who have devoted their careers specifically to web accessibility compliance are qualified. Mot at 12-13. "But the permissive scope of Rule 702 is much broader." *Asetek Danmark A/S v. CMI USA, Inc.*, No. 13-CV-00457-JST, 2014 WL 5590699, at *2 (N.D. Cal., Nov. 3, 2014) (Tigar, J.), *aff'd*, 852 F.3d 1352 (2017) (citing *Abaxis, Inc. v. Cepheid,* No. 10–CV–02840–LHK, 2012 WL 2979019 (N.D. Cal. July 19, 2012) ("Rule 702 imposes no requirement that experts have personal experience in an area to offer admissible testimony relating to that area."). In *Asetek*, this Court rebuked an argument that Dr. Carman, a Ph.D. in engineering mechanics, was not qualified to testify on the computer liquid cooling technology at issue. Instead, this Court found that Dr. Carman's degree and patents in his field granted him "extensive experience and knowledge" in thermodynamics, even despite his "recollection that he has not specifically worked on 'liquid cooling for computer platforms.'" *Id.*

*Aestek* is instructive. Mr. Moody holds decades of comprehensive experience as a certified information systems auditor, which involves auditing websites for ADA compliance. Coelho Decl., Ex. 16 (Deposition of Dr. Robert Moody ("Moody TR")) at 70:8-19 (stating that this certification is "directly relevant" to web accessibility.) Additionally, he has completed over 16 different web accessibility related training courses and is thus well versed in the relevant ADA

---

[1] *See also FTC v. Qualcom Inc.*, No. 17-CV-00220-LHK, 2018 WL 6615050, at *4 (N.D. Cal. Dec. 17, 2018) (rejecting argument that expert should be excluded because "he ha[d] no special expertise" with a particular product); *Asetek Danmark A/S v. CMI USA, Inc.*, No. 13-cv-00457-JST, 2014 WL 5590699, at *2 (N.D. Cal. 2014), *aff'd*, 852 F.3d 1352 (2017) (rejecting motion to exclude expert who did not have "experience specific to" the technology at issue).

6

PLAINTIFF'S OPPOSITION TO MOTION TO EXCLUDE OR LIMIT
EXPERT OPINIONS OF MOODY

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

compliance issues.[2] ECF No. 147-03 ("Moody Rpt.") at Ex. 1, p.2. His experience is more than sufficient to qualify him to testify in this action.

By contrast, Defendant's arguments fall flat. Mr. Moody is not required to hold a CPWA or any other specific certification to provide relevant admissible testimony on website accessibility. *Todd*, 2016 WL 5462428 at *2 (Tigar, J.). Defendant cites nothing to support its argument that Mr. Moody's lack of previous ADA-related testimony or teaching experience detract from his decades of relevant experience. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (deeming such unsupported arguments abandoned). Indeed, the former argument, taken to its logical conclusion, would stand for the clearly erroneous proposition that no expert should ever be allowed testify—as every expert must have a "first time."

Defendant's attempt to discredit Mr. Moody's website auditing experience fails too. Mr. Moody testified his website auditing experience involved, on many different occasions, specifically testing for web accessibility and ADA compliance. Coelho Decl., Ex. 16 (Moody TR) at 56:6-17 ("I have provided consulting services to plaintiff attorneys and had audited other websites. I have worked with defendant companies in bringing their websites into compliance and have provided post-settlement audits of site as well as consulted with those companies to bring themselves in compliance."). This is inarguably the type of "practical experience"[3] relevant to determining the fact at issue in this case—*i.e.*, whether Defendant's website was equally accessible to the visually impaired.

