UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN ALCAZAR,<br>          Plaintiff,<br>    v.<br>FASHION NOVA, INC.,<br>          Defendant. | Case No. 20-cv-01434-JST<br><br>**ORDER DENYING MOTION FOR PRELIMINARY APPROVAL**<br><br>Re: ECF No. 192 |

Before the Court is Plaintiff Juan Alcazar's motion for preliminary approval of class action settlement. ECF No. 192. The Court will deny the motion without prejudice.

## I. BACKGROUND

### A. Factual and Procedural Background

Plaintiff alleges that Defendant Fashion Nova, Inc., a clothing retailer, operates its website in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. ("ADA") and the Unruh Civil Rights Act, Cal. Civ. Code §§ 51–53 ("Unruh Act"). ECF No. 1 at 15–18. Plaintiff, who is visually impaired, alleges that he and others similarly situated are denied access to the goods and services of Defendant's stores, which are places of public accommodation, because the website cannot be accessed using screen-reader software. *Id.*

The parties have engaged in extensive motion practice and discovery. Plaintiff propounded multiple sets of discovery requests in late 2021 through early 2022 and deposed Defendant's designated Rule 30(b)(6) representative. ECF No. 193 ¶¶ 3–4. Plaintiff moved for class certification on January 13, 2022. ECF No. 56. On September 6, 2022, the Court certified a nationwide injunctive relief class under Federal Rule of Civil Procedure 23(b)(2) and a California damages class under Rule 23(b)(3). ECF No. 70. The Court approved the class notice and notice

1    program on March 23, 2023.  ECF No. 87.  Following the execution of the notice program, one

2    class member opted out of the classes.  ECF No. 120-1 ¶ 9.

3    On May 19, 2023, the parties participated in a settlement conference with Chief Magistrate

4    Judge Donna M. Ryu.  ECF No. 94.  The parties participated in two further settlement conferences

5    with Judge Ryu on August 14, 2023, and December 8, 2023.  *See* ECF No. 118.  Discovery

6    continued in the fall of 2023, when Defendant deposed four of Plaintiffs' expert witnesses.  ECF

7    No. 193 ¶ 6.  In addition, the parties briefed Defendant's motion for summary judgment, several

8    *Daubert* motions, and motion to decertify the damages class.  *See* ECF Nos. 143, 145, 147–48,

9    150–51, 153.  The case was scheduled to proceed to trial in June 2024.

10   On January 18, 2024, the parties attended a full-day mediation session with Hon. Amy

11   Hogue (Ret.) of Signature Resolution.  ECF No. 193 ¶ 7.  Negotiations continued after the session,

12   and Judge Hogue later circulated a mediator's proposal, which both parties accepted on January

13   25, 2024.  *Id.*  Plaintiff filed this motion for preliminary approval of the settlement on May 16,

14   2024.  ECF No. 192.

15   **B.** **Settlement Terms**

16   The settlement provides injunctive relief for the nationwide class and monetary relief for

17   the California class.  The agreed-upon injunctive relief requires Defendant to ensure that its

18   website complies with relevant accessibility standards.  ECF No. 193-1 § 2.1.  Among other

19   measures, Defendant will implement a Website Accessibility Policy and consult with one or more

20   individuals or entities to aid with website accessibility issues.  *Id.* ¶ 2.2.  Class Counsel will have

21   the right to conduct compliance audits.  *Id.* § 2.2.2.  Class Counsel estimates that the injunctive

22   relief under the settlement will cost approximately $60,000 to implement initially, with ongoing

23   maintenance fees of up to $42,000 per year.  ECF No. 193 ¶ 15.

24   In addition to making its website accessible, Fashion Nova will pay $5,150,000 to create a

25   Funding Pool.  *Id.* § 1.1.  Notice costs, administration expenses, and any attorneys' fees and costs

26   and service award that is approved by the Court will be deducted from the Funding Pool.  *Id.* at

27   § 1.1.  The remaining funds ("Net Settlement Amount") will be available to pay California Class

28   Member claims.  *Id.* § 1.2.

United States District Court
Northern District of California

1    Class Members who submit timely and valid claims are eligible to receive a maximum
2    payment of $4,000. *Id.* The payment amount will be reduced pro rata based on the number of
3    timely and valid claims received. *Id.* To submit a claim, California Class Members must aver
4    under penalty of perjury that: (1) they are legally blind; (2) they visited Fashion Nova's Website
5    with the intention of visiting a Fashion Nova physical store; (3) while visiting Fashion Nova's
6    Website they attempted to find physical store locations and were unable do so through the exercise
7    of reasonable diligence . . . . *Id.* § 1.2.1. They must also provide "the approximate dates of their
8    visit to Fashion Nova's Website." *Id.* A California Class Member cannot receive more than one
9    payment regardless of the number of visits to the website, and there is only one payment allowed
10   per household. *Id.*

