EXHIBIT A

Execution Copy

## AMENDED SETTLEMENT AGREEMENT AND RELEASE

      This amended Settlement Agreement and Release (the "Amended Agreement") is made and entered into by and between Juan Alcazar ("Plaintiff"), on behalf of himself and the Classes, on the one hand, and Fashion Nova LLC formerly known as Fashion Nova, Inc. ("Fashion Nova"), on the other. For the purposes of this Amended Agreement, Plaintiff and Fashion Nova are each referred to individually as a "Party" and collectively as the "Parties." The Amended Agreement is made as of the date on which all Parties have signed this Amended Agreement.

### DEFINITIONS

      As used herein, the following terms have the meanings set forth below:

      A.    "Action" means the litigation styled *Alcazar v. Fashion Nova, Inc.*, Case No. 4:20-cv-01434-JST, filed in the United States District Court for the Northern District of California.

      B.    "Administrative and Notice Costs" means all fees, costs, and expenses incurred by the Settlement Administrator while carrying out its duties under this Amended Agreement, including, without limitation: issuing notice and administering, calculating, and distributing the Net Settlement Amount to Class Members. The Settlement Administrator's estimated Administrative and Notice Costs are set forth as Exhibit 4 to this Agreement.

      C.    "Approved Claim" shall mean a claim as evidenced by a Claim Form submitted by a California Class Member that (a) is complete and timely, and submitted in accordance with the directions on the Claim Form and the terms of this Amended Agreement; (b) is physically signed or electronically verified by the California Class Member; (c) satisfies the conditions of eligibility for a Class Payment as set forth herein; and (d) has been deemed valid by the Settlement Administrator.

      D.    "Attorneys' Fees and Costs" means the amount of attorneys' fees and reimbursement of costs and expenses awarded to Class Counsel by the Court from the Settlement Amount.

      E.    "Claim Deadline" means the date by which a California Class Member must submit a timely and valid Claim Form to the Settlement Administrator. The Claim Deadline shall be 90 days after the Notice Date.

      F.    "Claim Form" means the form that California Class Members may submit to the Settlement Administrator in order to receive a Class Payment, substantially in the form of Exhibit 3.

      G.    "Class Counsel" means Thiago M. Coelho of Wilshire Law Firm, PLC.

      H.    "Classes" means, collectively, the classes certified by the Court on September 6, 2022 as follows:

Execution Copy

All legally blind individuals who have attempted to access Fashion Nova's Website by the use of screen reading software during the applicable limitations period up to and including final judgment in this Action (the "Nationwide Class"); and

All legally blind individuals in the State of California who have attempted to access Fashion Nova's Website by the use of screen reading software during the applicable limitations period up to and including final judgment in this Action (the "California Class").

The Classes exclude Fashion Nova; any entity in which Fashion Nova has a controlling interest; Fashion Nova's directors, officers, and employees; Fashion Nova's legal representatives, successors, and assigns; all judges assigned to this case and any members of their immediate families; the Parties' counsel in this litigation; and all persons who validly request exclusion from the <u>California Class</u>.

       I.      "Class Member(s)" means a person or persons meeting the criteria of the Class definitions.

       J.      "Class Payment(s)" means distribution(s) from the Net Settlement Amount to California Class Member(s) as set forth in Section 1.2.

       A.      "Class Period" means the applicable limitations period up to and including Final Judgment in this Action.

       B.      "Complaint" means the operative Complaint filed in this Action.

       C.      "Court" means the United States District Court for the Northern District of California, where the Action was filed.

       D.      "Effective Date" means 5 days after which all the following events and conditions of this Amended Agreement have occurred or have been met: (a) the Court has entered a Final Approval Order approving this Agreement; (b) the Court has entered Final Judgment that has become final in that the time for appeal, petition, or writ has expired or, if an appeal, petition, or writ is taken and the Final Judgment is affirmed, the time period during which further petition for hearing, appeal, or writ can be taken has expired; and (c) Fashion Nova has transferred the Settlement Amount to the Settlement Administrator. If the Final Judgment is set aside, modified without consent of the parties, or overturned by the Court or on appeal, and is not fully reinstated on further appeal, the Final Judgment shall not become final. In the event of an appeal or other effort to obtain review, the Parties may jointly agree in writing to deem the Effective Date to have occurred.

       E.      "Fashion Nova's Counsel" means Fashion Nova's counsel of record in the Action.

       F.      "Fashion Nova's Website" means the website with the URL http://www.fashionnova.com.

Execution Copy

G.     "Final Approval Hearing" means the Court hearing where Plaintiff will request the Final Approval Order be entered approving this Amended Agreement, and where Class Counsel will request that the Court enter Final Judgment. The Final Approval Hearing shall be no sooner than 180 days following the Preliminary Approval Order.

H.     "Final Approval Order" means the final order to be entered by the Court, following the Final Approval Hearing, approving this Amended Agreement.

I.     "Final Judgment" means a document labeled by the Court as such and that has the effect of a judgment under Federal Rules of Civil Procedure 23(c)(3), 54, and 68. A proposed Final Judgment is attached hereto as Exhibit 5.

J.     "Incentive Award" means any monetary award to Plaintiff the Court may choose to grant upon application by Class Counsel for any settlement payment Plaintiff would not otherwise be entitled to as a Class Member.

K.     "Long Form Notice" means the notice to be distributed and published by the Settlement Administrator as part of the Notice Program defined in Section 6, *infra*. The Proposed Long Form Notice is attached hereto as Exhibit 2.

L.     "Net Settlement Amount" means the Settlement Amount, minus Class Counsel's Attorneys' Fees and Costs, Administrative and Notice Costs, and Incentive Award.

M.     "Notice Date" shall be 60 days from entry of the Preliminary Approval Order and shall be the date on which the Settlement Administrator will commence the Notice Program defined in Section 6, *infra*.

N.     "Objection and Opt-Out Deadline" means the date by which a Class Member must submit a Written Objection or a California Class Member must submit an opt-out request to the Settlement Administrator. The Objection and Opt-Out Deadline shall be 90 days after the Notice Date.

O.     "Objector" means a person or entity who is a Class Member who submits a Written Objection.

P.     "Preliminary Approval Order" means the Court's order preliminarily approving the Amended Agreement.

Q.     "Settlement Administrator" means CPT Group, Inc., an independent settlement administrator, or any such administrator agreed to by the Parties and approved by the Court to provide notice and administer the settlement of this Action.

R.     "Settlement Amount" means an amount not to exceed Five Million One Hundred Fifty Thousand U.S. Dollars ($5,150,000).

S.     "Settlement Website" means a publicly accessible website created and maintained by the Settlement Administrator at the URL FashionNovaAccessibilitySettlement.com for the purpose of providing the Classes with notice of and information about the proposed settlement.

Execution Copy

The Settlement Website shall be maintained from at least the Notice Date until 60 days after the Effective Date.

      T.     "Short Form Notice" means the notice to be distributed by the Settlement Administrator as detailed in Section 6, *infra*. The Proposed Short Form Notice is attached hereto as Exhibit 1.

      U.     "Written Objection" means the written notice that a Class Member may submit to the Court objecting to the Amended Agreement.

## RECITALS

WHEREAS, on February 26, 2020, Plaintiff, on behalf of himself and those similarly situated, filed the Action, asserting legal claims against Fashion Nova under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* (the "ADA"), and California's Unruh Civil Rights Act, California Civil Code §§ 52 *et seq.* ("Unruh Act"), in connection with the alleged failure to maintain the website at http://www.fashionnova.com (the "Website") in a legally accessible manner.

WHEREAS, Fashion Nova disputes the claims and allegations in the Action and denies that it has violated any laws or otherwise committed any wrongdoing, that it has any liability to Plaintiff and the Classes, or that Plaintiff and the Classes are entitled to any form of relief against Fashion Nova based on such claims or matters.

WHEREAS, on September 6, 2022, after consideration of all moving and opposing papers, the Court granted Plaintiff's Motion for Class Certification and certified the Classes.

WHEREAS, the Parties have investigated the facts and have analyzed the relevant legal issues regarding the claims and defenses asserted in this Action, including through extensive fact and expert discovery and significant motion practice, including Fashion Nova's Motion to Decertify the California Class, Motion for Summary Judgment, and four Motions to Exclude Plaintiff's Expert Reports. After the Parties fully briefed these motions and on the eve of trial, the Parties conducted a mediation before Hon. Amy D. Hogue (Ret.), on January 18, 2024. Though no resolution was reached after the full-day, arms'-length mediation, Judge Hogue's continued efforts culminated in the accepted mediator's proposal that is the basis of this Amended Agreement.

WHEREAS, Plaintiff and Class Counsel believe that the claims asserted in the Action have merit and have examined and considered the benefits to be obtained under this Amended Agreement, the risks associated with the continued prosecution of this complex and time-consuming litigation, and the likelihood of ultimate success on the merits, and have concluded that the settlement is fair, adequate, reasonable, and in the best interests of the Classes.

WHEREAS, Fashion Nova has at all times denied and continues to deny any and all alleged wrongdoing or liability. Even so, taking into account the uncertainty and risks inherent in litigating this case, Fashion Nova and Fashion Nova's Counsel have concluded that continuing to defend this Action would be burdensome and expensive. Fashion Nova enters into this Amended Agreement without in any way acknowledging any fault, liability, or wrongdoing of any kind.

Execution Copy

WHEREAS, the Parties desire to settle the Action in its entirety as to Plaintiff, the Classes, and Fashion Nova with respect to all claims arising out of the facts underlying and alleged in this Action under the ADA, the Unruh Act, the Disabled Persons Act, California Civil Code §§ 52 *et seq*., and/or any other federal or state laws of similar import prohibiting discrimination on the basis of disability or with respect to the accessibility of public accommodations or business establishments (the "Disability Laws"). The Parties intend this Amended Agreement to bind Plaintiff (both as Class Representative and individually), Class Members, and Fashion Nova.

In light of the foregoing, for good and valuable consideration, the Parties, and each of them, hereby warrant, represent, acknowledge, covenant, and agree, subject to approval by the Court, as follows:

**1.    CONSIDERATION FOR SETTLEMENT AND CLASS PAYMENTS**

1.1.    <u>Fashion Nova's Financial Commitment</u>. Fashion Nova's financial commitment under this Amended Agreement shall not exceed the Settlement Amount of $5,150,000. Fashion Nova shall have no other financial obligations under this Amended Agreement or to the Classes or Class Counsel.

1.1.1.    Fashion Nova shall make the Settlement Amount payments in accordance with the following schedule:

(a)    Settlement Administrator Costs. Amounts equal to the costs actually incurred in accordance with this Amended Agreement by the Settlement Administrator, to be paid within thirty (30) days of when such amounts are invoiced to Fashion Nova along with wire instructions and other required documentation and become due and owing. Fashion Nova is not required to advance costs until such time such costs are actually incurred.

(b)    Attorneys' Fees and Costs and Incentive Awards. An amount equal to the Attorneys' Fees and Costs and Incentive Award, to be remitted to the Settlement Administrator within 10 business days of the Effective Date.

(c)    Net Settlement Amount. An amount equal to the Net Settlement Amount, to be remitted to the Settlement Administrator within ten (10) business days of the Effective Date.

1.2.    <u>Class Payments to California Class Members</u>.

1.2.1.    <u>Claim Submission</u>. Through the Notice Program, California Class Members will be notified of the Amended Agreement and that they are eligible to receive up to a total of $4,000, pro rata based on the number of timely and valid claims made, from the Net Settlement Amount. California Class Members will be notified of the requirement to submit a timely and valid Claim Form to receive a Class Payment, substantially similar to the form attached hereto as Exhibit 3, averring, under penalty of perjury, to the following: that (1) they are legally blind; (2) they visited Fashion Nova's Website with the intention of visiting a Fashion Nova physical store; (3) while visiting Fashion Nova's Website they attempted to find physical

Execution Copy

store locations and were unable to do so through the exercise of reasonable diligence; and (4) the approximate dates of their visit to Fashion Nova's Website. A California Class Member cannot receive more than one Class Payment regardless of the number of visits to Fashion Nova's Website and may not receive any Class Payment if another member of his or her household is receiving a class payment: Only one payment per household will be allowed. As part of the claim form, California Class Members will elect to receive the Class Payment either via ACH transfer or check and will provide the Settlement Administrator with the required information. A California Class Member who does not submit an Approved Claim to the Settlement Administrator by the Claim Deadline will not receive any payment in connection with the Amended Agreement. In the event a California Class Member does not submit a valid and timely Claim Form by the Claim Deadline, Unless a California Class Member elects to exclude themselves through the procedure set out in Section 5, *infra*, the California Class Member will be bound by the Amended Agreement, including the releases set out in Section 8, *infra*, even if the California Class Member does not submit an Approved Claim by the Claim Deadline.

      1.2.2. <u>Claimant List</u>. No later than 14 days after the Claim Deadline, the Settlement Administrator shall provide the Parties with all Claims Forms that were submitted to the Settlement Administrator.

      1.2.3. The Settlement Administrator will use adequate and customary procedures and standards to prevent the payment of fraudulent claims and to pay only Approved Claims. The Settlement Administrator and Parties shall have the right to audit claims, and the Settlement Administrator may request additional information from claimants. If any fraud is detected or reasonably suspected, the Settlement Administrator and Parties can require further information from a claimant (including by cross-examination) or deny claims, subject to the supervision of the Parties and ultimate oversight by the Court. Subject to the Parties' audit rights, the Settlement Administrator shall approve or deny all claims, and its decision shall be final and binding.

      1.2.4. No Person shall have any claim against Plaintiff, Fashion Nova, Class Counsel, Fashion Nova's counsel or the Settlement Administrator based on any determination of an Approved Claim or Class Payments made in accordance with this Amended Agreement and the Exhibits hereto. Neither Plaintiff nor Fashion Nova, nor their counsel, shall have any liability whatsoever for any act or omission of the Settlement Administrator.

      1.2.5. <u>Class Payment Distribution</u>. Within 30 days of the Effective Date, the Settlement Administrator shall distribute the Class Payments to California Class Members who submitted Approved Claims via each California Class Member's selected payment option: either via ACH transfer or check. Checks shall expire after 90 days.

      1.2.6. <u>Pro Rata Reduction</u>. Payments to California Class Members who do not opt out may not exceed $4,000 per household, but in the event such payments would exceed the Net Settlement Amount, each payment will be reduced pro rata so that total distributions do not exceed the Net Settlement Amount.