---

[2] Defendant avers, without basis, that this training is less legitimate by noting that Mr. Moody completed this training through online programs. Mot at 7-8. Defendant fails to develop this argument beyond mere implication, it should not be considered. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (deeming abandoned all issues raised in a brief not support by argument); *Grewal v. Choudhury*, 377 F. App'x 617 (9th Cir. 2010) (undeveloped issue not supported by argument is deemed abandoned); *Nguyen v. Nissan N. Am., Inc.*, 487 F. Supp. 3d 845, 857 (N.D. Cal. 2020) (issues raised in a brief which are not supported by argument are deemed abandoned).
[3] For this reason, *U.S. v. Chang*, 207 F.3d 1169, 1173 (9th Cir. 2000) is inapposite. There, the Ninth Circuit affirmed the exclusion of an international finance expert who sought to testify on whether a particular security was counterfeit because that expert "did not testify as to any training or experience, practical or otherwise, detecting counterfeit securities." By contrast, Mr. Moody *has* testified to extensive training and experience auditing websites for web accessibility.

7

PLAINTIFF'S OPPOSITION TO MOTION TO EXCLUDE OR LIMIT
EXPERT OPINIONS OF MOODY

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

### B.    Mr. Moody Does Not Offer Legal Opinion

"An opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704. Stated differently, "[a]n expert may give his opinion even if it embraces an ultimate issue to be decided by the jury." *U.S. v. Rogers*, 769 F.2d 1418, 1425 (9th Cir. 1985); *see also U.S. v. Allen*, 10 F.3d 405, (7th Cir. 1993) (that an expert is offering an opinion on an "ultimate issue" is "no longer a valid objection" under the federal rules).

That Mr. Moody offers an opinion on the ultimate issue here—whether Defendant's website is equally accessible to the visually impaired—does not mean that his opinion is a legal one. While Mr. Moody does refer to "rights [] provided under the ADA" in his report, as well as "ADA complian[ce]" in his deposition,[4] experts are permitted to refer to terminology from applicable law in expressing their opinions. *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) ("a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible"). Importantly, Mr. Moody does not opine that Defendant's website *violates* the ADA. Instead, he concludes that his audit of the website shows that it "has major issues when a user is accessing the website using screen readers or other ADA-approved assistive technologies," which have "created access barriers for disabled users that are both physical and digital in nature." ECF ECF No. 147-03 ("Moody Rpt.") at p.8. Mr. Moody arrives at this conclusion through his expertise as a certified information systems auditor with extensive experience in auditing website accessibility. His opinions do not arise from legal analysis, nor do they seek to instruct the jury on legal issues.[5] Accordingly, *California Foundation for Independent Living Centers* is instructive here:

---

[4] Defendant additionally mischaracterizes Mr. Moody's testimony by characterizing it as legal opinion. ECF No. 147 at 12. Mr. Moody clarified his opinion that Defendant's website was not ADA compliant was a factual conclusion derived from his testing methodology, and that he was "not trying to provide a legal interpretation here." Coelho Decl., Ex. 16 (Moody TR) at 53:6-14.
[5] For this reason, Defendant's caselaw is inapposite. *Nationwide Trans. Fin. V. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058-59 (9th Cir. 2008) upheld the exclusion of an expert's report that included gratuitous "legal explanations" discussing sections of the UCC that applied to the case, discussion of agency law, sections discussions of the parties' legal rights, duties and obligations under the law, sections that labeled the parties' actions as "wrongful" or "intentional" under the law, and sections discussing the appropriate damages calculations under the law. Likewise, *U.S.*

> Ms. Kailes bases her opinion of what the Airport's evacuation plan must contain on her review of the Airport's evacuation plan, her background and experience as a specialist in emergency planning for people with disabilities, and her knowledge of national guidance documents on emergency planning for people with disabilities. She has sufficient expertise to give her evaluation of the Airport's evacuation plan. She does not conclude that the Airport's evacuation plan violates legal standards. Her testimony is admissible.

*California Foundation*, 142 F.Supp.3d at 1049 (E.D. Cal. 2015) (rejecting objection that Ms. Kailes offered improper legal opinion); *see also Hangarter*, 373 F.3d at 1017 ("Indeed, a witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts in couched in legal terms."). Like the expert in *California Foundation*, Mr. Moody has "sufficient expertise to give" his evaluation on the accessibility of Defendant's website to the visually impaired, and he reaches no legal conclusions in doing so. His testimony is admissible.