11   Class Counsel and the Settlement Administrator have developed a "robust notice
12   program," ECF No. 193 ¶ 8, that involves a media campaign (including sponsored searches, social
13   media, online radio, and a press release) and direct mail to several dozen organizations for the
14   visually impaired, along with physical copies of the notice for the organizations to distribute, ECF
15   No. 193 § 6.2. The Settlement Administrator will also maintain a settlement website containing
16   the notice, other case documents, and information about payment distribution. *Id.*

17   If any of the Net Settlement Amount remains after the distribution of payments, 50% of the
18   remainder will be distributed to *cy pres* recipient American Foundation for the Blind, and 50%
19   will revert to Defendant. *Id.* § 1.3. If Defendant receives a reversion, it agrees to use the funds to
20   implement the injunctive relief portion of the settlement. *Id.*

21   Class Members who do not timely opt out of the settlement will release all claims "known
22   or unknown, in law or equity, fixed or contingent, which they have or may have, those claims that
23   were alleged or that could have been pleaded based upon the factual allegations alleged in the
24   Action and that arose during the Class Period . . . ." *Id.* § 8.1.

25   **II.    JURISDICTION**
26   The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367.
27   **III.   LEGAL STANDARD**
28   The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class

1    actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Rule 23 requires
2    courts to employ a two-step process in evaluating a class action settlement. First, the parties must
3    show "that the court will likely be able to . . . (i) approve the proposal under Rule 23(e)(2)." Fed.
4    R. Civ. P. 23(e)(1)(B). In other words, a court must make a preliminary determination that the
5    settlement "is fair, reasonable, and adequate" when considering the factors set out in Rule
6    23(e)(2). Fed. R. Civ. P. 23(e)(2). The court's task at the preliminary approval stage is to
7    determine whether the settlement falls "within the range of possible approval." *In re Tableware
8    Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (citation omitted); *see also* Manual
9    for Complex Litigation, Fourth § 21.632 (FJC 2004) (explaining that courts "must make a
10   preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms
11   and must direct the preparation of notice of the certification, proposed settlement, and date of the
12   final fairness hearing"). "The initial decision to approve or reject a settlement proposal is
13   committed to the sound discretion of the trial judge." *City of Seattle*, 955 F.2d at 1276 (citation
14   omitted). Courts "must be particularly vigilant not only for explicit collusion, but also for more
15   subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain
16   class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d
17   935, 947 (9th Cir. 2011).
18       Within this framework, preliminary approval of a settlement is appropriate if "the proposed
19   settlement appears to be the product of serious, informed, non-collusive negotiations, has no
20   obvious deficiencies, does not improperly grant preferential treatment to class representatives or
21   segments of the class, and falls within the range of possible approval." *In re Tableware*, 484 F.
22   Supp. 2d at 1079 (citation omitted). The proposed settlement need not be ideal, but it must be fair
23   and free of collusion, consistent with counsel's fiduciary obligations to the class. *Hanlon v.
24   Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise;
25   the question we address is not whether the final product could be prettier, smarter or snazzier, but
26   whether it is fair, adequate and free from collusion."). To assess a settlement proposal, courts
27   must balance a number of factors:
28           [T]he strength of the plaintiffs' case; the risk, expense, complexity,

>and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id*. at 1026 (citations omitted). The proposed settlement must be "taken as a whole, rather than the individual component parts," in the examination for overall fairness. *Id*. Courts do not have the ability to "delete, modify, or substitute certain provisions"; the settlement "must stand or fall in its entirety." *Id*. (citation omitted).

## IV.   DISCUSSION

The settlement appears to be eligible for preliminary approval in most respects. On the present record, however, the fact that half of any unclaimed funds would revert to Defendant places it outside the range of possible approval.