    1.3. <u>Distribution of Any Remaining Settlement Amount</u>. The Parties recognize that certain California Class Members may not make a claim and elect to receive Class Payments, and that California Class Members who submit an Approved Claim and receive Class Payments

Execution Copy

by check may not cash or deposit their checks within the 90 days before such checks expire. Accordingly, the Parties further recognize that there may be a remainder in the Net Settlement Amount. On or about 120 days after Class Payments have been distributed, the Settlement Administrator will determine the amount of any remainder in the Net Settlement Amount, considering any further Administrative and Notice Costs that the Settlement Administrator may incur (the "Net Settlement Amount Remainder"). Fashion Nova shall not have any revisionary interest in the Net Settlement Amount Remainder. The Settlement Administrator will then cause the Net Settlement Amount Remainder to be paid to the American Foundation for the Blind, or such other equivalent organization agreed to by the Parties and approved by the Court, as the *cy pres* recipient of the Amended Agreement. The Parties believe that, in light of the American Foundation for the Blind's mission and activities, its receipt of any *cy pres* award would appropriately advance the Parties' goal of distributing the Net Settlement Amount in a manner beneficial to the Classes.

2.    **INJUNCTIVE RELIEF**

2.1.    <u>Injunctive Measures</u>. To the extent it has not already done so, Fashion Nova shall modify Fashion Nova's Website as needed to achieve substantial conformance with WCAG 2.1 ("Injunctive Measures"). The Parties acknowledge that Fashion Nova's obligations under this Amended Agreement do not include: (i) substantial conformance with WCAG 2.1 for user generated content and/or other content or advertisements and/or websites not owned, operated, prepared or controlled by Fashion Nova, but that are linked from Fashion Nova's Website (including, but not limited to, any content/website hosted by third parties); (ii) the provision of narrative description for videos; and (iii) third-party applications or content providers where the accessibility of such content and applications are under the sole control of such third party.

2.2.    <u>Website Accessibility Policy</u>. Within 180 days of the Effective Date, to the extent that it has not already done so, Fashion Nova shall adopt and implement a website accessibility policy that comports with the Injunctive Measures. Plaintiff's and/or Class Counsel's approval of the Website Accessibility Policy is not required.

2.2.1.    <u>Website Accessibility Resource</u>. For assistance in implementing this Amended Agreement, Fashion Nova may, to the extent that it has not already, consult one or more other individuals or entities, who are generally knowledgeable about website accessibility, to provide assistance with website accessibility issues (e.g., WCAG 2.1, accessible website design; ("Website Accessibility Resource")). The Website Accessibility Resource may be available to assist Fashion Nova in complying with the terms of this Amended Agreement as Fashion Nova deems appropriate. Plaintiff's and/or Class Counsel's approval of the Website Accessibility Resource is not required.

2.2.2.    <u>Plaintiff's Right to Conduct Compliance Audit</u>. Class Counsel may perform, at their own cost and expense, their own accessibility audit of Fashion Nova's Website using a commercially reasonable method to confirm substantial conformance with WCAG 2.1. At least 60 days in advance of the Final Approval Hearing, Plaintiff will provide Fashion Nova with a copy of any such audit and the parties will meet and confer in good faith, if necessary. Plaintiff understands and acknowledges that Plaintiff shall not be entitled to recover from

Execution Copy

Fashion Nova any additional attorneys' or experts' fees or costs relating to the activities described in this paragraph.

2.3.    Nothing in this Section or in this Amended Agreement shall prevent Fashion Nova, its affiliated companies, or its successors or assignees from eliminating Fashion Nova's Website in its entirety or modifying or eliminating any feature or portion of Fashion Nova's Website at a later date, including those modified by this Amended Agreement. Fashion Nova will undertake its best efforts to not diminish accessibility of Fashion Nova's Website to persons with visual impairment disabilities to any greater degree than to other guests of Fashion Nova's Website.

3.    **OBTAINING COURT APPROVAL OF THE AMENDED AGREEMENT**

3.1.    <u>Preliminary Approval</u>. Plaintiff will move for approval of the Amended Agreement to the Court as fair and reasonable, Fashion Nova will not object, and the parties will undertake their best efforts to obtain such approval. The Parties therefore agree that Plaintiff shall submit this Amended Agreement, together with its exhibits, to the Court and shall apply for entry of a Preliminary Approval Order (the "Preliminary Approval Motion"). The Preliminary Approval Motion may be made by way of a calendared motion.

3.2.    <u>Content and Filing of Preliminary Approval Motion</u>. Class Counsel shall draft and file the Preliminary Approval Motion requesting issuance of the Preliminary Approval Order. The Preliminary Approval Motion shall be written in a neutral manner that does not contain inflammatory language about the Parties, the allegations or defenses asserted in the Action, or the Parties' perceived conduct in the Action.

3.3.    <u>Final Approval and Final Judgment</u>. In accordance with the schedule set forth in the Preliminary Approval Order, Class Counsel shall draft and file the motion requesting final approval of the settlement (the "Final Approval Motion"), the Proposed Final Approval Order, and the Proposed Final Judgment.

3.4.    <u>Failure to Approve Amended Agreement</u>. In the event the Amended Agreement is not approved, or in the event that its approval is conditioned on any modifications that are not acceptable to either Party, then, at either Party's election, (a) this Amended Agreement shall be null and void and of no force or effect and (b) any release shall be of no force or effect. In such event, the Action will revert to the status that existed before the Amended Agreement's execution date, the Parties shall each return to their respective procedural postures, and neither the Amended Agreement nor any facts concerning its negotiation, discussion, terms, or documentation shall be admissible in evidence for any purpose in this Action or in any other litigation.

4.    **OBJECTIONS**

4.1.    <u>Written Objections</u>. Any Class Member who has not submitted a timely written opt-out request and who wishes to object to the fairness, reasonableness, or adequacy of the settlement, the Attorneys' Fees and Costs Award, or the Incentive Award may comply with the below requirements.

Execution Copy

4.2. <u>Content of Written Objections</u>. All Written Objections must be in writing and must:

4.2.1. Clearly identify the case name and number, *Alcazar v. Fashion Nova, Inc.*, Case No. 4:20-cv-01434-JST;

4.2.2. Include the full name, address, telephone number, and email address of the person objecting;

4.2.3. Include the full name, address, telephone number, and email address of the person objecting's counsel (if represented by counsel); and

4.2.4. State the grounds for the Objection.

4.3. <u>Submission of Written Objections</u>. Any Written Objections from Class Members regarding the Amended Agreement must be submitted by mail to Class Counsel.

4.4. <u>Deadline for Written Objections</u>. Written Objections must be submitted by the Objection and Opt-Out Deadline. Written Objections must be postmarked by the Objection and Opt-Out Deadline. The date of the postmark on the envelope containing the written statement objecting to the Amended Agreement shall be the exclusive means used to determine whether a Written Objection is timely.

4.5. <u>Attendance at Final Approval Hearing</u>. Any Objector also has the option to appear and request to be heard at the Final Approval Hearing, either in person or through the Objector's counsel, whether or not they have submitted a timely Written Objection. Class Counsel does not represent Objectors in connection with any Written Objection to this Amended Agreement.

4.6. <u>Objectors' Attorneys' Fees and Costs</u>. Objectors shall be solely responsible for their attorneys' fees and costs.

4.7. <u>No Solicitation of Settlement Objections</u>. At no time shall any of the Parties or their counsel seek to solicit or otherwise encourage Class Members to submit Written Objections or otherwise object to the Amended Agreement or encourage an appeal from the Court's Final Approval Order.

4.8. <u>Objector List</u>. No later than 14 days after the Objection and Opt-Out Deadline, Class Counsel shall provide Fashion Nova's Counsel with all valid and timely Written Objections.

**5.    OPT-OUT PROCEDURES**

5.1. <u>Opt-Out Right</u>. The Notice Program shall advise California Class Members of their right to opt out of the Amended Agreement. California Class Members who opt out will not be bound by the Amended Agreement.

Execution Copy

    5.2.    <u>How to Request to Opt Out</u>. To opt out, California Class Members must timely submit a written request by mail to Class Counsel.

    5.3.    <u>Deadline to Request to Opt Out</u>. For a California Class Member to opt out, the California Class Member's written opt-out request must be received by the Objection and Out-Out Deadline.

    5.4.    <u>Content of Opt-Out Request</u>. All opt-out requests and any supporting papers must be in writing and must:

        5.4.1.  Clearly identify the case name and number, *Alcazar v. Fashion Nova, Inc.*, Case No. 4:20-cv-01434-JST;

        5.4.2.  Include the full name, address, telephone number, and email address of the person requesting to opt out; and

        5.4.3.  Clearly indicate an intent to opt out of the Amended Agreement.

    5.5.    <u>Effect of Opting Out</u>. Any person or entity who falls within the definition of the California Class and who validly requests to opt out of the Amended Agreement shall not be a California Class Member but shall still be a Nationwide Class Member; shall still be bound by the Amended Agreement as to Nationwide Class Members but not as to California Class Members; shall not be eligible to receive any Class Payment; and shall not be entitled to submit a Written Objection to the Amended Agreement or object in person at the Final Approval Hearing as to the California Class. In the event that a California Class Member timely submits an opt-out request and either a Written Objection as to the California Class or a claim for a Class Payment, the opt-out request shall prevail, the Written Objection shall be null and void as to the California Class, and the claim for the Class Payment will be null and void.

    5.6.    <u>Opt-Out List</u>. No later than 14 days after the Objection and Opt-Out Request Deadline, Class Counsel shall provide Fashion Nova's Counsel with the number and identity of the persons who have timely and validly opted out of the Amended Agreement.

**6.**    **SETTLEMENT ADMINISTRATION**

    6.1.    <u>Administration of Notice</u>. The Settlement Administrator shall effectuate the Notice Program described herein and under the Preliminary Approval Order.

    6.2.    <u>Notice Program</u>. The Parties agree upon, and Plaintiff will request the Court's approval of, the following forms and methods of notice to Class Members:

        6.2.1. Legal Notice Media Campaign. The Settlement Administrator will implement a notification strategy that includes diverse media channels, including sponsored search (using both Google and Bing platforms), programmatic advertisement, social media, online video, online radio, and a press release. The Settlement Administrator will use programmatic display advertising to target Class Members based on their location, interests, behaviors, and affinity audiences. The Settlement Administrator will advertise on social media and news platforms, including Facebook, Instagram, and Reddit. Further, the Settlement

Execution Copy

Administrator will utilize online video (OLV) advertisements to employ video content across digital platforms. Additionally, the Settlement Administrator will harness Google's audience targeting to reach audiences on YouTube and Spotify due to its unique combination of audio, video, and display ads. With the digital media campaign, the Settlement Administrator aims to target U.S. adults 18+ with characteristics shared by Class Members. Lastly, the Settlement Administrator will distribute a press release on US1 National Newsline to enhance the exposure and reach a broader audience. With this campaign, the Settlement Administrator intends to distribute 16,507,149 digital impressions over a period of 45 days. Using the aforementioned media strategy, the Settlement Administrator's proposed media campaign will reach about 72% of the target audience nationally and 85% of the target audience in California.

      6.2.2. Direct Mail Notice to Organizations for the Visually Impaired. The Settlement Administrator will provide physical copies of the Short Form Notice and Long Form Notice to the following entities or organizations focusing on providing services to visually impaired persons: Access Ingenuity; Advanced Access Devices; Alva Access; American Academy of Ophthalmology; American Action Fund for Blind Children and Adults; American Association for Pediatric Ophthalmology and Strabismus; American Council of the Blind; American Foundation for the Blind Blinded Veterans Association; American Foundation for the Blind: National Employment Center; American Red Cross: Braille Services; American Society of Ophthalmic Registered Nurses; American Thermoform Corporation; Association of Visual Science Librarians; Audio Editions; Audio Vision Radio; Beach Cities Braille Guild; Blind & Visually Impaired Center of Monterey County; Blind Babies Foundation; Blind Children's Learning Center; Blind Childrens Center; Blind San Franciscans; Books Aloud; Braille Institute Los Angeles Center; Braille Institute of America; Braille Institute of America: Youth Center; Braille Transcribers of Humboldt; Braille Transcribers Sacramento North Area; Braille Transcription Project of Santa Clara County: North Branch; California Academy of Ophthalmology; California Canes; California Department of Aging; California Department of Developmental Services: Early Intervention Program; California Department of Education: Clearinghouse for Specialized Media and Technology; California Department of Education: Special Education Division; California Department of Rehabilitation: Services for the Blind; California Early Intervention Technical Assistance Network; California Optometric Association; California Pacific Medical Center: Department of Ophthalmology, Low Vision Service; California School for the Blind; California State Library: Braille and Talking Book Library; California State University, Los Angeles; California State University, Northridge: Students with Disabilities Resources; Center for Living Independence for Multi-Handicapped Blind (CLIMB); Center for the Blind & Visually Impaired; Center for the Partially Sighted; Clarity Solutions LLC; Community Center for the Blind; CompuBraille; Contra Costa Braille Transcribers; Desert Blind Association; Dolphin Computer Access Ltd.; Doran Resource Center for the Blind; East Bay Center for the Blind; Enhanced Vision Systems; Exceptional Teaching Aids; Eye Dog Foundation for the Blind; Fishburne Enterprises; Foundation Fighting Blindness: Fresno Affiliate; Foundation Fighting Blindness: Northern California Affiliate; Foundation Fighting Blindness: Northern California Office; Foundation Fighting Blindness: Southern California Office; Foundation for the Junior Blind; Fresno County Public Library: Talking Book Library for the Blind; Friendship Center for the Blind and Visually Impaired; Glaucoma Research Foundation; Golden Gate Braille Transcribers; Goodwill Industries: MSMT; Guide Dogs for the Blind; Guide Dogs of America; Guide Dogs of the Desert; Helen Keller National Center for Deaf-Blind Youths and Adults: Southwest Region Office; Helping Hands for the Blind; Hope

Execution Copy

Infant Family Support Program; Innovation Management Group; Innovative Rehabilitation Technology; Institute for Families of Blind Children; IntelliTools; Intercommunity Blind Center; JBliss Imaging Systems; Jules Stein Eye Institute; KCHO-FM Radio Reading Service; KPBS-FM Radio Reading Service; Library Reproduction Service; Lighthouse International: The Low Vision Superstore; Lions Blind Center of Diablo Valley; Lions Center for the Blind; Living Skills Center for the Visually Impaired; Lutheran Braille Workers; Marin Low Vision Clinic; Monterey County Braille Transcribers; National Association for Visually Handicapped; National Eye Care Project; OVAC; Palomar College Adapted Computer Training Center; Prevent Blindness Northern California; PulseData HumanWare, Inc.; Quik-Scrybe; Recording for the Blind & Dyslexic: Inland Empire/Orange County Unit; Recording for the Blind & Dyslexic: Los Angeles Unit; Recording for the Blind & Dyslexic: Northern California Unit; Recording for the Blind & Dyslexic: Santa Barbara Unit; Revolution Enterprises, Inc.; Rose Resnick Lighthouse for the Blind and Visually Impaired; RP International; San Bernardino Valley Lighthouse for the Blind; San Diego Center for the Blind and Vision Impaired; San Francisco Public Library: Library for the Blind and Print Disabled; San Francisco State University: Department of Special Education; Santa Clara Valley Blind Center; Santa Barbara Schools/High School Districts: Program for Visually Impaired; Scripps Memorial Hospital: Mericos Eye Institute, Partial Vision Center; Sensory Access Foundation; Sequoia Braille Transcribers; Smith-Kettlewell Eye Research Institute: Rehabilitation Engineering Research Center; Society for the Blind; Southern California College of Optometry: Low Vision Service at the Eye Care Clinic/Optometric Center of Fullerton; Southern California College of Optometry: Optometric Center of Los Angeles, Low Vision Service; St. Mary Low Vision Center; Stanford University School of Medicine: Department of Ophthalmology, Low Vision Services; Telesensory Corporation; The Theosophical Book Association for the Blind; Therapeutic Living Centers for the Blind; Transcribers of Orange County; Tri-Visual Services; U.S. Department of Veterans Affairs: Western Blind Rehabilitation Center; University of California, Davis: Department of Ophthalmology, Low Vision Services; University of California, San Francisco: Beckman Vision Center; University of California: School of Optometry, Low Vision Clinic; Ventura County Braille Transcribers Association; Veterans Affairs Medical Center: Eye Clinic; Vista Center for the Blind and Visually Impaired; Volunteers of Vacaville; and Watts Health Foundation.