Nor does Mr. Moody's report simply "recite the language of the applicable law and apply facts to that law." ECF No. 147 at 12. In fact, Mr. Moody's report does not recite *any* provision of law, much less dive into legal analysis. Accordingly, *Broussard v. Univ. of California*, 192 F.3d 1252 (9th Cir. 1999) is inapposite. There, the Ninth Circuit affirmed that an expert reached legal conclusions where it recited the language of 29 C.F.R. §1630.2(j)(3)(i) to conclude that the plaintiff was "substantially impaired to perform a class of jobs," as well as concluding that the plaintiff was "disabled" as defined under the ADA. 192 F.3d at 1258. By contrast, Mr. Moody's report does not recite *any* provision of the ADA, nor does he seek to apply any ADA provision to Mr. Alcazar or any other class member.

*Hubbard v. Twin Oaks Health and Rehab. Or.*, 408 F.Supp.2d 923, 930 (E.D. Cal. 2004) is also inapposite. There the court struck an expert's opinion that a facility was ADA compliant because his report was submitted "without supporting facts" to back up that assertion. By contrast, experts opining on ADA compliance that *do* provide supporting facts, such as Mr. Moody did here by providing a detailed accounting of his methodology and standards used, are not

---

*v. Brodie*, 858 F.2d 492, 496-97 (9th Cir. 1988) excluded the testimony of an attorney expert witness who sought "to inform the jury" of the legal validity of the trusts at issue. As mentioned *supra*, Mr. Moody's report contains no such legal explanations and does not seek to instruct the jury on legal matters. His report differs drastically from the reports excluded in those cases.

PLAINTIFF'S OPPOSITION TO MOTION TO EXCLUDE OR LIMIT
EXPERT OPINIONS OF MOODY

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

considered improper legal conclusions: courts instead rule they are admissible. *Le,* 2023 WL 4247710 at *8 (overruling objection that expert's conclusion that remediation work was ADA compliant was improper legal conclusion because the expert detailed his measurements, the tools he used to take the measurements, and cited the standards he relied upon to reach his conclusion).[6]

### C.    Mr. Moody's Testimony is Relevant and Admissible

#### 1.    Defendant's Assertion that Mr. Moody Asked the "Wrong Question" is Unavailing

Defendant contends that Mr. Moody's testimony lacks relevance because it does not address the irrelevant question of whether a "visually impaired individual in fact ha[s] meaningful access to the specific information or transaction in question such that the visually impaired individual can make online purchases" using the Fashion Nova website. ECF No. 147 at 9. Defendant even goes as far to assert this question "is the issue before the Court" rather than the actual allegations brought by Mr. Alcazar. *Id.*

Why Mr. Moody does not put online purchases at the forefront of his analysis is obvious: those are not claims at issue here. Mr. Alcazar alleges he encountered access barriers which "deterred [him] from visiting Defendant's brick-and-mortar stores." ECF No. 1 ("Compl.") at ¶25; *see also id.* at ¶28 (alleging that Mr. Alcazar and Class Members "have been deterred and impeded from the full and equal enjoyment of goods and services offered in Defendant's stores and from making purchases at such physical locations."). Mr. Moody's report and conclusions directly address and substantiate those claims through a review of class member declarations as well as his testing of Defendant's website code. ECF No. 147-03 (Moody Rpt.) at p. 5-7.[7]

---

[6] Again, Defendant's cases fare no better. *U.S. v. Boulware*, 558 F.3d 971, 975 (9th Cir. 2009), did not involve the ADA, but rather an expert's testimony that certain corporate distributions were non-taxable—a purely legal opinion. *U.S. v. Hanna*, 293 F.3d 1080 (9th Cir. 2002), did not even involve improper legal opinion. In that case, the court instead struck the testimony of a Secret Service Agent, finding that law enforcement officers were not qualified to testify as to whether a reasonable person would view a particular message as "threatening."