The Ninth Circuit has "not disallowed reversionary clauses outright," but it "generally disfavor[s] them because they create perverse incentives." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1058 (9th Cir. 2019) (citing *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 895 F.3d 597, 611–12 (9th Cir. 2018)). "For example, allowing unclaimed funds to revert to defendants even where class members who do not respond or submit a claim are bound by the class release creates an incentive for defendants to ensure as low a claims rate as possible so as to maximize the funds that will revert." *Id.* These clauses "raise the specter" of collusion that benefits counsel on both sides "by (1) reducing the actual amount defendants are on the hook for, especially if the individual claims are relatively low-value, or the cost of claiming benefits relatively high; and (2) giving [class] counsel an inflated common-fund value against which to base a fee motion." *Id.* (quoting *In re Volkswagen*, 895 F.3d at 611) (internal quotation marks omitted).[1]

---

[1] For these reasons, the undersigned frequently rejects class settlements containing reversion clauses. *See, e.g., Becker v. LISI, LLC*, No. 21-CV-03295-JST, 2023 WL 3668526, at *6 (N.D. Cal. May 25, 2023); *Becker v. LISI, LLC*, No. 21-CV-03295-JST, 2022 WL 19975411, at *4 (N.D. Cal. Sept. 1, 2022); *Gaffney v. City of Santa Clara*, No. 18-CV-06500-JST, 2020 WL 12182761, at *6 (N.D. Cal. Apr. 13, 2020); *Bakhtiar v. Info. Res., Inc.*, No. 17-CV-04559-JST, 2020 WL 11421997, at *9 (N.D. Cal. Jan. 30, 2020); *Stromberg v. Ocwen Loan Servicing, LLC*, No. 15-CV-04719-JST, 2019 WL 13202215, at *6–7 (N.D. Cal. May 23, 2019).

Accordingly, this Court has "an obligation to scrutinize these reversionary clauses closely and seek adequate justification for their inclusion . . . ." *Roes, 1-2*, 944 F.3d at 1059 (quoting *In re Volkswagen*, 895 F.3d at 612); *see also In re Bluetooth*, 654 F.3d at 949 (explaining that a district court faced with a "questionable" provision "was required to examine the negotiation process with even greater scrutiny than is ordinarily demanded, and approval of the settlement had to be supported by a clear explanation of why the [provision] is justified and does not betray the class's interests"). "In light of Ninth Circuit case law disfavoring reversions," the Northern District's Procedural Guidance for Class Action Settlements requires a party submitting a motion for preliminary approval to address "whether and under what circumstances money originally designated for class recovery will revert to any defendant, the expected and potential amount of any such reversion, and *an explanation as to why a reversion is appropriate*." *Procedural Guidance for Class Action Settlements*, U.S. District Court Northern District of Cal. (last modified Aug. 4, 2022), https://cand.uscourts.gov/ClassActionSettlementGuidance (emphasis added).

Here, Class Counsel has not adequately explained why the reversion provision is appropriate. They offer two main defenses of the provision: (1) that reversion is unlikely to occur because there will be so many claimants; and (2) that any reverted funds will go to fund the required injunctive relief. ECF No. 192 at 15–16. The first reason makes little sense: if the parties do not believe that a reversion will materialize, then there is no need for the provision. Nor is the Court persuaded by the second justification. Defendant is *required* to fund the injunctive relief required by the settlement, so reducing its financial obligation by the receipt of class settlement funds simply boosts its bottom line. *See Roes, 1-2*, 944 F.3d at 1059–60 ("'If the defendant is willing to pay a certain sum . . . , there is no apparent reason the class should not benefit from the excess allotted . . . .'") (alterations in original) (quoting *In re Bluetooth*, 654 F.3d at 949).

The provision is especially problematic in the context of an opt-out settlement, where Defendant lacks any incentive to maximize the claim rate. *See Roes, 1-2*, 944 F.3d at 1058 (observing that an opt-in settlement motivates defendants "to ensure a high claims rate, because any class member who does not opt in and make a claim is also not subject to the release, meaning

6

that a low claims rate leaves defendants with the specter of unresolved liability to all class members who did not opt in"). Although Class Counsel also argues that the potentially large individual payments will incentivize class members to submit claims, this does not assuage the Court's concerns that reversion provision inappropriately rewards Defendant if there is a low participation rate in the settlement.[2]

## CONCLUSION

Because the reversion of unclaimed settlement funds to Fashion Nova has not been adequately justified, the Court denies preliminary approval without prejudice. Any renewed motion should correct this deficiency.

**IT IS SO ORDERED.**

Dated:  December 20, 2024

_____
JON S. TIGAR
United States District Judge

---

[2] In addition, because Class Counsel emphasizes that *National Federation of the Blind v. Target Corp.* is the most comparable past settlement to this one, the Court notes that there was no reversion provision in that case. *See, e.g.*, J. Mot. for Preliminary Approval of Settlement, ECF No. 178, *Nat'l Fed'n of the Blind v. Target Corp.*, No. 06-cv-1802-MHP (N.D. Cal. Aug. 27, 2008) ("There will be no reversion of any funds to Target.").

7