       6.2.3.  Settlement Website. The Settlement Administrator shall establish and maintain the Settlement Website. The Settlement Website will include case-related documents, including but not limited to, the operative Complaint, this Amended Agreement, the Long Form Notice, the Preliminary Approval Order, Class Counsel's Motion for Attorneys' Fees and Costs, information on how to submit a Written Objection or opt-out request, and contact information for Class Counsel and the Settlement Administrator.

       6.2.4.  The Settlement Website shall explain how Class Payments to California Class Members will be distributed, including that California Class Members will be given the option of providing information within 90 days of the Notice Date to the Settlement Administrator to receive a Class Payment by either ACH transfer or by check, and that California Class Members who elect not to do so will not receive a Class Payment.

     6.3.  <u>Notice of Procedures to Request to Opt Out or Submit Written Objections</u>. The Short Form Notice, Settlement Website, and Long Form Notice shall provide information on the procedure by which California Class Members opt out of the California Class or Class Members

Execution Copy

may submit a Written Objection to the Amended Agreement. Nationwide Class Members may not opt out.

      6.4.    <u>Administrative and Notice Costs</u>. The Settlement Administrator will perform all settlement administration duties required by the Amended Agreement. The Administrative and Notice Costs shall cover all costs and expenses related to the settlement administration functions to be performed by the Settlement Administrator, including providing the Short Form Notice, Long Form Notice, and Digital Notice Plan and performing the other administrative processes described in this Amended Agreement. In the event that unanticipated costs and expenses arise in connection with the notice or administration process, the Settlement Administrator shall promptly raise the matter with Class Counsel and Fashion Nova's Counsel as soon as practicable after becoming aware of the unanticipated costs and expenses. The Administrative and Notice Costs shall be paid exclusively from the Settlement Amount.

      6.5.    The Settlement Administrator, at the direction of Fashion Nova's counsel, shall comply with the notice requirements of 28 U.S.C. § 1715.

      6.6.    Prior to the hearing on Final Approval and in accordance with the Courts' regular notice requirements, the Settlement Administrator shall certify to the Court that it has complied with the notice requirements above and all other of its obligations as set forth herein.

**7.    ATTORNEYS' FEES AND COSTS AND INCENTIVE AWARD**

      7.1.    <u>Class Counsel's Attorneys' Fees and Costs</u>. Class Counsel will apply by motion to the Court seeking payment for their Attorneys' Fees and Costs incurred in prosecuting this Action (the "Motion for Attorneys' Fees and Costs"). Class Counsel will seek up to $1,235,259.03 for their costs and attorneys' fees up to 25% of the Settlement Amount, subject to Court approval. Class Counsel's Motion for Attorneys' Fees and Costs shall be filed at least 30 days before the Objection and Opt-Out Deadline and shall be posted on the Settlement Website within 3 days of its filing.

      7.2.    <u>Incentive Award</u>. Class Counsel may also apply for an Incentive Award for Plaintiff in an amount not greater than $1,000. Any Incentive Award is not a measure of damages whatsoever but is solely an award for Plaintiff's service as Class Representative and prosecuting this Action. For tax purposes, any Incentive Award will be treated as a 100% non-wage claim payment. Class Counsel shall provide a Form W-9 for Plaintiff within 60 days after the Effective Date. The Settlement Administrator shall issue an IRS Form 1099-MISC for any Incentive Award payment to Plaintiff. The Settlement Administrator shall wire any Incentive Award payment to accounts specified by Class Counsel no later than 30 days after the Effective Date.

      7.3.    <u>Limitation on Further Payments</u>. Fashion Nova shall not be liable for any additional fees or expenses of Plaintiff or any Class Member in connection with the Action beyond what is described in this Amended Agreement. Class Counsel agree that they will not seek any additional fees and costs from Fashion Nova in connection with the Action or the Amended Agreement beyond the approved Attorneys' Fees and Costs award.

**8.    MUTUAL RELEASES AND WARRANTIES**

Execution Copy

    8.1.   <u>Release by Plaintiff and Class Members.</u>

        8.1.1.  Release of Claims by Plaintiff and Class Members. As of the Effective Date, Plaintiff and each Class Member, and each of their respective successors, assigns, legatees, heirs, and personal representatives, will be deemed to have released Fashion Nova and its past, present, and future successors and predecessors in interest, all of their past or present subsidiaries, affiliates, direct or indirect parents, divisions, partners, and privities, and each of the foregoing entities' past, present, and future officers, directors, shareholders, employees, agents, principals, heirs, representatives, accountants, auditors, consultants, attorneys, and insurers, (the "Released Defendant Parties"), of all manner of action, causes of action, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, penalties, losses, costs, expenses, and attorneys' fees, of any nature whatsoever, under any law, including but not limited to any federal common or statutory law or any state's common or statutory law, known or unknown, in law or equity, fixed or contingent, which they have or may have, those claims that were alleged or that could have been pleaded based upon the factual allegations alleged in the Action and that arose during the Class Period (the "Class Released Claims"), except for claims relating to the enforcement of the Amended Agreement. For the avoidance of doubt, the Released Defendant Parties are intended to include all individuals or entities who or which could be alleged to be liable for any of the alleged inaccessibility issues alleged in the Complaint against Fashion Nova. As the sole exception to the above, California Class Members who have timely and properly requested to opt out from the California Class, and each of their respective successors, assigns, legatees, heirs, and personal representatives, will be deemed to have released Fashion Nova and the Released Defendant Parties from all Released Claims save only claims for damages arising under the Unruh Civil Rights Act, California Civil Code § 51; such California Class Members will release claims for any injunctive relief under the Unruh Civil Rights Act and all other Released Claims.

        8.1.2.  The releases above extend to any Released Claims that any Class Member does not know or suspect to exist, which, if known by him or her, might affect his or her agreement to release the Released Defendant Parties or the Class Released Claims or might affect his, her, or its decision to agree, object or not to object to this Agreement, or seek exclusion from this Amended Agreement with respect to the Class Released Claims.

        8.1.3.  Upon the Effective Date and payment of the Incentive Award, Plaintiff generally releases any and all actual, potential, filed, unfiled, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, contracts or agreements, extra-contractual claims, damages, expenses, costs, attorneys' fees and/or obligations, whether in law or in equity, accrued or unaccrued, direct, individual, or representative, of every nature and description whatsoever, against any Released Defendant Party, that in whole or in part arise out of or relate to facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act relating to Fashion Nova in any way whatsoever. Plaintiff's release includes any claims that Plaintiff does not know or suspect to exist, which, if known by him, might affect his agreement to release the Released Defendant Parties. With respect to such releases, Plaintiff shall be deemed to have, and shall have, waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, or the law of

Execution Copy

any jurisdiction outside of the United States, which is similar, comparable, or equivalent to § 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

8.1.4. Plaintiff acknowledges that he may discover facts in addition to or different from those that he now knows or believes to be true but that it is his intention to finally and forever generally release the Released Defendant Parties notwithstanding any unknown claims he may have. Plaintiff shall be deemed by operation of the Final Approval Order and Final Judgment to have acknowledged that the foregoing waiver was separately bargained for and a material element of this Amended Agreement.

1.1.1. Finality of Class Payments. The Class Payment amounts under this Amended Agreement shall be deemed final and conclusive against all Class Members who shall be bound by all terms of this Amended Agreement, including the terms of the Final Judgment to be entered in the Action and the releases provided herein.

8.2. <u>Release by Fashion Nova and Released Defendant Parties.</u> As of the Effective Date, Fashion Nova and each Released Defendant Party, and each of their respective successors, assigns, legatees, heirs, and personal representatives, will be deemed to have released Plaintiff, each and every Class Member, Class Counsel, and each of their respective past or present trustees, officers, directors, partners, employees, contractors, auditors, principals, agents, attorneys, predecessors, successors, assigns, insurers, parents, subsidiaries, general or limited partners or partnerships, and limited liability companies; and the spouses, members of the immediate families, representatives, and heirs of any Released Class Party who is an individual, as well as any trust of which any Released Class Party is the settlor or which is for the benefit of any of their immediate family members (the "Released Class Parties"), excluding any person who timely and validly seeks exclusion from the Class, of all manner of action, causes of action, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, penalties, losses, costs, expenses, and attorneys' fees, of any nature whatsoever, under any law, including but not limited to any federal common or statutory law or any state's common or statutory law, known or unknown, in law or equity, fixed or contingent, which they have or may have, those claims that were alleged or that could have been pleaded based upon the factual allegations alleged in the Action and that arose through Final Judgment (the "Released Defendants' Claims"), except for claims relating to the enforcement of the Amended Agreement.

8.2.1. The releases above extend to any Released Defendants' Claims that any Released Defendant Party does not know or suspect to exist, which, if known by him, her, or it, might affect his, her, or its agreement to release the Released Class Parties or the Released Defendants' Claims or might affect his, her, or its decision to agree, object or not to object to this Amended Agreement with respect to the Released Defendants' Claims.

Execution Copy

8.2.2. Upon the Effective Date, Fashion Nova and each of its respective successors, assigns, legatees, heirs, and personal representatives generally releases any and all actual, potential, filed, unfiled, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, contracts or agreements, extra-contractual claims, damages, expenses, costs, attorneys' fees and/or obligations, whether in law or in equity, accrued or unaccrued, direct, individual, or representative, of every nature and description whatsoever, against Plaintiff, that in whole or in part arise out of or relate to facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act relating to Fashion Nova in any way whatsoever. Fashion Nova's release includes any claims that it does not know or suspect to exist, which, if known by it, might affect its agreement to release Plaintiff. With respect to such releases, Fashion Nova shall be deemed to have, and shall have, waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable, or equivalent to § 1542 of the California Civil Code, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

8.2.3. Fashion Nova acknowledges that it may discover facts in addition to or different from those that it now knows or believes to be true but that it is its intention to finally and forever generally release Plaintiff notwithstanding any unknown claims it may have. Fashion Nova shall be deemed by operation of the Final Approval Order and Final Judgment to have acknowledged that the foregoing waiver was separately bargained for and a material element of this Amended Agreement.

8.3. <u>No Liability for Settlement Administrator</u>. No person shall have any claim of any kind against the Parties, their counsel, or the Settlement Administrator with respect to the matters under Section 6, *infra*, or based on determinations or distributions made substantially in accordance with this Amended Agreement, the Final Approval order, the Final Judgment, or further Court Order(s).

## 9. RIGHT TO TERMINATE

9.1. If more than fifty California Class Members opt out of the California Class, Fashion Nova shall have at its sole election the right to cancel this Amended Agreement, in which event the Parties and the Action will be returned to the status that would have existed if this Amended Agreement had never been made.

## 10. MISCELLANEOUS

10.1. <u>Extensions of Time</u>. All time periods and dates described in this Amended Agreement are subject to the Court's approval. Unless otherwise ordered by the Court the Parties

Execution Copy

through their counsel may jointly agree to reasonable extensions of time to carry out any of the provisions of this Amended Agreement. These time periods and dates may be changed by the Court or by written agreement of the Parties' counsel without notice to the Class Members.

10.2.  Integration. This Amended Agreement, including all exhibits, contains the entire agreement of the Parties concerning the subject matter of this Amended Agreement and supersedes any and all prior or contemporaneous written or oral representations, agreements, arrangements or understandings among them concerning such subject matter. There are no representations, agreements, arrangements or understandings, oral or written, between the Parties relating to the subject matter of this Amended Agreement that are not fully expressed in this Amended Agreement.

10.3.  Governing Law and Venue. This Amended Agreement shall be governed by, interpreted and construed pursuant to the laws of the State of California, without giving effect to any conflicts of law principles. Any and all disputes arising out of or related to the settlement or Amended Agreement must be brought by the Parties or each Class Member exclusively in this Court. The Parties and each Class Member hereby irrevocably submit that any suit, action, proceeding or dispute arising out of this Amended Agreement shall be brought in the California Superior Court for Los Angeles County.

10.4.  Survival of Warranties and Representations. The warranties and representations of this Amended Agreement are deemed to survive the Amended Agreement's date of execution.

10.5.  Representative Capacity. Each person executing this Amended Agreement in a representative capacity represents and warrants that they are empowered to do so.

10.6.  Counterparts and Electronic Signatures. This Amended Agreement may be executed in counterparts, each of which may be executed and delivered by facsimile or PDF electronic delivery with the same validity as if it were an ink-signed document and each of which shall be effective and binding on the Parties as of the Effective Date. Each such counterpart shall be deemed an original and, when taken together with other signed counterparts, shall constitute one and the same Amended Agreement.