[7] Defendant contends that Mr. Moody had "no basis for reaching this opinion other than having read the declarations which indicated at least some of the declarants had issues accessing Fashion Nova's brick and mortar locations." Defendant is wrong. Mr. Moody's testimony in fact reveals that he also examined the Website's source code to arrive at his conclusions. Coelho Decl., Ex.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

PLAINTIFF'S OPPOSITION TO MOTION TO EXCLUDE OR LIMIT
EXPERT OPINIONS OF MOODY

Even assuming, *arguendo*, that Defendant's proposed question *was* pertinent to this action, Mr. Moody's report fully answers it by demonstrating that visually impaired individuals do not have the same ability to navigate the website to access information or make purchases as sighted individuals have. Defendant blatantly misrepresents Mr. Moody's report when it claims that he "did not analyze this himself despite claiming to have run other manual and automatic tests on Fashion nova's website." ECF No. 147 at 11. In fact, Mr. Moody's manual review of Defendant's website revealed that screen readers—which visually impaired individuals rely upon to navigate the internet—"do not work properly on Defendant's website," and that "forms and special features *such as the checkout feature* will cause the system to freeze or in the alternative cause the screen reader from working correctly." ECF No. 147-03 (Moody Rpt.) at 5 (emphasis added). His automated review found much the same, identifying as many as 444 errors—358 of which were "critical" (and thus make "the use of the website an impossibility for those with disabilities"). *Id.* at 6. Far from ignoring Defendant's proposed "correct question," Mr. Moody answers it just as deftly as he does the actual questions at issue in this action.[8]

### 2. The WCAG is the Correct Standard

As an initial matter Defendant's disagreement with Mr. Moody's use of the WCAG as a standard to arrive at his conclusions is not a basis to exclude his testimony under *Daubert*. *See, e.g., Kennedy*, 161 F.3d at 1230 (9th Cir. 1998) ("[j]udges in jury trials should not exclude expert

---

16 (Moody TR) at 219:19-24 ("The disabled users themselves were able to identify that they had issues and *the code was examined* and the website was consistent by *showing that there were errors with this type of data*.") (emphasis added). While Mr. Moody mistakenly answered that those declarations were his "sole basis" for arriving at this conclusion in response to a single question during his deposition, that testimony is clearly inconsistent with the testimony he provided immediately prior and was further corrected on redirect. *See Id.* at 236-37:22-17 (Q: "And did you apply the source code, the data from the source code from defendant's website with the application of the WCAG in order to reach your conclusions? A: Yes.")

[8] Further, to the extent Defendant seeks to use the Cannon Declaration (ECF No. 147 at 11) to dispute these findings, any such dispute merely constitutes a dispute of fact that Defendant must address through cross examination at trial, not through requesting exclusion of Mr. Moody's testimony. *See, e.g., Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230 (9th Cir. 1998) ("[j]udges in jury trials should not exclude expert testimony simply because they disagree with the conclusions of the expert"); *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2012 WL 2571332, at *8 (N.D. Cal. June 30, 2012) (one party's disagreement with opposing party's expert's conclusions not a basis for exclusion under *Daubert*).

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

11

testimony simply because they disagree with the conclusions of the expert"); *Apple, Inc.*, 2012 WL 2571332, at *8 (N.D. Cal. June 30, 2012) (one party's disagreement with opposing party's expert's conclusions not a basis for exclusion under *Daubert*).[9] The reason Mr. Moody focuses on the WCAG is simple—the WCAG is incorporated by reference in every other ADA compliance standards' requirements for website accessibility, thus making the WCAG "the only true standard for [website] accessibility." Coelho Decl., Ex. 7 (Deposition of Dr. William C. Easttom ("Easttom TR"), 89-90:6-11. It is for this reason the WCAG is considered "the gold standard for accessibility on the web," and why *every* FTC ADA website accessibility settlement in the past 3 years included a provision requiring the defendant to become WCAG compliant. *Id.* at 139:3-11; *see also, e.g.*, *Settlement Agreement Between the United States of America and EDX Inc.*, DJ No. 202–36–255 (Apr. 2, 2015), https://www.ada.gov/edx_sa.htm; *Settlement Agreement Between the United States of America and Ahold U.S.A., Inc. and Peapod, LLC,* DJ No. 202–63–169 (Nov. 17, 2014), https://www.ada.gov/peapod_sa.htm; *Settlement Agreement Between the United States of America and Carnival Corp.*, DJ No. 202–17M–206 (July 23, 2015), https://www.ada.gov/carnival/carnival_sa.html.