10.7.  Cooperation of Parties. The Parties agree that they will work cooperatively to resolve any issues, concerns, and/or disputes regarding the Parties' respective obligations under this Amended Agreement. The Parties and their counsel agree to prepare and execute all documents, to seek Court approvals, to defend Court approvals, and to do all things reasonably necessary to implement the Amended Agreement.

10.8.  Voluntary Execution. This Amended Agreement is executed voluntarily by each of the Parties without any duress or undue influence on the part, or on behalf of, any of them. The Parties represent and warrant to each other that they have read and fully understand the provisions of this Amended Agreement and have relied on the advice and representation of legal counsel of their own choosing. Each of the Parties has cooperated in the drafting and preparation of this Amended Agreement and has been advised by counsel regarding the terms, effects, and consequences of the Amended Agreement. Accordingly, in any construction or interpretation to be made of this Amended Agreement, this Amended Agreement shall not be construed as having

Execution Copy

been drafted solely by any Party or their counsel. This Amended Agreement has been, and must be construed to have been, drafted by all Parties and their counsel, so that any rule that construes ambiguities against the drafter will have no force or effect.

    10.9.   Notices.

        10.9.1. All notices to Class Counsel provided for herein shall be send by email and a hard copy sent by overnight mail to Class Counsel:

Thiago M. Coelho
**Wilshire Law Firm, PLC**
3055 Wilshire Boulevard, 12th Floor
Los Angeles, California 90010
Email: thiago@wilshirelawfirm.com
Email: ConsumerLitigation@wilshirelawfirm.com

        10.9.2. All notices to Fashion Nova's Counsel provided for herein shall be send by email and a hard copy sent by overnight mail to Fashion Nova's Counsel:

Amy P. Lally
**Sidley Austin LLP**
1999 Avenue of the Stars, 17th Floor
Los Angeles, California 90067
Email: alally@sidley.com

[This section intentionally left blank]

Execution Copy

      The Parties have agreed to the terms of this Amended Agreement and have signed below.

Dated:  2/13/2025

**JUAN ALCAZAR**

Juan Alcazar
*Named Plaintiff and Class Representative*

Dated: 02|12|2025

**FASHION NOVA LLC f/k/a/
FASHION NOVA, INC.**

Joyce Crucillo
General Counsel

*Only as to Form:*

Dated:  2/13/2025

**WILSHIRE LAW FIRM, PLC**

Thiago M. Coelho
*Class Counsel*

Dated: 02/12/2025

**SIDLEY AUSTIN LLP**

Amy P. Lally
*Counsel for Fashion Nova LLC*

Dated:

**WILSON SONSINI GOODRICH & ROSATI,
P.C.**

David H. Kramer
*Counsel for Fashion Nova LLC*

Execution Copy

The Parties have agreed to the terms of this Amended Agreement and have signed below.

Dated:                                          **JUAN ALCAZAR**

                                                _____
                                                Juan Alcazar
                                                *Named Plaintiff and Class Representative*

Dated:                                          **FASHION NOVA LLC f/k/a/**
                                                **FASHION NOVA, INC.**

                                                _____
                                                Joyce Crucillo
                                                General Counsel

*Only as to Form:*

Dated:                                          **WILSHIRE LAW FIRM, PLC**

                                                _____
                                                Thiago M. Coelho
                                                *Class Counsel*

Dated:                                          **SIDLEY AUSTIN LLP**

                                                _____
                                                Amy P. Lally
                                                *Counsel for Fashion Nova LLC*

Dated: 2/12/25                                  **WILSON SONSINI GOODRICH & ROSATI,**
                                                **P.C.**

                                                _____
                                                David H. Kramer
                                                *Counsel for Fashion Nova LLC*

# EXHIBIT 1

**United States District Court for the Northern District of California**

**IF YOU ARE LEGALLY BLIND AND ATTEMPTED TO ACCESS FASHION NOVA, INC.'S WEBSITE WITH SCREEN READING SOFTWARE BETWEEN FEBRUARY 26, 2018 AND NOW, YOU SHOULD READ THIS NOTICE AS YOUR RIGHTS MAY BE AFFECTED.**

The United States District Court for the Northern District of California authorized this notice. Please read it carefully. It's not junk mail, spam, an advertisement, or a solicitation by a lawyer. You are not being sued.

A settlement has been reached with Fashion Nova, Inc. ("Fashion Nova") in *Alcazar v. Fashion Nova, Inc.*, Case No. 3:20-CV-01434-JST, a class action lawsuit ("Action") alleging that Fashion Nova's website, https://www.fashionnova.com/ ("Website"), is inaccessible to legally blind individuals using screen reading software, denying these individuals an experience equivalent to that of sighted individuals. Fashion Nova denies these allegations.

You may be included in this settlement as a Class Member and may be entitled to relief. These rights and options—**and the deadlines to exercise them**—are explained in this notice.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **Stay as a Class Member** | The parties to the Action have settled the Action. As part of the settlement, Fashion Nova will pay $5,150,000.00 and has agreed to make changes to its Website so that it is accessible to legally blind individuals. If you received this notification, that means you may be a Class Member. |
| | Details about the changes Fashion Nova will implement to its Website as part of this settlement are found in the Settlement Agreement, which you may access as further described below. All Class Members are entitled to the benefits of these implemented changes to Fashion Nova's website. |
| | In addition to the benefits specified above, **California Class Members are eligible to receive a Class Payment as described below.** |
| | **California Class Members** Under California's Unruh Act, Cal. Civ. Code §§ 51, *et seq.*, California Class Members may receive a one-time payment of up to $4,000.00, pro rata based on the number of timely and valid claims made, upon submission of a valid and timely Claim Form. Only one payment will be allowed per household. In the Claim Form, California Class Members must attest that: (1) they are legally blind; (2) they visited Fashion Nova's Website with the intention of visiting a Fashion Nova physical store; (3) while visiting Fashion Nova's Website they attempted to find physical store locations and were unable do so through the exercise of reasonable diligence; and (4) the approximate dates of their visit to Fashion Nova's Website. |
| **Opt Out of the Settlement**<br><br>The deadline to opt out is [Date] | Only California Class Members may opt out. If you decide to opt out of this settlement, you will keep the right to sue Fashion Nova at your expense in a separate lawsuit related to the subject matter of the claims this settlement resolves, but you give up the right to receive any benefit provided by this settlement, including a Class Payment as a California Class Member. |

| | |
|---|---|
| | This is the only option that allows you to sue, continue to sue, or be part of another lawsuit against Fashion Nova related to the subject matter of the claims in this Action. If you opt out of this settlement and the settlement is approved, you will no longer be represented by the lawyers who represent the Classes, known as "Class Counsel." |
| **Object to the Settlement**<br><br>The deadline to submit a written objection is <mark>[Date]</mark> | If you do not opt out of the settlement, you may object to it in writing or by asking the Court for permission to speak at the final approval hearing on <mark>[Date]</mark>.<br><br>The Court's decision whether to provide final approval of the settlement will include a determination of how much will be paid to Class Counsel and Plaintiff, the individuals who pursued this Action on behalf of the Classes. You are not personally responsible for any payments to Class Counsel or Plaintiff. Class Counsel will seek up to $1,287,500 in attorneys' fees, up to $1,235,259.03 in costs, and up to $10,000.00 for the Plaintiff as Class Representative for his services. You can object to the amounts requested if you think they are unreasonable.<br><br>If the settlement is approved by the Court following your objection, you may still be able to receive a Class Payment if you are a California Class Member who has submitted a timely and valid Claim Form. |
| **Go to a Hearing on <mark>[Date]</mark>** | You may ask the Court for permission to speak at the final approval hearing where the parties will request that the Court provide final approval of the settlement. The date for the hearing may change without further notice. For up to date information as to the date of the hearing, please check the following website FashionNovaAccessibilitySettlement.com or the Court's electronic docket system/PACER at https://ecf.cand.uscourts.gov/cgi-bin/ShowIndex.pl.<br><br>You may object to the settlement and ask to speak at the final approval hearing, and, if the settlement is approved by the Court, you may still be able to receive a Class Payment if you are a California Class Member who has submitted a timely and valid Claim Form. |

The Court overseeing this Action still has to decide whether to approve the settlement.

This notice summarizes the proposed settlement. For the precise terms of the settlement, please see the settlement agreement available at FashionNovaAccessibilitySettlement.com, by contacting Class Counsel whose contact information is listed below, by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, Ronald V. Dellums Federal Building & United States Courthouse, 1301 Clay Street, Oakland, California 94612, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

**<u>Class Counsel</u>**
Thiago M. Coelho
**Wilshire Law Firm, PLC**
3055 Wilshire Boulevard, 12th Floor
Los Angeles, California 90010
Email: thiago@wilshirelawfirm.com
Email: ConsumerLitigation@wilshirelawfirm.com

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT'S CLERK'S OFFICE TO INQUIRE ABOUT THIS NOTICE, THE SETTLEMENT, OR THE PROCESS FOR RECEIVING A CLASS PAYMENT.**

# EXHIBIT 2

**United States District Court for the Northern District of California**

**IF YOU ARE LEGALLY BLIND AND ATTEMPTED TO ACCESS FASHION NOVA, INC.'S WEBSITE WITH SCREEN READING SOFTWARE BETWEEN FEBRUARY 26, 2018 AND NOW, YOU SHOULD READ THIS NOTICE AS YOUR RIGHTS MAY BE AFFECTED.**

The United States District Court for the Northern District of California authorized this notice. Please read it carefully. It's not junk mail, spam, an advertisement, or a solicitation by a lawyer. You are not being sued.

| Basic Information | |
|---|---|
| *1. Why Was This Notice Issued?* | A settlement was reached in the class action lawsuit, *Alcazar v. Fashion Nova, Inc.*, Case No. 3:20-CV-01434-JST (the "Action"), by Plaintiff Juan Alcazar ("Plaintiff") and Defendant Fashion Nova, Inc., currently known as Fashion Nova, LLC ("Fashion Nova"). |
| | The United States District Court for the Northern District of California authorized this Notice because you have a right to know about the proposed settlement and all of your options before the Court decides whether to approve the proposed settlement. This Notice explains the Action, the settlement, your legal rights, what benefits are available, and who can get them. |
| *2. What Is a Class Action?* | In a class action, one or more people called "Class Representatives" or "Plaintiffs" (in this case, Juan Alcazar) sue on behalf of people who have similar claims. All these people are a "Class" and each is a "Class Member." One court resolves the issues for all Class Members, except for those who opt out of the Class. |
| *3. What Is This Action About?* | Plaintiff brought this Action against Fashion Nova, for himself and all others like him, alleging that Fashion Nova's website, https://www.fashionnova.com/ ("Website"), is inaccessible to legally blind individuals using screen reading software, denying these individuals an experience equivalent to that of sighted individuals. |
| | Fashion Nova denies these allegations and maintains that it did nothing wrong. The proposed settlement to resolve this Action is not an admission of guilt or wrongdoing by Fashion Nova, and it is not an admission by Fashion Nova of the truth of any of the allegations in the Action. |
| *4. Why Was There a Settlement?* | The Court has not decided in favor of the Classes or Fashion Nova. Instead, the Plaintiff, as the Class Representative, and Fashion Nova agreed to a settlement. This way, they avoid the cost, burden, and uncertainty of a trial and the individuals allegedly affected can get |

<table>
<tr><td></td><td>benefits. The Class Representative and his attorneys think the proposed settlement is best for all Class Members.<br><br>The Court preliminarily approved the proposed settlement as fair, reasonable, and adequate; authorized this notice; and scheduled a hearing to determine whether to grant final approval.</td></tr>
</table>

| **The Settlement Benefits** | |
|---|---|
| *5. How Do I Know Whether I Am Part of the Settlement?* | The Court certified this matter as a class action on September 6, 2022, and certified the following two Classes:<br><br>**The Nationwide Class**<br><br>All legally blind individuals who have attempted to access Fashion Nova's Website by the use of screen reading software during the applicable limitations period up to and including final judgment in this Action<br><br>**The California Class**<br><br>All legally blind individuals in the State of California who have attempted to access Fashion Nova's Website by the use of screen reading software during the applicable limitations period up and including final judgment in this Action<br><br>If you fit either description, you are a Class Member, and are thus included in the settlement. |
| *6. What Should I Do If I'm Still Unsure Whether I Am a Class Member?* | If you are still unsure whether you are a Class Member, you can visit the website FashionNovaAccessibilitySettlement.com, call toll-free [Settlement Admin Telephone Number], or write to the Settlement Administrator, [Insert contact information], for more information. |
| *7. What Does the Settlement Provide?* | Plaintiff, as Class Representative, and Fashion Nova (the "Parties") have agreed to settle the Action. As part of the settlement, Fashion Nova will pay $5,150,000.00 (the "Gross Settlement Amount") and has agreed to make changes to its Website so that it is accessible to legally blind individuals.<br><br>Fashion Nova will deposit the Gross Settlement Amount into an account controlled by the Settlement Administrator, a neutral company appointed by the Court |

| | |
|---|---|
| | to send this notice, calculate and make payments to California Class Members, process Class Members' opt-out requests, and perform other tasks necessary to administer the settlement. |
| | The portion of the Gross Settlement Amount remaining after deducting any Court-approved attorneys' fees and costs, incentive award to the Class Representative, and administrative and notice costs is the Net Settlement Amount. The Settlement Administrator will distribute from the Net Settlement Amount the Class Payment that will be made available to California Class Members in accordance with the description provided in the response to Question 8 below. |
| | It is possible the Court will decline to grant final approval of the settlement or decline to enter a judgment. It is also possible the Court will enter a judgment that is reversed on appeal. Plaintiff and Fashion Nova have agreed that, should either of these events occur, the settlement will be void. |
| 8. *Am I Eligible to Receive a Class Payment and, If So, How Much Will I Receive?* | Under California's Unruh Act, Cal. Civ. Code §§ 51, *et seq.*, California Class Members may receive a one-time payment of up to $4,000.00 |
| | The exact amount of your payment will depend on certain circumstances. First, only one payment will be allowed per household. If there are two or more California Class Members in your household, you can only receive one payment for all household members. |
| | Second, payments may vary depending upon the number of California Class Members who make Approved Claims. If the Net Settlement Amount is sufficient to make a $4,000 payment for each Approved Claim, each such Approved Claim will receive $4,000. If the Net Settlement Amount is not sufficient to pay each Approved Claim $4,000, the Settlement Administrator will divide the Net Settlement Amount equally among all Approved Claims, and in that event, your payment may be less than $4,000. |
| | If the Net Settlement Amount is sufficient to pay $4,000 to all Approved Claims, any remaining amounts will be paid to the American Foundation for the Blind. |
| | The Class Payments will be distributed to California Class Members who timely submit Approved Claims, |