 In fact, *Defendant's own accessibility auditors agree* that the WCAG is the correct standard. Accessibility Partners, LLC, a third-party website accessibility company Defendant retained to audit its Website for accessibility conformance expressly utilizes the WCAG and

---

[9] Here, Defendant again incorrectly states Mr. Moody arrives at a legal conclusion by concluding that a finding of non-compliance with the WCAG is equivalent to finding a legal violation under the ADA. ECF No. 147 at 19. Again, Mr. Moody makes no such conclusion. In fact, his testimony expressly states this is *not* his conclusion. Coelho Decl., Ex. 16 (Moody TR) at 49:8-13 (stating that there are websites with WCAG issues that are otherwise ADA compliant.). Instead, he uses the WCAG as a standard for evaluating the accessibility of the website. *See, e.g.*, ECF No. 147-03 at p.5. Defendant's caselaw thus supports Mr. Moody's opinion by noting that a website's violations of the WCAG standards are "informative" regarding whether it also violates the ADA. *See Alcazar v. Bubba Gump Shrimp Co. Restaurants, Inc.*, No. 20-CV-02771-DMR, 2020 WL 4601364, at *4 (N.D. Cal. Aug. 11, 2020); *Robles v. Yum! Brands, Inc.*, No. 16-CV-8211, 2018 WL 566781, at *5 (C.D. Cal. Jan. 24, 2018) (noting that "the DOJ has consistently relied upon the WCAG guidelines to provide a roadmap of what would constitute an appropriate measure for website accessibility").

PLAINTIFF'S OPPOSITION TO MOTION TO EXCLUDE OR LIMIT
EXPERT OPINIONS OF MOODY

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

Section 508 [10] as its standards for review. *See* ECF No. 56-50 at p. 3 (Bates No. FASHIONNOVA00000003); see also Coelho Decl., Ex. 8-9 (spreadsheets detailing audit results using the WCAG guidelines).[11] The Accessibility Audit even goes as far as to state that WCAG 2.0 AA conformance is required under Section 508 and is "also industry best practice for the United States and other countries." *Id.* at 4. The Accessibility Audit went on to find numerous accessibility deficiencies in Defendant's website, many of which are mirrored in Mr. Moody's report, and ultimately concluded that the website required significant accessibility remediation because it was not WCAG conformant. *Id.* at 5.

Nevertheless, Defendant now contends that the WCAG is merely 1 of 3 guidelines businesses can choose to follow to improve accessibility. As such, compliance with the WCAG is "optional" because "businesses…have flexibility in how they comply with the ADA's general requirements." ECF No. 147 at 18 (citing Guidance on Web Accessibility and the ADA (available at https://www.ada.gov/resources/web-guidance/.) (the "Guidance Webpage.")). [12] Here, Defendant's reference to alternative guidelines is an exercise in distinction without difference.[13] The first alternative guideline raised by Defendant, the 18F Accessibility Guide, directly references the WCAG as "hav[ing] long been the gold standard for accessibility on the web," and even states that "Here at 18F we follow WCAG 2.0 AA as our *minimum* standard for

---

[10] The only distinction between Section 508 and WCAG is that Section 508 applies to government websites and devices, while the WCAG is intended for commercial websites such as Defendant's. Coelho Decl., Ex. 16 (Moody TR) at 122:17-22. Otherwise, Section 508 incorporates WCAG *verbatim* for its website accessibility portion, and thus for all intents and purposes, provides the exact same standards as the WCAG provides. Coelho Decl., Ex. 7 (Easttom TR) at 89:21-25.

[11] These documents were originally produced to Plaintiffs through discovery, and Defendant's Person Most Knowledgeable, Mr. Roger Satur, authenticated them on the record . Coelho Decl., Ex. 14 (Deposition of Roger Satur ("Satur TR") at 78-79:18-20; 101:8-10; 159:11-16.)