| | |
|---|---|
| | after Court-approved deductions are made from the Gross Settlement Amount. |
| | Plaintiff and/or Class Counsel will ask the Court to approve the following deductions from the Gross Settlement Amount, the amounts of which will be decided by the Court at the final approval hearing: |
| | • Up to $1,287,500 (25% of the Gross Settlement Amount) to Class Counsel as attorneys' fees and up to $1,235,259.03 for their litigation expenses. To date, Class Counsel have worked and incurred expenses on this case without any payment. |
| | • Up to $10,000 to the Class Representative as an incentive award for filing the Action, working with Class Counsel and representing the Classes. An incentive award will be the only monies the Class Representative will receive other than the Class Representative's Class Payment, should he elect to receive a Class Payment. |
| | • Up to $158,000 to the Settlement Administrator for services administering the settlement. |
| | Class Members have the right to object to any of these deductions. The Court will consider all objections. |
| 9. *I Am a California Class Member, How Do I Get a Class Payment?* | If you received this notice, fit the description of the California Class, and do not opt out of the California Class, you must submit a Claim Form to receive a Class Payment. In the Claim Form, to be eligible to receive a Class Payment, California Class Members must attest that: (1) they are legally blind; (2) they visited Fashion Nova's Website with the intention of visiting a Fashion Nova physical store; (3) while visiting Fashion Nova's Website they attempted to find physical store locations and were unable do so through the exercise of reasonable diligence; and (4) the approximate dates of their visit to Fashion Nova's Website. |
| | You have the option of electing to receive a Class Payment by either check or ACH transfer. To receive a Class Payment, you must inform the Settlement Administrator on the Claim Form and let the Settlement Administrator know whether you elect to receive the payment by check or ACH transfer and the corresponding mailing address or banking information for the payment's distribution. You can access the Claim Form and submit a claim for a Class Payment by visiting |

|  | FashionNovaAccessibilitySettlement.com. The deadline to submit Claim Forms is [DATE]. If your claim is an Approved Claim, the Settlement Administrator will then issue a check that you can cash or will initiate an ACH transfer after the Court issues its final approval of the settlement. |
|---|---|
|  | If you elect to receive a Class Payment by check, your check will show the date when the check expires (the "void date"). If you don't cash your Class Payment by the void date, your check will be automatically cancelled, and the monies will be irrevocably lost to you. |
|  | ***If you choose to receive a check and change your address, be sure to notify the Settlement Administrator as soon as possible. Question 28 of this Notice has the Settlement Administrator's contact information.*** |
| *10. When Will Class Payments Be Made to California Class Members?* | The Court will hold a hearing on [Date] to decide whether to grant final approval of the settlement. Class Payments will be distributed to California Class Members after the Court grants final approval of the settlement and any objections are overruled with finality. The Court may also elect to move the final approval hearing to a different date or time in its sole discretion, without providing further notice to the Classes. The date and time of the final approval hearing can be confirmed at FashionNovaAccessibilitySettlement.com. |
| *11. I am a California Class Member, What If I Lose My Settlement Check?* | If you lose or misplace your settlement check before cashing it, contact the Settlement Administrator, who will replace it as long as you request a replacement before the void date on the face of the original check. If you do not request a replacement check before the void date, you will have no way to recover the Class Payment. |

| **Claims Released by Class Members** | |
|---|---|
| *12. What Rights Am I Giving Up to Stay in the Class?* | Unless you opt out, you will remain in the Class. If the settlement is approved and becomes final, all of the Court's Orders will apply to you and legally bind you. You won't be able to sue, continue to sue, or be part of any other lawsuit against Fashion Nova that is related to the subject matter or remedies of the claims in this Action. The rights you are giving up are part of the Released Claims, which are explained in Question 13, below. |

| | |
|---|---|
| *13. What Are the Released Claims?* | Each Class Member, and each of their respective successors, assigns, legatees, heirs, and personal representatives, will be deemed to have released Fashion Nova and its past, present, and future successors and predecessors in interest, all of their past or present subsidiaries, affiliates, direct or indirect parents, divisions, partners, and privities, and each of the foregoing entities, past, present, and future officers, directors, shareholders, employees, agents, principals, heirs, representatives, accountants, auditors, consultants, attorneys, and insurers, (the "Released Defendant Parties"), of all manner of action, causes of action, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, penalties, losses, costs, expenses, and attorneys' fees, of any nature whatsoever, under any law, including but not limited to any federal common or statutory law or any state's common or statutory law, known or unknown, in law or equity, fixed or contingent, which they have or may have, those claims that were alleged or that could have been pleaded based upon the factual allegations alleged in the Action and that arose during the Class Period (the "Class Released Claims"), except for claims relating to the enforcement of the Agreement. For the avoidance of doubt, the Released Defendant Parties are intended to include all individuals or entities who or which could be alleged to be liable for any of the alleged inaccessibility issues alleged in the Complaint against Fashion Nova. As the sole exception to the above, California Class Members who have timely and properly requested to opt out from the California Class, and each of their respective successors, assigns, legatees, heirs, and personal representatives, will be deemed to have released Fashion Nova and the Released Defendant Parties from all Released Claims save only claims for damages arising under the Unruh Civil Rights Act, California Civil Code § 51; such California Class Members will release claims for any injunctive relief under the Unruh Civil Rights Act and all other Released Claims. |

| **Opting Out of the Settlement** | |
|---|---|
| *14. Who can Opt Out of the Settlement?* | Only California Class Members may choose to opt-out of the Settlement. |

16391411.1

| | |
|---|---|
| *15. What Does It Mean to Opt Out of the Settlement?* | If you want to keep the right to sue or continue to sue Fashion Nova at your expense for any claim related to the subject matter of this Action, and you do not want to receive a Class Payment from this settlement, , you must take steps to get out of the settlement. This is called opting out of, or excluding yourself from, the settlement. |
| *16. How Can I Request to Opt Out of the Settlement?* | To opt out, you must send a letter with the following information:<br><br>• Your full name, address, telephone number, and email address;<br>• A statement that you wish to opt out of the Class in *Alcazar v. Fashion Nova, Inc.*, Case No. 4:20-cv-01434-JST; and<br>• Your signature.<br><br>You can download a form to use for your opt-out request at FashionNovaAccessiblitySettlement.com.<br><br>You must mail your signed opt-out request to: [Date].<br><br>***Your opt-out request must be postmarked no later than [Date] or it will be invalid.***<br><br>You must make the request yourself. If someone else makes the request for you, it will not be valid. |
| *17. If I Opt Out, Can I Still Get a Class Payment as a California Class Member?* | No. If you opt out, you are telling the Court that you don't want to be part of the Class in this settlement. You can only get a Class Payment if you are a member of the California Class, remain in the California Class, and submit an Approved Claim. See Question 9 for more information. |
| *18. If I Do Not Opt Out, Can I Sue Fashion Nova for the Same Claims Later?* | No. Unless you opt out, you are giving up the right to sue Fashion Nova regarding any claims that are related to the subject matter of the claims in this Action. You must opt out of this Action to start or continue with your own lawsuit or be part of any other lawsuit against Fashion Nova related to the subject matter of the claims in this Action. |

| The Lawyers Representing the Classes | |
|---|---|
| *19. Do I Have a Lawyer in This Case?* | Yes. The Court appointed the following attorneys to represent you as Class Counsel:<br><br>Thiago M. Coelho<br>**Wilshire Law Firm, PLC**<br>3055 Wilshire Boulevard, 12th Floor<br>Los Angeles, California 90010<br>You do not have to pay Class Counsel out of your own pocket. If you want to be represented by your own lawyer and have that lawyer appear in Court for you in this case, you may hire one at your own expense. |
| *20. How Will Class Counsel Be Paid?* | Class Counsel will ask the Court for an award of attorneys' fees of up to $1,287,500 (25% of the Gross Settlement Amount) and up to $1,235,259.03 for their litigation expenses, as well as an incentive award of up to $10,000 to the Class Representative. Class Counsel will move for both the incentive award and for attorneys' fees and costs, and the Court will determine the amounts to be awarded. All of these amounts, as well as the administrative and notice costs associated with the settlement, will be paid from the $5,150,000 that the Parties settled for before making Class Payments to California Class Members.<br><br>A copy of Class Counsel's motion for attorneys' fees and costs and for the Class Representative's incentive award will be available at FashionNovaAccessibilitySettlement.com by [Date]. |
| *21. May I Get My Own Lawyer?* | If you are a Class Member, you are not required to hire your own lawyer because Class Counsel is representing you. However, if you want your own lawyer, you may hire one at your own expense. If you opt out of the settlement, you will no longer be represented by Class Counsel once the settlement is approved. |

| Objecting to the Settlement | |
|---|---|
| *22. How Can I Tell the Court I Do Not Like the Settlement?* | If you are a Class Member, you can tell the Court if there is something about the settlement that you do not like by submitting an objection. You can't ask the Court to order a different settlement; the Court can only approve or reject the proposed settlement. If the Court denies approval, no Class Payments will be sent out and the Action will continue. |

|  | You may object to the settlement in writing by sending written notice to the Settlement Administrator. All written objections and supporting papers must (a) clearly identify the case name and number (*Alcazar v. Fashion Nova, Inc.*, Case No. 3:20-CV-01434-JST); (b) include your full name, address, telephone number, and email address of your attorney (if you are represented by counsel); (c) state the grounds for the objection; (d) be mailed to the Settlement Administrator at [==Settlement Admin contact info==]; and (e) be postmarked on or before [==Date==]. |
|  | You may also appear and request to make an objection at the final approval hearing before the Court on [==Date==], either in person or through your lawyer, if you choose to retain your own lawyer. The Court may elect to move the final approval hearing to a different date or time in its sole discretion, without providing further notice to the Classes. The date and time of the final approval hearing can be confirmed at FashionNovaAccessibilitySettlement.com. |
|  | Before deciding whether to object, you may wish to see what Plaintiff and Fashion Nova are asking the Court to approve. At least 28 days before the final approval hearing, Class Counsel and/or Plaintiff will file in Court a Motion for Final Approval that includes, among other things, the reasons why they think the proposed settlement is fair. At least 30 days before [==Objection and Opt-Out Deadline date==], Class Counsel and/or Plaintiff will file in Court a motion stating (i) the amount Class Counsel is requesting for attorneys' fees and litigation expenses and (ii) the amount the Class Representative is requesting as an incentive award. You can access these documents on the settlement website at FashionNovaAccessibilitySettlement.com. |
| *23. What Is the Difference Between Objecting and Opting Out?* | Objecting is simply telling the Court that you don't like something about the settlement. Opting out is telling the Court that you don't want to be part of the Classes. If you opt out, you cannot object because the settlement no longer affects you. |

| The Court's Final Approval Hearing | |
|---|---|
| *24. What Is a Final Approval Hearing?* | The Court will hold a hearing, called the "final approval hearing," to decide whether to approve the settlement. You may attend and you may ask to speak, but you don't have to. |
| *25. When and Where Will the Court Decide Whether to Approve the Settlement?* | The Court will hold the final approval hearing on [Date], at [Time], at the Ronald V. Dellums Federal Building & United States Courthouse, Courtroom 6 – 2nd Floor, 1301 Clay Street, Oakland, California 94612. At this hearing, the Court will decide whether to approve the settlement, Class Counsel's request for attorneys' fees and costs, and any incentive awards to the Class Representative. If there are objections, the Court will consider them. The Court may elect to move the final approval hearing to a different date or time in its sole discretion, without providing further notice to the Classes. The date and time of the final approval hearing can be confirmed at FashionNovaAccessibilitySettlement.com. <br><br> If the Court approves the settlement and enters judgment, the Court's order and notice of judgment will be available on the settlement website at FashionNovaAccessibilitySettlement.com. |
| *26. Do I Have to Attend the Final Approval Hearing?* | No. Class Counsel will answer any questions the Court may have. However, you are welcome to come to the final approval hearing at your own expense and ask the Court to speak. If you send an objection by mail, you do not have to come to the final approval hearing to talk about it, but you may do so if you like. You may also pay your own lawyer to attend, but that is not necessary. |
| *27. May I Speak at the Final Approval Hearing?* | You may ask the Court for permission to speak at the final approval hearing. You can attend (or hire a lawyer at your expense to attend on your behalf) |

| If You Do Nothing | |
|---|---|
| *28. What Happens If I Do Nothing At All?* | If you are a Class Member and you do nothing, you will give up the rights explained in Question 13, including your right to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Fashion Nova related to the Action or for claims that in any way are related to the subject matter of the claims in this Action. If you are a California Class Member and do not timely submit a valid Claim Form, you will not receive a Class Payment. |

| **More Information** | |
|---|---|
| *29. How Can I Get More Information?* | Visit the website at FashionNovaAccessibilitySettlement.com, where you will find the settlement agreement and other related documents. You may also call or write to Class Counsel or the Settlement Administrator using the information below.<br><br>Class Counsel<br><br>Thiago M. Coelho<br>**Wilshire Law Firm, PLC**<br>3055 Wilshire Boulevard, 12th Floor<br>Los Angeles, California 90010<br>Email: thiago@wilshirelawfirm.com<br>Email: ConsumerLitigation@wilshirelawfirm.com<br><br>Settlement Administrator<br>[Contact Information]<br><br>You may also view Court documents filed in this case by going to the Court's website at Court's electronic docket system at https://ecf.cand.uscourts.gov/cgi-bin/ShowIndex.pl and entering the case number for this case, Case No. Case No. 3:20-CV-01434-JST. You can also inquire about reviewing court documents in the Clerk's Office at the at the Ronald V. Dellums Federal Building & United States Courthouse, 1301 Clay Street, Oakland, California 94612 by calling (510) 637-3530.<br><br>**Do NOT telephone the Court to obtain information about the settlement.** |

16391411.1

# EXHIBIT 3

[Settlement Admin Mailing Address]

*Alcazar v. Fashion Nova, Inc.*
Case No. 4:20-cv-01434-JST
United States District Court for the
Northern District of California

## Claim Form

This claim form must be submitted online at FashionNovaAccessiblitySettlement.com . Submit your completed form online no later than [Date].