[12] Defendant's semantic argument is unavailing. Flexibility in how a business implements ADA compliance does not equal flexibility in the *level* of compliance required. Indeed, the Guidance webpage goes on to state that despite this flexibility "in how they comply," businesses "still must ensure that the programs, services, and goods that they provide to the public—including those provided online—are accessible to people with disabilities," and directly cites the WCAG and Section 508 standards as guidelines to follow to achieve compliance.

[13] Tellingly, Defendant does not even argue that its website *does* meet the accessibility requirements of either alternative guideline it raises, nor could it. *See generally* ECF No. 147 at 13-14.

PLAINTIFF'S OPPOSITION TO MOTION TO EXCLUDE OR LIMIT
EXPERT OPINIONS OF MOODY

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

accessibility." 18F Accessibility Guide (available at https://accessibility.18f.gov/.) (emphasis added); *see also* Coelho Decl., Ex. 7 (Easttom TR) 92:15-20 ("So in effect if you say you're using 18F, for example, you are using WCAG for the web portion.") Likewise, the Section 508 Information Technology Accessibility Standards—which cover both website accessibility and accessibility to physical devices—*verbatim* incorporates the WCAG as a minimum standard for web accessibility, expressly requiring all electronic content to "conform to Level A and Level AA Success Criteria and Conformance Requirements in WCAG 2.0." *See* About the ICT Accessibility 508 Standards and 255 Guidelines (available at https://www.access-board.gov/ict/.); *see also* Coelho Decl., Ex. 7 (Easttom TR) at 89:21-25 ("Other standards rely on WCAG. Now, to give you an example of what that means, Section 508 takes WCAG and literally verbatim uses it for all the web portions.").

Simply put, using the 18F or Section 508 standards for web accessibility compliance *necessarily, and by definition,* means using WCAG. Defendant's arguments otherwise are simply untenable.

### D. Mr. Moody's Reliance Upon Declarations Provided by Mr. Alcazar and Class Members, as Well as the Reports of Other Experts in this Action, is Proper

An expert can appropriately rely on the opinions of others if other evidence supports his opinion and where the expert conducted an independent evaluation of that evidence. *See Jerpe v. Aerospatiale*, 2007 WL 1394969, at *6. That is precisely what Mr. Moody did here. Specifically, Mr. Moody referenced the 42 declarations provided by Mr. Alcazar and other Class Members in this action to confirm and support his own independent manual and automated audits of Defendant's website—finding that the issues uncovered by both were consistent with each other. ECF No. 147-03 (Moody Rpt.) at p. 5-7.

Likewise, that Mr. Moody references Mr. Arumugam's expert report[14] does nothing to warrant his exclusion. "[E]xpert opinions may find a basis on 'what a different expert believes on

---

[14] While Defendant contends Mr. Moody also "relies on" Dr. Krosnick's expert report (ECF No. 147 at 16.), a review reveals that Mr. Moody makes no reference to anything from Dr. Krosnick's report to support his conclusions. *See generally* ECF No. 147-03. Instead, Mr. Moody simply

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

the basis of expert knowledge not possessed by the first expert." *In re Toyota Motor Corp. Unintended Acceleration Mtkg., Sales Practices, and Prod. Liability Litig.*, 978 F.Supp.2d 1053, 1066 (C.D. Cal. 2013) (citing *Dura Auto Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002); *see also Weinstein's Federal Evidence*, § 703.04[3] (2017) (Rule 703 permits experts to rely on "[o]pinions of other experts") (citing cases). "Indeed, this is common in technical fields." *Id.* As such this Court should not exclude Mr. Moody's simply "because they cite, refer to, or even rely on opinions of other experts in this litigation"—particularly as his report does not rely on those reports except to affirm his own, independently-arrived at conclusions. *In re Bard IVC Filters Prod. Liability Litig.*, No. MDL 15-02641-PHX DGC, 2017 WL 11696720, at *2 (D. Ariz. Dec. 22, 2017). Indeed, a review of Mr. Moody's report reveals that Mr. Moody cites to Mr. Arumugam's testing of the websites only to show that Mr. Arumugam's results are in conformity with the issues identified in his own report. ECF No. 147-03 at p.4. This form of confirmatory reliance is unquestionably proper. *Jerpe*, 2007 WL 1394969, at *6.