### I.    Payment Information

| | | |
|---|---|---|
| First Name | M.I. | Last Name |

Mailing Address, Line 1: Street Address/P.O. Box

Mailing Address, Line 2

| | | |
|---|---|---|
| City | State | Zip Code |

Preferred Telephone Number

Email Address

### II.    Approximate Date(s) of Visit to Fashion Nova's website

Please answer the following questions.

| | |
|---|---|
| 1.    Are you legally blind? | ☐ Yes    ☐No |
| 2.    Have you visited the Fashion Nova website (http://www.fashionnova.com) with the intention of visiting a Fashion Nova physical store? | ☐ Yes    ☐No |
| 3.    During your visit to the Fashion Nova website  (http://www.fashionnova.com),  did you attempt to find a physical store location on Fashion Nova's website but were unable to do so after reasonable diligence? | ☐ Yes    ☐No |
| 4.    In what state were you living when you visited the Fashion Nova website? | _____ |

[Settlement Admin Mailing Address]

*Alcazar v. Fashion Nova, Inc.*
Case No. 4:20-cv-01434-JST
United States District Court for the
Northern District of California

| 5.    What were the approximate dates of your visit to the Fashion Nova website? | _____ |
|---|---|

## III.    Attestation and Signature

I declare under penalty of perjury that I am legally blind and that the information provided in this Claim Form, to the best of my knowledge, is true and correct.

_____

Signature                                    Date of Signature (DD/MM/YYYY)

EXHIBIT 4

**CPT** Group
Class Action Administrators

## CASE NAME: ALCAZAR v FASHION NOVA, INC.

| | | | |
|---|---|---|---|
| **Requesting Attorney:** | Amy Lally | **Date:** | February 13, 2025 |
| **Plaintiff or Defense:** | Defense Counsel | **Prepared By:** | Tim Phillips |
| **Firm Name:** | Sidley | | 50 Corporate Park, Irvine CA 92606 |
| **Telephone:** | (310) 595-9662 | | Tim@CPTGroup.com |
| **Email:** | Alally@Sidley.com | **Direct Number:** | (818) 415-2703 |
| | | **Main Number:** | (800) 542-0900 |

### PROJECT ASSUMPTIONS & ADMINISTRATIVE COSTS

| | | | |
|---|---|---|---|
| **Est. Injunction Relief Class Size:** | 1,000,000 | **Undeliverable Mail Rate:** | N/A |
| **Est. CA Class Size:** | 5,000 | **Payment Option:** | Check & Digital Payment |
| **Valid Claims Filing Rate:** | 20% | **Unclaimed Funds:** | Cy Pres |
| **No. of Checks Issued:** | 1,000 | **Postage Total:** | $2,125.00 |
| **Language Translation Services:** | No | **Est. Media Campaign Cost:** | $129,110.00 |
| **Settlement Website:** | Interactive Website | **Grand Total:** | $188,042.22 |
| **Notice Procedures:** | Media Campaign | **CPT'S DISCOUNTED FEE:** | **$158,000.00** |

**SUMMARY OF SERVICES:** CAFA NOTICE / INTERACTIVE WEBSITE / 45-DAY LEGAL NOTICE MEDIA CAMPAIGN / LONG FORM NOTICES MAILED TO 136 ORGANIZATIONS / REACH 85% OF THE CALIFORNIA AUDIENCE & 72% OF THE NATIONWIDE AUDIENCE / 20% FILING RATE / CLAIM FORM PROCESSING / FRAUD DETECTION & VALIDATION / DISPUTE AND OPT-OUT PROCESSING / IVR / LIVE BI-LINGUAL CLASS MEMBER SUPPORT REPRESENTATIVES / DEDICATED CASE EMAIL ADDRESS / CALCULATIONS / MICR CHECK & ELECTRONIC DISBURSEMENT OPTIONS / REPORTING / DECLARATION / TAX REPORTING / UNCLAIMED FUNDS TO CYPRES

The services and numbers reflected herein are an estimate provided by counsel. If the actual services and number are different, our cost estimate will change accordingly.

The attached Terms and Conditions are included as part of our cost proposal. By accepting our costs proposal for this matter, you are thereby agreeing to the Terms and Conditions.

## CASE SETUP

After the parties file for Preliminary Approval, CPT will send CAFA notification to the US Attorney General, 50 US Attorney Generals, and US Territories, pursuant to 28 U.S.C .§ 1715. Each Class Member who submits a claim will receive a unique mailing ID that will be utilized for all administrative purposes. The Settlement Website will publish the complete notice and all relevant settlement documents for downloading and offer the ability to file claims electronically.

| ADMINISTRATIVE TASKS | UNIT PRICE | PIECES/HOURS | COST ESTIMATE |
|---|---|---|---|
| Project Manager: Case Intake & Review | $95.00 | 15 | $1,425.00 |
| Programming: Data Base Setup | $150.00 | 15 | $2,250.00 |
| Interactive Website | $5,000.00 | 1 | $5,000.00 |
| CAFA Notification (50 State AGO + Federal Offices) | $65.00 | 57 | $3,705.00 |
| Cert. Mail + Return Receipt for CAFA Notices | $10.06 | 57 | $573.42 |
| | | **Sub Total:** | **$12,953.42** |

## LEGAL NOTICE MEDIA CAMPAIGN*

A comprehensive media campaign was developed utilizing media research tools and techniques to reach the intended target audience. CPT and our strategic partner recommend implementing a notification strategy that includes diverse media channels, including sponsored search, programmatic advertisement, social media, online video, online radio, and a press release. The paid search effort will use both Bing and Google platforms. Ads will be served contextually, with respect to the terms relevant to the matter. CPT will use programmatic display advertising to target potential class members based on their location, interests, behaviors, and affinity audiences. CPT intends to advertise on social media and news platforms, including Facebook, Instagram, and Reddit. Online video (OLV) advertisements employ video content across digital platforms. Additionally, CPT will harness Google's audience targeting to reach audiences effectively on YouTube. Due to its unique combination of audio, video, and display ads, CPT will allocate impressions on the Spotify (OLR) platform to gain attention and engagement. The audience profiles on different platforms aim to target U.S. adults 18+ who have similar characteristics to the consumers of PrettyLittleThing.com, ASOS.com, Forever 21, Lulus, boohoo.com, Zara, Nasty Gal, retargeting, and other similar brands. Lastly, one (1) press release will be distributed on US1 National Newsline to enhance the exposure of the notice, attract media attention, establish credibility, and reach a broader audience. In summary, CPT intends to distribute 16,507,149 digital impressions over a period of 45 days. Using the aforementioned media tactics, the CPT's proposed media campaign will reach about 72% of the target audience nationally and 85% of the target audience in California.

| MEDIA ASSUMPTIONS | IMPRESSIONS | COST ESTIMATE |
|---|---|---|
| **Press Release:** US1 National Newsline | 1X | $2,500.00 |
| **Digital Marketing:** Paid Search, Programmatic Display, Social Media, Online Video, and Online Radio | 45 Day Campaign | $126,610.00 |
| Est. Population of the Nationwide Target Audience | 1,000,000 | |
| Est. Reach % of the Target Audience | 72% | |
| Therefore, # of Target Audience/Class Members Required to Reach | 720,000 | |
| Est. Population of the California-Only Target Audience | 5,000 | |
| Est. Reach % of the Target Audience | 85% | |
| Therefore, # of Target Audience/Class Members Required to Reach | 4,250 | |
| IMPRESSIONS | 16,507,149 | |
| FREQUENCY | 2.5-3X | |
| | **Est. Sub Total:** | **$129,110.00** |

*Publication costs are due 10 business days prior to deadline of ad placement. Estimated costs for media are dependent on available audience segment sizes, increased competition, campaign strategy, audience response and engagement, and ad placements, as well as many other factors. Media costs quoted reflect current in-platform audience availability and pricing, and are subject to fluctuations.

## DIRECT MAIL NOTIFICATION

Long Form Notices will be mailed to an estimated 136 organizations for the Visually Impaired. Class Members who request a full-length notice will be mailed to the addresses provided.

| ADMINISTRATIVE TASKS | UNIT PRICE | PIECES/HOURS | COST ESTIMATE |
|---|---|---|---|
| Project Manager: Format Documents | $95.00 | 7 | $665.00 |
| Mail Notification to 136 Organizations for the Visually Impaired * | $5.00 | 136 | $680.00 |
| Certified Mail & Return Receipt | $10.06 | 136 | $1,368.16 |
| Print & Mail Notice Packet | $2.50 | 50 | $125.00 |
| First-Class Postage (1 oz)** | $0.68 | 50 | $34.00 |
| | | **Sub Total:** | **$2,872.16** |

* Number of entities/organizations is an estimate only.
**Postage costs are subject to change at anytime. The final rate will be determined at the time of mailing.

## CLAIMS PROCESSING ADMINISTRATION

CPT will thoroughly examine the submitted responses to identify and remove any duplicates, fraudulent entries, or other invalid submissions. CPT will handle the processing and verification of any claims, opt-outs, and other responses submitted by class members. Deficient claims will be sent a notice by mail, offering the class member a chance to cure.

| Administrative Tasks: | Unit Price | Pieces/Hours | Cost Estimate |
|---|---|---|---|
| Programming of Claims Data Base | $150.00 | 10 | $1,500.00 |
| Attestation Claims Processing (Online) | $0.10 | 49,500 | $4,950.00 |
| Attestation Claims Processing (Mail) | $2.50 | 500 | $1,250.00 |
| Clerical Staff - Claims Review/Pre-Scrubbing | $50.00 | 120 | $6,000.00 |
| Deficiency Letters/Processing | $2.50 | 500 | $1,250.00 |
| Estimated Postage (up to 1 oz.) | $0.68 | 500 | $340.00 |
| Project Manager | $95.00 | 30 | $2,850.00 |
| Validation/De-duplication/Claims Scrubbing | $150.00 | 75 | $11,250.00 |
| Fraud Identification/Risk Tool Application | $0.19 | 9,000 | $1,717.20 |
| | | **Sub Total:** | **$31,107.20** |

## CLASS MEMBER SUPPORT

CPT will establish a dedicated case email address and toll-free telephone number equipped with interactive voice response (IVR) capabilities and live customer support representatives. Live support will be available during regular business hours, Monday to Friday, 9:00 AM to 5:30 PM, Pacific Time (PT). The dedicated case phone number and email address shall be operational for a maximum of 180 days following the disbursement.

| ADMINISTRATIVE TASKS | UNIT PRICE | PIECES/HOURS | COST ESTIMATE |
|---|---|---|---|
| Toll-Free Number Establish/Setup | $150.00 | 2 | $300.00 |
| Live Call Center Support Reps. | $2.00 | 1,000 | $2,000.00 |
| Dedicated Case Email Address | $150.00 | 2 | $300.00 |
| Case Inbox Support (Inbound/Outbound Emails) | $1.25 | 500 | $625.00 |
| | | **Sub Total:** | **$3,225.00** |

## DISTRIBUTION SERVICES

CPT will establish and oversee the administration of the 26 CFR § 1.468B-1 compliant Qualified Settlement Fund (QSF) for a maximum duration of one year following the distribution of funds. Once approved, CPT will conduct the essential calculations and distribute funds. CPT will send a magnetic ink character recognition (MICR) check or electronic disbursement to claimants who file a valid claim form. CPT employs a Payee Positive Pay System to reconcile cashed checks and performs monthly account reconciliations for the QSF. Undeliverable checks are skip traces to determine a current address and are remailed accordingly. Requests for reissues will be processed continuously and mailed to class members.

| ADMINISTRATIVE TASKS | UNIT PRICE | PIECES/HOURS | COST ESTIMATE |
|---|---|---|---|
| Programming: Calculation Totals | $150.00 | 8 | $1,200.00 |
| Project Manager Preparation of Distribution | $95.00 | 3 | $285.00 |
| Project Supervisor: Review of Distribution | $150.00 | 3 | $450.00 |
| Project Manager: Correspondence w/Parties | $95.00 | 2 | $190.00 |
| Programming: Setup & Printing of Checks/ePayment | $150.00 | 6 | $900.00 |
| Obtain EIN, Setup QSF/Bank Account | $150.00 | 3 | $450.00 |
| Electronic Payment Disbursement (50%) | $0.76 | 500 | $381.60 |
| Print & Mail 8.5x11 MICR Check (50%) | $2.00 | 500 | $1,000.00 |
| First-Class Postage (up to 1 oz.)* | $0.68 | 500 | $340.00 |
| Update Undeliverable Checks Database | $0.50 | 25 | $12.50 |
| Skip Trace for Best Address | $1.00 | 25 | $25.00 |
| Remail Undeliverable Checks | $2.50 | 23 | $57.50 |
| First-Class Postage (up to 1 oz.) | $0.68 | 23 | $15.64 |
| Re-Issue Checks as Required | $5.00 | 40 | $200.00 |
| First-Class Postage (up to 1 oz.) | $0.68 | 40 | $27.20 |
| | | **Sub Total:** | **$5,534.44** |

*Postage costs are subject to change at anytime. The final rate will be determined at the time of mailing.