Tellingly, while Defendant spends much time chiding Mr. Moody for not speaking with either the declarants or Mr. Arumugam (ECF No. 147 at 16.), it entirely fails to argue how this lack of communication hinders his opinions in any way. [15] Far from providing a "mere summation" of the declarations or of Mr. Arumugam's report (ECF No. 147 at 16.), Mr. Moody independently confirmed the issues described in those documents—issues which he discovered "were replicable" through his manual and automated review. *See* Coelho Decl., Ex. 16 (Moody TR) 200-201:21-25 ("So if…one of the declarants is saying I have a problem with feature X loading into my screen reader, and that's replicable from a physical review standpoint, or certain elements are picked up from the automatic testing, then the statements made by the declarant is

---

notes he was provided Dr. Krosnick's report for review as background for his work in this action. ECF No. 147-03 (Moody Rpt.) at p.2.

[15] While Defendant notes that two of the 42 declarations mistakenly referenced the Adidas website rather than their own, it conveniently fails to mention that the content of those declarations clearly and specifically mentioned the Fashion Nova website. This reference to the Adidas website was clearly a scrivener's error, such that "[o]nly someone intentionally trying to misread [it] would have trouble understanding it." Coelho Decl., Ex. 7 (Easttom TR) at 348-49:17-18 (noting that clarification was "not necessary" because the declaration goes on to talk about specifics of the Fashion Nova website).

PLAINTIFF'S OPPOSITION TO MOTION TO EXCLUDE OR LIMIT
EXPERT OPINIONS OF MOODY

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

consistent with the physical review and/or automated review.") Given this is the case, it is entirely reasonable for Mr. Moody to not feel the need to speak with Mr. Arumugam and the declarants—as he no longer needed to. Simply put, Mr. Moody's conclusions are his own; they are the results of his own reliable testing methodology. His reference to the 42 declarations provided by counsel or to Mr. Arumugam's report were merely done to confirm those results. *Id*. at 202-203:14-10 ("[T]he declarations would provide me the nature of the problems they were having, but my conclusion is based on my process and the testing that was performed against the source code by physical review of the website.").

### E.    Mr. Moody's Use of the Wayback Machine Is Reliable

Defendant contends Mr. Moody's use of webpages obtained through the Wayback Machine at Archive.org renders his testimony unreliable. ECF No. 147 at 17. This contention is baseless: Courts routinely rule webpage records saved by the Wayback Machine are sufficiently reliable and even take judicial notice of them when requested. *UL LLC v Space Chariot Inc*., 250 F.Supp.3d 596, 604 n.2 (C.D. Cal. 2017) (taking judicial notice of webpages obtained through the Wayback Machine); *Erickson*, 2015 WL 4089849, at *1 ("Courts have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that can accurately and readily be determined from sources *whose accuracy cannot be reasonably questioned*.") (emphasis added).

Defendant's suggestion otherwise avails it nothing. While Defendant correctly states that the Wayback Machine may not fully replicate a webpage's JavaScript elements (ECF No. 147 at 17), it fails to note that these issues *only* occur where an archived webpage's JavaScript elements can no longer interact with an originating host. Coelho Decl., Ex. 7 (Easttom TR) at 330:3-14. Here, Defendant's website is "still running the same Javascript and the same forms," and thus its archived JavaScript elements have not been adversely affected by the archiving process because "communication with the originating host would have been no barrier at all." *Id.*

Defendant next mischaracterizes Mr. Moody's use of the Deque program to analyze the Wayback webpages, stating that he merely "appl[ied] an automated program" and "report[ed] the number of errors the automated program produced—with no analysis or interpretation." ECF No.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

PLAINTIFF'S OPPOSITION TO MOTION TO EXCLUDE OR LIMIT
EXPERT OPINIONS OF MOODY

147 at 17. This is simply incorrect. Mr. Moody's report *does* analyze those results, concluding that the number of errors uncovered by Deque "is representative of errors that existed" during the dates those Wayback pages were captured, and that such errors "strongly suggest that there are systematic or programmatic errors that existed at this time and well into the present." ECF No. 147-03 (Moody Rpt.) at 7. Specifically, Mr. Moody concluded that the persistent presence of those errors from May 29, 2019 to July 17, 2023 "shows a pattern" of errors existing across the class period. Coelho Decl., Ex. 16 (Moody TR) at 178-79:21-1. This is far and away from Defendant's mischaracterization that Mr. Moody's testimony merely amounts to reciting test results.