# TAX REPORTING & SETTLEMENT CONCLUSION

CPT prepares annual tax reporting on behalf of the QSF in accordance with current state and federal regulations. All parties will be furnished with weekly and final reports. A declaration attesting to due process will be provided to all parties. Unclaimed funds will be sent to CyPres.

| ADMINISTRATIVE TASKS | UNIT PRICE | PIECES/HOURS | COST ESTIMATE |
|---|---|---|---|
| Project Supervisor: Account Reconciliation | $150.00 | 12 | $1,800.00 |
| Project Supervisor: Reconcile Uncashed Chk | $150.00 | 1 | $150.00 |
| Programming: Weekly & Final Reports | $150.00 | 2 | $300.00 |
| Project Supervisor: Final Declaration | $150.00 | 2 | $300.00 |
| Project Manager: Account Files Sent to Atty | $95.00 | 2 | $190.00 |
| QSF Annual Tax Reporting | $500.00 | 1 | $500.00 |
| Unclaimed Funds Sent to CyPres | No Fee | 1 | No Fee |
| | | **Sub Total:** | **$3,240.00** |

| | |
|---|---|
| **Total Administration Costs:** | **$188,042.22** |
| *Courtesy Discount:* | *-$30,042.22* |
| **CPT'S DISCOUNTED FLAT FEE:** | **$158,000.00** |

# TERMS AND CONDITIONS

These Terms and Conditions are made a part of, and incorporated by reference into, any cost proposal or Bid presented by CPT Group, Inc. to Client

1.  Definitions.

    a)  "**Affiliate**" means a party that partially (at least 50%) or fully controls, is partially or fully controlled by, or is under partial (at least 50%) or full common control with another party.

    b)  "**Approved Bank**" means a financial institution insured by the Federal Deposit Insurance Corporation.

    c)  "**Case**" means the particular judicial matter identified by the name of plaintiff(s) and defendant(s) on the applicable Order.

    d)  "**Claims Administrator**" means CPT Group, Inc., a reputable third-party Claims Administrator selected by all the Parties (Plaintiff and Defense Counsel) to administer the Settlement or Notification Mailing.

    e)  "**Client**" means collectively Plaintiff and Defense Counsel.

    f)  "**Client Content**" means all Class Member written document communications relating to the Case, including claim forms, opt-out forms, and objections, which contain Client Data.

    g)  "**Client Data**" means proprietary or personal data regarding Client or any of its Class Members under this Agreement, as provided by Client.

    h)  "**Class Member**" means an individual who is eligible under the Settlement Agreement to receive a designated amount of the Settlement, including the named Plaintiff(s) in the Case and all other putative persons so designated or addressed therein.

    i)  "**Confidential Information**" means any non-public information of CPT or Client disclosed by either party to the other party, either directly or indirectly, in writing, orally or by inspection of tangible objects, or to which the other party may have access, which a reasonable person would consider confidential and/or which is marked "confidential" or "proprietary" or some similar designation by the disclosing party. Confidential Information shall also include the terms of this Agreement, except where this Agreement specifically provides for disclosure of certain items. Confidential Information shall not, however, include the existence of the Agreement or any information which the recipient can establish: (i) was or has become generally known or available or is part of the public domain without direct or indirect fault, action, or omission of the recipient; (ii) was known by the recipient prior to the time of disclosure, according to the recipient's prior written documentation; (iii) was received by the recipient from a source other than the discloser, rightfully having possession of and the right to disclose such information; or (iv) was independently developed by the recipient, where such independent development has been documented by the recipient.

    j)  "**Court Order**" means a legal command or direction issued by a court, judicial office, or applicable administrative body requiring one or more parties to the Case to carry out a legal obligation pursuant to the Case.

    k)  "**Defendant**" means the named party and/or parties in the Case against whom action is brought.

    l)  "**Defense Counsel**" means the attorney of record for the defendant(s) in the Case.

    m)  "**Intellectual Property Right**" means any patent, copyright, trade or service mark, trade dress, trade name, database right, goodwill, logo, trade secret right, or any other intellectual property right or proprietary information right, in each case whether registered or unregistered, and whether arising in any jurisdiction, including without limitation all rights of registrations, applications, and renewals thereof and causes of action for infringement or misappropriation related to any of the foregoing.

    n)  "**Order**" means a Product purchase in a schedule, statement of work, addendum, exhibit, or amendment signed by Client and CPT.

    o)  "**Parties**" shall mean collectively Defendants, Defense and Plaintiff as defined in the Settlement Agreement or Court Order.

    p)  "**Plaintiff**" means the named party and/or parties in the Case who are bringing the action.

    q)  "**Plaintiff Counsel**" means the attorney of record for plaintiff Class Members in the Case.

    r)  "**Products**" means any and all CPT Services, and work products resulting from Services.

    s)  "**Qualified Settlement Fund**" means the entity as defined by Treasury Regulation section 468-1 under which a bank account is established to receive settlement funds from the Defendant in the Case, which such funds are then disbursed by CPT according to the Settlement Agreement and pursuant to Court Order.

    t)  "**Service**" means any service rendered by CPT specifically to Client, including, but not limited to: (i) notifications to Class Members; (ii) setting up a Qualified Settlement Fund with a financial institution; (iii) management of disbursement of funds from the Qualified Settlement Fund to applicable parties pursuant to the Settlement Agreement; (iv) provision of customer support relating to the Case; (v) management of Case claim forms and correspondence; and/or (vi) any administrative or consulting service.

    u)  "**Software**" means any and all of CPT's proprietary applications, including, without limitation, all updates, revisions, bug-fixes, upgrades, and enhancements thereto.

    v)  "**Settlement**" means the total dollar amount agreed to between parties to the Case, as negotiated by Plaintiff Counsel and Defense Counsel, to resolve the Case to mutual satisfaction.

    w)  "**Settlement Agreement**" means the contract between parties to the Case to resolve the same, which specifies amounts to be disbursed from the Qualified Settlement Fund to attorneys, CPT, and individual Class Members.

    x)  "**Term**" means the term of the Agreement, as set forth in the Order.

    y)  "**Transmission Methods**" means the secure authorized manner to send Client Data and/or Wire Information as specified on a schedule or Order hereto.

    z)  "**Wire Information**" means instructions for (i) Defense Counsel to transfer funds from Defendant to the Qualified Settlement Fund and (ii) CPT to transfer funds from the Qualified Settlement Fund to applicable parties pursuant to the Settlement Agreement.

2.  Client Obligations. Client will ensure that it has obtained all necessary consents and approvals for CPT to access Client Data for the purposes permitted under this Agreement and shall only transmit Client Data and/or Wire Instructions to CPT via the Transmission Methods. Client shall use and maintain appropriate administrative, technical, and physical safeguards designed to protect Client Data provided under this Agreement. Client shall not send, or attempt to send, Client Data and/or Wire Instructions via email, facsimile, unprotected spreadsheet, USB flash drive or other external or removable storage device, cloud storage provider, or any other method not specified in the Transmission Methods. Notwithstanding the foregoing, Client acknowledges and understands that the electronic transmission of information cannot be guaranteed to be secure or error free, and such information could be intercepted, corrupted, lost, and/or destroyed. Client further warrants that any Client Data and/or Wire Instructions it transmits shall be free of viruses, worms, Trojan horses, or other harmful or disenabling codes which could adversely affect the Client Data and/or CPT. If Client is in breach of this section, CPT may suspend Services, in addition to any other rights and remedies CPT may have at law or in equity.

3.  Security. The Parties and CPT shall each use reasonable administrative, technical, and physical safeguards that are reasonably designed to: (a) protect the security and confidentiality of any personally identifiable information provided by Class Members and/or Client under this Agreement; (b) protect against any anticipated threats or hazards to the security or integrity of such personally identifiable information; (c) protect against unauthorized access to or use of such personally identifiable information that could result in substantial harm or inconvenience to any individual; and (d) protect against unauthorized access to or use of such personally identifiable information in connection with its disposal. Each Party will respond promptly to remedy any known security breach involving the personally identifiable information provided by you and/or Client under this Agreement and shall promptly inform the other Parties of such breaches.

4.  CPT Obligations. Provided that Client complies with all provisions of Section "Client Obligations", CPT will (i) maintain appropriate safeguards for the protection of Client Data, including regular back-ups, security and incident response protocols, and (ii) not access or disclose Client Data except (A) as compelled by law, (B) to prevent or address service or technical issues, (C) in accordance with this Agreement or the provisions of the Settlement Agreement, or (D) if otherwise permitted by Client.

5.  Mutual Obligations.

    a)  Resources. Each party agrees to: (i) provide the resources reasonably necessary to enable the performance of the Services; (ii) manage its project staffing, milestones, and attendance at status meetings; and (iii) ensure completion of its project deliverables and active participation during all phases of a Service project. The parties acknowledge that failure to cooperate during a Service project may delay delivery of the Service.

If there is a delay, the party experiencing the delay will notify the other party as soon as reasonably practicable, and representatives of each party will meet to discuss the reason for the delay and applicable consequences. Changes beyond the scope of an Order and/or a party's delay in performing its obligations may require an amended Order.

b) <u>Incident Notification</u>. Each party will promptly inform the other parties in the event of a breach of Client Data in their possession and shall utilize best efforts to assist the other parties to mitigate the effects of such incident.

6. <u>Qualified Settlement Fund Account</u>. At Client's request, CPT shall be authorized to establish one or more bank accounts at an Approved Bank. The amounts held at the Approved Bank under this Agreement are at the sole risk of Client. Without limiting the generality of the foregoing, CPT shall have no responsibility or liability for any diminution of the funds that may result from the deposit thereof at the Approved Bank, including deposit losses, credit losses, or other claims made against the Approved Bank. It is acknowledged and agreed that CPT has acted reasonably and prudently in depositing funds at an Approved Bank, and CPT is not required to conduct diligence or make any further inquiries regarding such Approved Bank.

7. <u>Fees and Payment</u>. Pricing stated within the proposal is good for 90 Days. All postage charges and 50% of the final administration charges are due at the commencement of the case and will be billed immediately upon receipt of the Client data and /or notice documents. Client will be invoiced for any remaining fees according to the applicable Order. Pricing stated within any proposal from CPT to Client is for illustrative purposes only and is only binding upon an Order executed by CPT and Client. Payment of fees will be due within 30 days after the date of the invoice, except where this Agreement expressly prescribes other payment dates. All fees set forth in an Order are in U.S. dollars, must be paid in U.S. dollars, and are exclusive of taxes and applicable transaction processing fees. Late payments hereunder will incur a late charge of 1.5% (or the highest rate allowable by law, whichever is lower) per month on the outstanding balance from the date due until the date of actual payment. In addition, Services are subject to suspension for failure to timely remit payment therefor. If travel is required to effect Services, Client shall reimburse CPT for pre-approved, reasonable expenses arising from and/or relating to such travel, including, but not limited to, airfare, lodging, meals, and ground transportation.

8. <u>Term and Termination.</u>

a) <u>Term</u>. The Term is set forth in the Order. The Agreement may be renewed by mutual written agreement of the parties.

b) <u>Termination for Cause</u>. Either party may immediately terminate this Agreement if the other party materially breaches its obligations hereunder, and, where capable of remedy, such breach has not been materially cured within forty-five (45) days of the breaching party's receipt of written notice describing the breach in reasonable detail.

c) <u>Bankruptcy Events</u>. A party may immediately terminate this Agreement if the other party: (i) has a receiver appointed over it or over any part of its undertakings or assets; (ii) passes a resolution for winding up (other than for a bona fide scheme of solvent amalgamation or reconstruction), or a court of competent jurisdiction makes an order to that effect and such order is not discharged or stayed within ninety (90) days; or (iii) makes a general assignment for the benefit of its creditors.

d) <u>Effect of Termination</u>. Immediately following termination of this Agreement, upon Client's written request, Client may retrieve Client Data via Client's secure FTP site in the same format in which the Client Data was originally inputted into the Software, at no additional charge. Alternatively, Client Data can be returned in a mutually agreed format at a scope and price to be agreed. CPT will maintain a copy of Client Data and Client Content for no more than four (4) years following the date of the final check cashing deadline for Class Members under the Settlement Agreement, after which time any Client Data and Client Content not retrieved will be destroyed.

e) <u>Final Payment</u>. If Client terminates this Agreement due to Section "Termination", Client shall pay CPT all fees owed through the termination date. If CPT terminates the Agreement in accordance with Section "Termination," Client shall pay CPT all fees invoiced through the termination date, plus all fees remaining to be invoiced during the Term, less any costs CPT would have incurred had the Agreement not been terminated.

<u>Confidentiality</u>. Each of the parties agrees: (i) not to disclose any Confidential Information to any third parties except as mandated by law and except to those subcontractors of CPT providing Products hereunder who agree to be bound by confidentiality obligations no less stringent than those set forth in this Agreement; (ii) not to use any Confidential Information for any purposes except carrying out such party's rights and responsibilities under this Agreement; and (iii) to keep the Confidential Information confidential using the same degree of

a) <u>Compelled Disclosure</u>. If receiving party is compelled to disclose any Confidential Information by judicial or administrative process or by other requirements of law, such party shall (i) promptly notify the other party, (ii) reasonably cooperate with the other party in such party's efforts to prevent or limit such compelled disclosure and/or obtain confidential treatment of the items requested to be disclosed, and (iii) shall disclose only that portion of such information which each party is advised by its counsel in writing is legally required to be disclosed.

b) <u>Remedies</u>. If either party breaches any of its obligations with respect to confidentiality or the unauthorized use of Confidential Information hereunder, the other party shall be entitled to seek equitable relief to protect its interest therein, including but not limited to, injunctive relief, as well as money damages.

10. <u>Intellectual Property</u>. As between the parties, CPT will and does retain all right, title and interest (including, without limitation, all Intellectual Property Rights) in and to the Products. Client retains all ownership rights to Client Data.

11. <u>Indemnification</u>. Client agrees to indemnify, defend, and hold harmless CPT, its Affiliates, and the respective officer, directors, consultants, employees, and agents of each (collectively, Covered CPT Parties") from and against any and all third party claims and causes of action, as well as related losses, liabilities, judgments, awards, settlements, damages, expenses and costs (including reasonable attorney's fees and related court costs and expenses) (collectively, "Damages") incurred or suffered by CPT which directly relate to or directly arise out of (i) Client's breach of this Agreement; (ii) CPT's performance of Services hereunder; (iii) the processing and/or handling of any payment by CPT; (iv) any content, instructions, information or Client Data provided by Client to CPT in connection with the Services provided by CPT hereunder. The foregoing provisions of this section shall not apply to the extent the Damages relate to or arise out of CPT's willful misconduct. To obtain indemnification, indemnitee shall: (i) give written notice of any claim promptly to indemnitor; (ii) give indemnitor, at indemnitor's option, sole control of the defense and settlement of such claim, provided that indemnitor may not, without the prior consent of indemnitee (not to be unreasonably withheld), settle any claim unless it unconditionally releases indemnitee of all liability; (iii) provide to indemnitor all available information and assistance; and (iv) not take any action that might compromise or settle such claim.

12. <u>Warranties</u>. Each party represents and warrants to the other party that, as of the date hereof: (i) it has full power and authority to execute and deliver the Agreement; (ii) the Agreement has been duly authorized and executed by an appropriate employee of such party; (iii) the Agreement is a legally valid and binding obligation of such party; and (iv) its execution, delivery and/or performance of the Agreement does not conflict with any agreement, understanding or document to which it is a party. CPT WARRANTS THAT ANY AND ALL SERVICES PROVIDED BY IT HEREUNDER SHALL BE PERFORMED IN A PROFESSIONAL MANNER CONSISTENT WITH PREVAILING INDUSTRY STANDARDS. TO THE EXTENT PERMITTED BY APPLICABLE LAW, CPT DISCLAIMS ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, STATUTORY OR OTHERWISE, INCLUDING WITHOUT LIMITATION WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NON-INFRINGEMENT AND ANY WARRANTIES ARISING FROM A COURSE OF DEALING, USAGE OR TRADE PRACTICE.