Neither is Mr. Moody required to authenticate the Wayback webpages to properly rely on them to reach his conclusions. "There is no requirement that an expert independently verify the figures contained in the records on which an expert relies." *Rearden LLC v. Walt Disney Co.*, No. 17-CV-04006-JST, 2023 WL 6796017 (N.D. Cal. Oct. 13, 2023) (Tigar, J.) (concurring with the First Circuit's rejecting of the notion that an expert is "obligated, as a condition of admissibility to present" documents supporting "the data about which the expert will testify") (citing *Int'l Adhesive Coating Co., Inc. v. Bolton Emerson Int'l, Inc.*, 851 F.2d 540, 545 (1st Cir. 1998)). This is because "such arguments against admissibility are simply a rehashing of the central factual disputes of the case dressed up as attacks on the expert's testimony." *Id.* (finding this conclusion "consistent with the Ninth Circuit's observation that 'the factual basis for an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.'") (citing *Hangarter*, 373 F.3d at 1017 n.14 (9th Cir. 2004).

Regardless, should this Court be inclined to require such verification, Mr. Alcazar himself has already taken steps to supply the verification for those webpages. Mr. Alcazar has always intended Archive.org to serve as a custodian of records in this action and has reached out to Archive.org and submitted a request for an affidavit authenticating the webpages relied upon by his experts, including Mr. Moody. Coelho Decl., ¶3. This is a standard service offered by Archive.org, and Courts routinely find such affidavits sufficient to authenticate evidence obtained

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

17

through the WayBack Machine. *See, e.g.*, *Abu-Lughod v. Calis*, No. CV 13-2702 DMG (RZX), 2015 WL 12746198, at *2 (C.D. Cal., May 20, 2015) ("the affidavit of a person with personal knowledge who can attest that the third-party crawler operates to create an unaltered copy of a website as it appears on a given day is sufficiFcent to authenticate evidence from the WayBack Machine"); *Telewizja Polska USA, Inc. v. Echostar Satellite Corp.*, No. 02 C 3293, 2004 WL 2367740, at *6 (N.D. Ill. Oct. 15, 2004) (affidavit verifying that Internet Archive Company retrieves copies of website as it appears on dates in question from its electronic archives is sufficient to satisfy Rule 901's threshold requirement for admissibility); *Syncsort Inc. v. Innovative Routines Int'l, Inc.*, No. CIVA 04-3623 (WHW), 2008 WL 1925304, at *5 (D.N.J. Apr. 30, 2008); *Allen v. Ghoulish Gallery*, No. 06CV371 NLS, 2007 WL 4207923, at *3 (S.D. Cal. Nov. 20, 2007). Mr. Alcazar submitted this request on December 13, 2023, and given the WayBack Machine's required processing time of 15 business days, anticipates providing a final authentication affidavit for the Wayback pages at issue on or around January 5, 2023—which will obviate any authentication issues raised by Defendant.[16]

## IV.    CONCLUSION

For all the foregoing reasons, and each of them, the Court should deny the Motion.


Dated:  December 14, 2023                    Respectfully submitted,


                                             /s/ *Thiago M. Coelho*
                                             Thiago M. Coelho
                                             **WILSHIRE LAW FIRM, PLC**
                                             *Attorneys for Plaintiff Juan Alcazar and the Nationwide and California Classes*

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

---

[16] Defendant can claim no prejudice arising from this authentication timeline. Not only is this Defendant's first time formally raising this issue, but it was also Defendant's strategic choice to file *Daubert* motions seeking to exclude Plaintiffs' experts well before their deadline to do so and well before timeframe they are customarily heard—at the Final Pretrial Conference.

PLAINTIFF'S OPPOSITION TO MOTION TO EXCLUDE OR LIMIT
EXPERT OPINIONS OF MOODY