13. <u>Liability</u>.

a) <u>Liability Cap</u>. EXCEPT FOR A PARTY'S WILLFUL MISCONDUCT, EACH PARTY'S MAXIMUM AGGREGATE LIABILITY ARISING OUT OF OR RELATING TO THIS AGREEMENT, REGARDLESS OF THE THEORY OF LIABILITY, WILL BE LIMITED TO THE TOTAL CLAIMS ADMINISTRATOR FEES PAID OR PAYABLE BY CLIENT TO CPT HEREUNDER. THE EXISTENCE OF MORE THAN ONE CLAIM SHALL NOT EXPAND SUCH LIMIT. THE PARTIES ACKNOWLEDGE THAT THE FEES AGREED UPON BETWEEN CLIENT AND CPT ARE BASED IN PART ON THESE LIMITATIONS, AND THAT THESE LIMITATIONS WILL APPLY NOTWITHSTANDING ANY FAILURE OF ANY ESSENTIAL PURPOSE OF ANY LIMITED REMEDY. THE FOREGOING LIMITATION SHALL NOT APPLY TO A PARTY'S PAYMENT OBLIGATIONS UNDER THE AGREEMENT.

b) <u>Exclusion of Consequential Damages</u>. NEITHER PARTY WILL BE LIABLE FOR LOST PROFITS, LOST REVENUE, LOST BUSINESS OPPORTUNITIES, LOSS OF DATA, INTERRUPTION OF BUSINESS, OR ANY OTHER INDIRECT, SPECIAL, PUNITIVE, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF OR RELATING TO THIS AGREEMENT, REGARDLESS OF THE THEORY OF LIABILITY, EVEN IF IT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

14. <u>Communications</u>. CPT may list Client's name and logo alongside CPT's other clients on the CPT website and in marketing materials, unless and until Client revokes such permission. CPT may also list the Case name and/or number, and

(iii) to keep confidential the fact that the parties use certain products and services, and information that CPT uses to protect its own confidential information, *provided, however*, that such party shall use at least reasonable care. These obligations shall survive termination of this Agreement.

of Client's database; and information on CPT's website and in marketing materials, unless stated otherwise in the Settlement Agreement.

15. <u>Miscellaneous Provisions.</u>

a) <u>Governing Law; Jurisdiction.</u> This Agreement will be governed by and construed in accordance with the laws of the State of California and the federal laws of the United States of America, without regard to conflict of law principles. CPT and Client agree that any suit, action or proceeding arising out of, or with respect to, this Agreement or any judgment entered by any court in respect thereof shall be brought exclusively in the state or federal courts of the State of California located in the County of Orange, and each of CPT and Client hereby irrevocably accepts the exclusive personal jurisdiction and venue of those courts for the purpose of any suit, action or proceeding.

b) <u>Force Majeure.</u> Neither party will be liable for any failure or delay in its performance under this Agreement due to any cause beyond its reasonable control, including without limitation acts of war, acts of God, earthquake, flood, weather conditions, embargo, riot, epidemic, acts of terrorism, acts or omissions of vendors or suppliers, equipment failures, sabotage, labor shortage or dispute, governmental act, failure of the Internet or other acts beyond such party's reasonable control, provided that the delayed party: (i) gives the other party prompt notice of such cause; and (ii) uses reasonable commercial efforts to correct promptly such failure or delay in performance.

c) <u>Counterparts.</u> This Agreement may be executed in any number of counterparts and electronically, each of which shall be an original but all of which together shall constitute one and the same instrument.

d) <u>Entire Agreement.</u> This Agreement contains the entire understanding of the parties in respect of its subject matter and supersedes all prior agreements and understandings (oral or written) between the parties with respect to such subject matter. The schedules and exhibits hereto constitute a part hereof as though set forth in full herein.

e) <u>Modifications.</u> Any modification, amendment, or addendum to this Agreement must be in writing and signed by both parties.

f) <u>Assignment.</u> Neither party may assign this Agreement or any of its rights, obligations, or benefits hereunder, by operation of law or otherwise, without the other party's prior written consent; *provided, however*, either party, without the consent of the other party, may assign this Agreement to an Affiliate or to a successor (whether direct or indirect, by operation of law, and/or by way of purchase, merger, consolidation or otherwise) to all or substantially all of the business or assets of such party, where the responsibilities or obligations of the other party are not increased by such assignment and the rights and remedies available to the other party are not adversely affected by such assignment. Subject to that restriction, this Agreement will be binding on, inure to the benefit of, and be enforceable against the parties and their respective successors and permitted assigns.

g) <u>No Third-Party Beneficiaries.</u> The representations, warranties, and other terms contained herein are for the sole benefit of the parties hereto and their respective successors and permitted assigns and shall not be construed as conferring any rights on any other persons.

h) <u>Statistical Data.</u> Without limiting the confidentiality rights and Intellectual Property Rights protections set forth in this

Agreement, CPT has the perpetual right to use aggregated, anonymized, and statistical data ("Statistical Data") derived from the operation of the Software, and nothing herein shall be construed as prohibiting CPT from utilizing the Statistical Data for business and/or operating purposes, provided that CPT does not share with any third-party Statistical Data which reveals the identity of Client, Client's Class Members, or Client's Confidential Information.

i) <u>Export Controls.</u> Client understands that the use of CPT's Products is subject to U.S. export controls and trade and economic sanctions laws and agrees to comply with all such applicable laws and regulations, including the Export Administration Regulations maintained by the U.S. Department of Commerce and the trade and economic sanctions maintained by the Treasury Department's Office of Foreign Assets Control.

j) <u>Severability.</u> If any provision of this Agreement is held by a court or arbitrator of competent jurisdiction to be contrary to law, such provision shall be changed by the court or by the arbitrator and interpreted so as to best accomplish the objectives of the original provision to the fullest extent allowed by law, and the remaining provisions of this Agreement shall remain in full force and effect.

k) <u>Notices.</u> Any notice or communication required or permitted to be given hereunder may be delivered by hand, deposited with an overnight courier, sent by electronic delivery, or mailed by registered or certified mail, return receipt requested and postage prepaid to the address for the other party first written above or at such other address as may hereafter be furnished in writing by either party hereto to the other party. Such notice will be deemed to have been given as of the date it is delivered, if by personal delivery; the next business day, if deposited with an overnight courier; upon receipt of confirmation of electronic delivery (if followed up by such registered or certified mail); and five days after being so mailed.

l) <u>Independent Contractors.</u> Client and CPT are independent contractors, and nothing in this Agreement shall create any partnership, joint venture, agency, franchise, sales representative or employment relationship between Client and CPT. Each party understands that it does not have authority to make or accept any offers or make any representations on behalf of the other. Neither party may make any statement that would contradict anything in this section.

m) <u>Subcontractors.</u> CPT shall notify Client of its use of any subcontractors to perform Client-specific Services. CPT shall be responsible for its subcontractors' performance of Services under this Agreement.

n) <u>Headings.</u> The headings of the sections of this Agreement are for convenience only, do not form a part hereof, and in no way limit, define, describe, modify, interpret, or construe its meaning, scope or intent.

o) <u>Waiver.</u> No failure or delay on the part of either party in exercising any right, power or remedy under this Agreement shall operate as a waiver, nor shall any single or partial exercise of any such right, power or remedy preclude any other or further exercise or the exercise of any other right, power, or remedy.

p) <u>Survival.</u> Sections of the Agreement intended by their nature and content to survive termination of the Agreement shall so survive.

# EXHIBIT 5

1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**NORTHERN DISTRICT OF CALIFORNIA**

10

11   JUAN ALCAZAR, individually and on
behalf of all others similarly situated,

12

Plaintiffs,

13

vs.

14

15   FASHION NOVA, INC., a California
corporation; and DOES 1 to 10, inclusive,

16

Defendants.

17

18

19

20
21
22
23
24
25
26
27
28

Case No.:  4:20-cv-01434-JST

CLASS ACTION

*Assigned to Hon. Jon S. Tigar*
*Courtroom 6*

**[PROPOSED] FINAL JUDGMENT**

Complaint filed:  February 26, 2020
Trial Date:        April 8, 2024

---

[PROPOSED] FINAL JUDGMENT

On _____, this matter came on for hearing for approval of the Amended Settlement Agreement and Release ("Amended Agreement") entered into by Plaintiff Juan Alcazar and Defendant Fashion Nova, Inc., currently known as Fashion Nova, LLC ("Fashion Nova"). Due and adequate notice having been given to the Classes per Federal Rule of Civil Procedure 23 and Order of the Court, the Court having considered all papers filed and proceedings held herein and otherwise being duly informed and for good cause, IT IS HEREBY ORDERED that:

1.    This Judgment incorporates by reference the definitions in the Amended Agreement, and all terms used herein shall have the same meanings as set forth in the Amended Agreement, unless otherwise stated.

2.    This Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including all Class Members.

3.    On September 6, 2022, the Court certified the following two Classes:

> All legally blind individuals who have attempted to access Fashion Nova's Website by the use of screen reading software during the applicable limitations period up to and including final judgment in this Action (the "Nationwide Class"); and

> All legally blind individuals in the State of California who have attempted to access Fashion Nova's Website by the use of screen reading software during the applicable limitations period up and including final judgment in this Action (the "California Class").

4.    Excluded from the Classes are Fashion Nova, including any entity in which Fashion Nova has a controlling interest, is a parent or subsidiary, or which is controlled by Fashion Nova, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Fashion Nova. Also excluded from the California Class is any individual who timely and validly sought to opt out from the California Class, as identified in Exhibit A hereto.

5.    Per Rule 23, this Court hereby approves the settlement set forth in the Amended Agreement and finds that:

a. in light of the benefits to the Classes and the complexity and expense of further litigation, the Amended Agreement and the settlement contained therein are, in all respects, fair, reasonable and adequate;

b. there was no collusion in connection with the Amended Agreement;

c. Class Representative and Class Counsel adequately represented Class Members;

d. the Amended Agreement was the product of informed, arm's-length negotiations among competent, able counsel;

e. the relief provided for the Classes is adequate, having taken into account (i) the costs, risks and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the Classes, including the method of processing Class Members' claims; (iii) the terms of any proposed award of attorneys' fees and costs and incentive award to the Class Representative, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3);

f. the Amended Agreement treats Class Members equitably relative to each other; and

g. the record is sufficiently developed and complete to have enabled Plaintiff and Fashion Nova to have adequately evaluated and considered their positions.

6. Accordingly, the Court authorizes and directs implementation and performance of all the terms and provisions of the Amended Agreement, as well as the terms and provisions hereof. Except as to any individual claim of those individuals who have validly and timely requested exclusion from the California Class (identified in Exhibit A hereto), the Action and all Class Released Claims are dismissed with prejudice as to Plaintiff and the other Class Members and as against each and all the Released Defendant Parties. Each party is to bear their own costs except as otherwise provided in the Amended Agreement.

7. No person shall have any claim against Fashion Nova, Plaintiff, Class Counsel, or the Settlement Administrator, or any other person designated by Class Counsel based on

determinations or distributions made substantially in accordance with the Amended Agreement and the settlement contained therein, or further order(s) of the Court.

8.    Upon the Effective Date, Plaintiff, and each of the Class Members, shall be deemed to have, and by operation of this Judgment shall have, fully, finally and forever waived, released, discharged, and dismissed each and every one of the Released Claims against each and every one of the Released Parties with prejudice on the merits, whether or not Plaintiff, or such Class Member executes and delivers the Claim Form and whether or not the Plaintiff, or each of the Class Members ever seeks or obtains any Class Payment distribution from the Net Settlement Fund. Claims to enforce the terms of the Stipulation are not released.

9.    Upon the Effective Date, Plaintiff, all Class Members and anyone claiming through or on behalf of any of them are forever barred and enjoined from commencing, instituting, asserting or continuing to prosecute any action or proceeding in any court of law or equity, arbitration tribunal, administration forum or other forum of any kind any of the Released Claims against any of the Released Parties.

10.    The distribution of the Notices as provided for in the Preliminary Approval Order constituted the best notice practicable under the circumstances, including individual notice to Class Members who could be identified through reasonable effort. The notice provided was the best notice practicable under the circumstances of those proceedings and of the matters set forth therein, including the proposed settlement set forth in the Amended Agreement, to all persons entitled to such notice, and said notice fully satisfied the requirements of Rule 23, due process and any other applicable law. No Class Member is relieved from the terms of the Amended Agreement, including the releases provided for therein, based upon the contention or proof that such Class Member failed to receive actual or adequate notice. A full opportunity has been offered to the Class Members to object to the proposed settlement and to participate in the hearing thereon. The Court further finds that the notice provisions of the Class Action Fairness Act, 28 U.S.C. § 1715, were fully

discharged and that the statutory waiting period has elapsed. Thus, it is hereby determined that all Class Members are bound by this Judgment, except those persons listed on Exhibit A to this Judgment.

11.    The Court will enter a separate Order regarding Class Counsel's attorneys' fees and costs and Plaintiff's incentive award. Any order entered regarding attorneys' fees and costs and incentive award to Plaintiff shall in no way disturb or affect this Judgment and shall be considered separate from this Judgment. Any order or proceeding relating to any attorneys' fees and costs and incentive award to Plaintiff, or any appeal from any order relating thereto or reversal or modification thereof, shall not affect or delay the finality of the Final Judgment in this Action.

12.    Neither the Amended Agreement nor the settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Amended Agreement or the settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Parties; or (c) is or may be deemed to be or may be used as an admission or evidence that any claims asserted by Plaintiff were not valid or that the amount recoverable was not greater than the Settlement Amount in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.

13.    Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of the settlement, the Amended Agreement, and any award or distribution of the Gross Settlement Fund, including interest earned thereon; and (b) disposition of the Gross Settlement Fund.

14.    The Parties and each Class Member irrevocably submit that any suit, action, proceeding or dispute arising out of this Amended Agreement, including but not limited to

construing, enforcing and administering the Amended Agreement, shall be brought in the California Superior Court for Los Angeles County.

15.    The Court finds that during the course of the Action, the Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.

16.    In the event that the settlement does not become effective in accordance with the terms of the Amended Agreement, or the Effective Date does not occur, then this Judgment shall be rendered null and void to the extent provided by and in accordance with the Amended Agreement and shall be vacated; and in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Amended Agreement.

17.    Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of the Amended Agreement.

18.    The Court directs immediate entry of this Judgment by the Clerk of the Court.

19.    The Court's orders entered during this Action relating to the confidentiality of information shall survive this settlement.


**IT IS SO ORDERED**.


Dated: _____    _____

                                                    HON. JON S. TIGAR
                                                    United States District Judge

[PROPOSED] FINAL JUDGMENT