HARMEET K. DHILLON, Assistant Attorney General (CABN 207873)
R. JONAS A. GEISSLER, Deputy Assistant Attorney General (NJBN 025752001)
KEVIN J. KIJEWSKI, Deputy Chief (IL ARDC 6226876)
DAVID W. KNIGHT, Trial Attorney (MDAN 0412140410)
U.S. Department of Justice
950 Pennsylvania Ave., N.W. - 4CON
Washington, DC 20530
Telephone: (202) 305-5361
david.knight@usdoj.gov

CRAIG H. MISSAKIAN, United States Attorney (CABN 125202)
MICHAEL A. KEOUGH, Assistant United States Attorney (NYRN 5199666)
1301 Clay Street, Suite 340S
Oakland, California 94612-5217
Telephone: (510) 637-3721
Facsimile: (510) 637-3724
michael.keough@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JUAN ALCAZAR, individually, and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> FASHION NOVA, INC., a California corporation; and DOES 1 to 100, inclusive, <br><br> Defendant. | Case No.: 4:20-cv-01434-JST |

**STATEMENT OF INTEREST OF THE UNITED STATES**

## I. INTRODUCTION

The United States respectfully urges the Court to reject the Amended Settlement Agreement. ECF 200-2. The proposed settlement greatly enriches Plaintiff's counsel while providing little value to most class members—particularly Nationwide Class members not residing in California—because it secures only generic and weakly enforceable injunctive relief, but no guarantee of accessibility. Also, the Court should scrutinize compensation to class counsel given that—ironically—their own website to manage the proposed class settlement,[1] www.fashionnovaaccessibilitysettlement.com (the "Class Website"), was inaccessible to individuals with vision disabilities in the very same manner that Plaintiff alleged in his Complaint that Defendant's website was deficient. *See* ECF 1, Para. 26. To be sure, the United States does not oppose relief that would actually make a website available to individuals who are blind or have low vision; rather, we oppose using a civil claim principally to enrich class counsel on the backs of persons with disabilities instead of vindicating the rights of persons with disabilities. Settlements that bind class members must be fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2). Here, the settlement is not. The Court should reject it.

## II. INTEREST OF THE UNITED STATES

Congress authorized the Attorney General to send "any officer of the Department of Justice . . . to any State or district in the United States to attend to the interests of the United States in a suit pending in a court in the United States." 28 U.S.C. § 517. The Class Action Fairness Act of 2005 (CAFA) requires class action defendants to notify the Attorney General and state officials of proposed class action settlements, a duty that contemplates a role in the settlement-approval process for the Attorney General. 28 U.S.C. § 1715. While the CAFA notice provision does not expressly grant specific authority or impose explicit obligations upon federal or state officials, 28 U.S.C. § 1715, final approval of a proposed settlement may not be issued earlier than 90 days after such notice. The Act's legislative history shows that Congress intended the notice provision to enable public officials to "voice concerns if they believe that the class action settlement is not in the best interest of their citizens." CAFA, S. Rep. No. 109-14, at 5 (2005) (S. Rep.). Congress expected that CAFA notifications would "provide a check against

---

[1] The Settlement only compensates California Class members, as explained below, and even then to a small degree relative to the award to class counsel.

inequitable settlements" and "deter collusion between class counsel and defendants to craft settlements that do not benefit the injured parties." *Id*. at 35.

The Civil Rights Division of the Department of Justice litigates on behalf of the public interest and has relevant experience in civil activities and out-of-court resolutions bringing accessibility barriers to light and crafting appropriate remedies. The Department of Justice is statutorily tasked as the federal agency with primary responsibility for enforcing the federal law at issue in this action, Title III of the ADA and its implementing regulations. *See* 42 U.S.C. §§ 12186(b) and 12188(b); 28 C.F.R. §§ 36.502–507. The United States thus offers its views here on the inadequacy of the proposed settlement in remedying the alleged disability-based discrimination.

### III.   LEGAL STANDARD

Congress enacted CAFA to provide adequate notice of class actions to parties, promote consistent application of governing law, and establish a mechanism for class action settlements to provide "meaningful recovery to the class members" as opposed to "simply [a] transfer [of] money from corporations to class counsel." S. Rep. at 4–6; *see also Tonah v. Dow Chem. Co.*, 561 F.3d 945, 952 (9th Cir. 2009) (noting that CAFA is meant to "curb perceived abuses of the class action device"). In particular, Congress found that certain past class action settlements had harmed class members with legitimate claims, while awarding large attorneys' fees to class counsel. *See* CAFA, Pub. L. No. 109-2, 119 Stat. 4, § 2(a) (2005). Along with reforms that enabled parties to more easily bring class action suits to federal court, CAFA included a "Consumer Class Action Bill of Rights" intended "to help ensure that class actions do not hurt their intended beneficiaries[,] . . . [to] address a number of common abuses[,] . . . and to encourage greater judicial scrutiny of proposed class action settlements." S. Rep. at 30.

Before approving a class action settlement, a court must determine that "the settlement is 'fair, reasonable, and adequate,' accounting for the interests of absent class members." *Briseño v. Henderson*, 998 F.3d 1014, 1022 (9th Cir. 2021) (quoting Fed. R. Civ. P. 23(e)(2)). Federal Rule 23(e)(2), as amended in 2018, directs courts to consider if:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

        (i) the costs, risks, and delay of trial and appeal;

        (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv) any agreement required to be identified under Rule 23(e)(3); and

    (D) the proposal treats class members equitably relative to each other.

Prior to Rule 23(e)'s 2018 amendment, this Circuit provided a non-exhaustive list of considerations to determine whether a proposed class action settlement is fair, reasonable, and adequate. The consideration, known as the *Hanlon* factors, include: "[1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement." *In re California Pizza Kitchen Data Breach Litigation*, 129 F.4th 667, 674 (9th Cir. 2025). The key *Hanlon* factors are now baked into the text of Rule 23(e), and the remaining ones the Court can be consider in a Rule 23(e)(2) analysis. *Id.*

## IV.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Juan Alcazar is legally blind and uses screen-reader software to access websites. He alleges that Defendant Fashion Nova, Inc., a California-based apparel retailer, operates an online clothing website that is not accessible and that denies blind users full and equal access to its goods and services in violation of Title III of the ADA. Plaintiff brought this action in February 2020, asserting claims under Title III of the ADA, 42 U.S.C. § 12181–88, and California's Unruh Civil Rights Act, Cal. Civ. Code § 51.[2] Plaintiff seeks injunctive relief requiring changes to Fashion Nova's website on behalf of a

---

[2] The Court will be familiar with these claims. It may have been Plaintiff's first suit, but it was not his last. Plaintiff filed 15 more class action lawsuits over three months, each alleging four identical accessibility barriers for blind or visually-impaired people—word for word. *See Alcazar v. Shake Shack Inc.*, Case No. 3:20-cv-01856-VC (Mar. 16, 2020); *Alcazar v. Blaze Pizza, LLC*, Case No. 3:20-cv-01971-TSH (Mar. 20, 2020); *Alcazar v. Buck Mason, Inc.*, Case No. 4:20-cv-02012-JST (Mar. 23, 2020); *Alcazar v. Hickory Farms, LLC*, Case No. 3:20-cv-02029-JST (Mar. 23, 2020); *Alcazar v. The Halal Guys Franchise, Inc.*, Case No. 3:20-cv-02028 (Mar. 23, 2020); *Alcazar v. The Johnny Rockets Group, Inc.*,

Nationwide Class of all legally blind individuals who attempted to visit Fashion Nova's website using screen reading software during the applicable limitations period. On behalf of a California Class, consisting of the same population who reside in California, Plaintiff seeks state statutory damages.

After class certification, the litigation proceeded through discovery and motion practice. *See Motion for Final Approval of Class Action Settlement*, ECF 213 at 2-3. The parties exchanged written discovery, produced documents, and conducted depositions. *Id.* Plaintiff retained multiple experts addressing website accessibility, screen-reader compatibility, and damages. *Id.* Defendant moved to decertify the California Class, moved for summary judgment, and filed motions challenging Plaintiff's experts. *Id.* These motions were fully briefed but not adjudicated before settlement. *Id.*

After extensive mediation, the parties have agreed to settlement terms for both monetary and injunctive relief. *See Amended Settlement Agreement and Release*, ECF 200-2. Fashion Nova agreed to pay $5.15 million to a non-reversionary common fund for the California Class. *Id.* at 5. From that amount, Plaintiff seeks 25% ($1,287,500) to be paid in attorneys' fees to class counsel. *Id.* at 13. Plaintiff also seek $1,235,259.03 to be allotted to cover class counsel's costs. *Id*. The Settlement Administrator's compensation is now set at $200,000. ECF 213 at 2. Finally, Plaintiff seeks a service award of $1,000. ECF 200-2 at 13. The remaining approximately $2.43 million—less than half of Fashion Nova's payment—would be divided evenly among the California Class members who timely file a valid claim. ECF 200-2 at 5–7.

---

Case No. 3:20-cv-02018 (Mar. 23, 2020); *Alcazar v. Cajun Operating Company et al*, Case No. 3:20-cv-02158 (Mar. 30, 2020); *Alcazar v. Farmer Boys Food., Inc.*, Case No. 3:20-cv-02157 (Mar. 30, 2025); *Alcazar v. Rite Aid Corporation et al*, Case No. 4:20-cv-02588 (Apr. 14, 2020); *Alcazar v. Bubba Gump Shrimp Co. Restaurants Inc. et al*, Case No. 4:20-cv-02771 (Apr. 21, 2020); *Alcazar v. Miele, Incorporated et al*, Case No. 3:20-cv-02890 (Apr. 27, 2020); *Alcazar v. The Martin A. Katz Company, Inc. et al*, Case No. 4:20-cv-02889 (Apr. 27, 2020); *Alcazar v. Smart & Final LLC et al*, Case No. 3:20-cv-02921 (Apr. 28, 2020); *Alcazar v. Briggs & Riley Travelware, LLC*, Case No. 3:20-cv-02163 (May 8, 2020); *Alcazar v. Farmer Boys Food., Inc.*, Case No. 2:20-cv-04342 (May 13, 2020). The following year, Plaintiff returned to this Court with five more class action suits alleging the same four accessibility barriers. *See Alcazar v. VF Outdoor, LLC*, Case No. 4:21-cv-00443 (Jan. 19, 2021); *Alcazar v. Wahlburgers Franchising LLC et al*, Case No. 3:21-cv-01196 (Feb. 18, 2021); *Alcazar v. Akuranvyka USA Inc. et al*, Case No. 4:21-cv-01598 (Mar. 5, 2021); *Alcazar v. Touitou Inc.*, Case No. 4:21-cv-03591 (May 13, 2021); *Alcazar v. Rooster & Rice Franchise, LLC*, Case No. 3:21-cv-08463 (Oct. 29, 2021). Even the present suit, however, was not a novel venture for Plaintiff's counsel. Plaintiff's counsel has filed the exact same lawsuit, on behalf of repeat plaintiffs, starting from around 2019 and continuing through 2023. In total, Plaintiff's counsel has brought in excess of 500 such suits, with the vast majority ending in a non-disclosed individual settlement.

# V. ARGUMENT

## A. The Proposed Settlement Does Not Benefit Nationwide Class Members Because It Lacks Confirmation, Enforcement, or Compliance Monitoring Provisions

The proposed settlement agreement does not guarantee accessibility. Rather, the inadequacy of the proposed settlement is laid bare in the single sentence devoted to the injunctive relief secured for Nationwide Class members: "To the extent it has not already done so, Fashion Nova shall modify Fashion Nova's [w]ebsite as needed to achieve substantial conformance with WCAG 2.1 ("Injunctive Measures")." *See* ECF 200-2, Paragraph 2.1. This injunctive relief does not ensure "that Fashion Nova takes concrete steps" to make its website accessible, despite Plaintiff's assertions. *See* ECF 210, at 1.

The proposed settlement lacks any mechanism for compliance monitoring or enforcement. For example, although Fashion Nova is required to adopt and implement a Website Accessibility Policy consistent with the commitment to make its website accessible, there is no mechanism for the class to review the policy. Instead, the agreement expressly states that Plaintiff or class counsel's approval of the Website Accessibility Policy is not required. *See* ECF No. 200-2, Paragraph 2.2.

In the proposed agreement, Plaintiff also makes no commitment to confirm or monitor Fashion Nova's compliance with its duty to make its website accessible, nor is Defendant required to engage third-party or user testing to monitor compliance. At best, class counsel has reserved for themselves that they may perform, at their own cost and expense, an accessibility audit of Fashion Nova's website. *See* ECF No. 200-2, Paragraph 2.2.2. That the only provision devoted to class counsel reviewing Fashion Nova's website to confirm compliance with the terms of the settlement is purely optional, expressly places the expense of such a review on class counsel, and lacks any enforcement mechanism before this Court if Fashion Nova's website is not accessible, falls well short of providing Nationwide Class members with "lasting, forward-looking protections," as asserted by Plaintiff. *Id.* at 3. If class counsel conducts such an optional review, they are required only to provide Fashion Nova with a copy of the audit, and the parties commit to meet and confer in good faith. *See id.* at Paragraph 2.2.2. This provides for no meaningful or effective enforcement. And importantly, by the terms of the settlement, class counsel's option to perform such a voluntary compliance audit appears to have expired on December 14, 2025, as Plaintiff was required to provide the noted audit at least 60 days in advance of the Final Approval Hearing, currently

set for February 12, 2026.  *Id.*  In Plaintiff's December 12, 2025, Motion for Final Approval of Class Action Settlement, Plaintiff repeated the "value to the Classes" of the Website Accessibility Policy and class counsel's right to conduct compliance audits—a right that it appears class counsel failed to timely exercise and which is now foreclosed.  ECF 213 at 18–19.

   While Plaintiff is correct that injunctive relief, alone, can be deemed fair because Title III of the ADA does not provide for money damages for private plaintiffs, the quality of that injunctive relief is all that the non-California plaintiffs will realize.  ECF 213 at 11; 42 U.S.C. § 12188(a).  Plaintiff mischaracterizes *Murphy v. Le Sportsac, Inc.*, 2023 WL 375903 (W.D. Pa. 2023), and *Murphy v. Eyebobs, LLC*, 638 F.Supp.3d 463 (W.D. Pa. 2021), as securing the "type of injunctive relief" Plaintiff has obtained in the proposed settlement.  ECF 213 at 11.  Those resolutions stand in stark relief to what is proposed in this action.  Both the *Le Sportsac* and *Eyebobs* settlements established robust injunctive relief well beyond a generic, unenforceable commitment to comply with the law.  Each agreement included, among other things, appointment of one or more employees to coordinate accessibility, adoption and posting of an accessibility policy statement, implementation of an accessibility strategy, training of appropriate staff, real-time accessibility support to individuals with disabilities during business hours, retention of an accessibility consultant to perform regular accessibility audits and end-user accessibility testing, verification of website accessibility, monitoring of compliance, and annual reports.  *Le Sportsac*, 2023 WL 375093, *5; *Le Sportsac*, Case No. 1:22-cv-00058, ECF 36-1 at 7-13 (W.D. Pa., Dec. 5, 2022); *Eyebobs*, 638 F.Supp.3d at 477; *Eyebobs*, Case No. 1:21-cv-00017, ECF 30-1, at 10-17 (W.D. Pa., Sep. 4, 2021).

   The Department of Justice has also routinely crafted meaningful injunctive relief to remedy statutory violations of Title III.  For example, on July 19, 2010, the court entered a comprehensive Consent Decree in *United States v. QuikTrip Corporation*, Case No. 8:10-cv-262 (D. Neb.), that provided the court and the Department with confidence that the public would have full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations provided by and through QuikTrip's website.  The terms reached with QuikTrip were substantially similar to the settlements in *Le Sportsac* and *Eyebobs*.  And the Department has repeatedly entered into settlement agreements with similar terms to ensure that websites and mobile applications provide the public with full and equal enjoyment of the

goods, services, facilities, privileges, advantages, and accommodations of places of public accommodation. *See Disability Rights Cases*, U.S. Department of Justice, https://www.justice.gov/crt/disability-rights-cases. As part of a settlement of a civil claim such as this, effective enforcement and compliance monitoring provisions are necessary. Plaintiff has incorporated neither.

**B.    The Class Website for California Class Members Was Not Accessible to Individuals with Vision Disabilities**

The proposed settlement was also inadequate in serving the interests of California Class members, because of significant inaccessibility of the Class Website, www.fashionnovaaccessibilitysettlement.com, established by the Settlement Administrator. The United States contracted with Terri Youngblood Savage, of Accessible Systems, Inc., to evaluate the accessibility of the Class Website in September 2025, during the claims period. *See* Declaration of Terri Youngblood Savage, Exhibit 1. Ms. Youngblood used the same screen-reading software, JAWS and iOS Voice Over, that were the basis of Plaintiff's February 2020 complaint. Ms. Youngblood is a Senior Subject Matter Expert, with 30 years' experience in the accessibility industry, including software and web accessibility. Ms. Youngblood found significant barriers to access, each of which would inhibit an eligible claimant from filing a successful claim.

The ADA's general nondiscrimination and auxiliary aids and services provisions of Title III apply to web accessibility for places of public accommodation. *See* 42 U.S.C. § 12182(a); 28 C.F.R. §§ 36.201, 36.303(c). Businesses can choose how they will ensure that the programs, services, and goods they provide online are accessible to people with disabilities. Because the proposed Settlement Agreement commits Fashion Nova to achieving substantial conformance with WCAG 2.1,[3] the analysis below explains how the Class Website—created to benefit the same population harmed by Fashion Nova's alleged inaccessibility—fails to conform to that selected standard.[4]

---

[3] *Web Content Accessibility Guidelines 2.1*, W3C World Wide Web Consortium Recommendation 06 May 2025 (https://www.w3.org/TR/2025/REC-WCAG21-20250506, Latest version at https://www.w3.org/TR/WCAG21/).

[4] The United States does not endorse WCAG as the appropriate or necessary standard for the provision of auxiliary aids and services under Title III of the ADA. We merely apply the standard that Plaintiff has elected in the proposed settlement to the claims administration website for that same settlement.

### 1. Elements of the Class Website Had Missing or Low-Color Contrast Visual Focus Indicators

The Class Website required a user to navigate to a red button with the words "Submit Claim" to start the claims process. *See* Youngblood Declaration, Para. 8. Some users with vision disabilities resulting in low vision cannot use a mouse and instead use a keyboard to navigate websites, advancing with the Tab key from one item (like a button, link, or form field) to the next. *Id*. For these users, a keyboard focus indicator is necessary to let them visually determine the component on which keyboard operations will interact at any point in time. *Id*. But there was no focus indicator on the Class Website. *Id*. Without a focus indicator, these low-sighted keyboard users could not locate the "Submit Claim" button. *Id*. As an alternative, at the top of the screen there were tabs reading "Home," "Important Dates," Court Documents," "Contact Us," and "Submit Claim." *See* Youngblood Declaration, Para. 9. Here, there was a visual focus indicator (a box around each option), but the color contrast ratio of the focus indicator against the white background was too low. *Id*. Some people with vision disabilities cannot see elements with low color contrast. *Id*. Rather than having the necessary 3:1 contrast ratio against the white background, it was only 1.4:1. *Id*.

### 2. Critical Elements of the Claim Form Were Inaccessible to Individuals Using Screen Readers

To submit a successful claim, a California Class member was required to answer three Yes/No questions. *See* Youngblood Declaration, Para. 10. The first question was "Are you legally blind?" *Id*. The radio button for "No" was pre-selected, and the claimant needed to change this answer to "Yes." *Id*. The same was necessary for the second and third questions, related to the claimant's history of visiting the Fashion Nova website. *Id*. All form labels (in this case, each question) must be programmatically associated with the form controls (in this case, radio buttons). *Id*. On the Class Website the form labels and form controls were not programmatically associated. *Id*. For a blind claimant using a screen reader, the question "Are you legally blind?" would not have been read aloud. *Id*. They were simply told their options were "Yes" or "No," and they would have to guess the question. *Id*. The result is California Class members could have abandoned the form, or completed it incorrectly, exempting them from inclusion in the fund and fair compensation. *Id*.

A second source of confusion on the claims page was a hidden checkbox that appeared near the "Attestation and Signature" portion of the page. *See* Youngblood Declaration, Para. 11. The checkbox did not appear visually and selecting it was not required. *Id*. But for blind users, the checkbox was announced, but again with no programmatic association. *Id*. This, too, could have resulted in confusion and possible abandonment of the form. *Id*.

Third, when navigating the claims form using a screen reader, a blind user heard two "Submit" buttons. *See* Youngblood Declaration, Para. 12. A sighted user of the claims form only saw one button. *Id*. Only one of the "Submit" buttons announced by a screen reader submitted the form; the other did not. *Id*. Therefore, a blind claimant could have selected the wrong button, and incorrectly assumed their form was submitted. *Id*.

Finally, if the claims form is submitted with errors in the form, an error in red displayed, reading:

<div style="color:red; text-align:center">Required.</div>

<div style="color:red; text-align:center">Required.</div>

<div style="color:red; text-align:center">There were errors in how the form was filled out. Please fix and re-submit.</div>

*See* Youngblood Declaration, Para. 13. This error, however, was not automatically read to a blind person. *Id*. An accessible form should automatically announce that the form was not submitted due to errors being found. *Id*. Without the automatic announcement, a claimant could think that their form was accepted when it was not. *Id*.

These significant barriers to access introduce equally or more significant confusion and repetition than the barriers alleged in Plaintiff's class action. *See* ECF No. 1, Paras. 26(b)–(c).

### 3. Accessing "Important Documents" Was Inhibited by Incorrect or Vague Alternative Text

Under a tab for "Court Documents," users could access copies of five documents: the Complaint, Settlement Agreement, Long Form Notice, Claim Form, and Opt Out Form. *See* Youngblood Declaration, Para. 14. For each document, there were two icons, with the first icon to download the document, and the second icon to open the document in a new browser window. *Id*. That is not how these icons were labeled with text alternative ("alt-text"). *Id*. Alt-text is text that is programmatically associated with non-text content, such as an image or icon, that is read aloud to a person using a screen reader to understand what

the image or icon is. *Id*. For example, for both icons associated with the settlement agreement the alt-text read "open settlement agreement" to blind users. *Id*. The alt text should have read "download the settlement agreement" and "open the settlement agreement in a browser window," respectively. *Id*. The result of this incorrect alt-text is that for the first icon a user would not understand that they downloaded the document, and instead believe they had opened it in their browser. *Id*.

## VI. CONCLUSION

Based on concern that the proposed injunctive relief for class members is not meaningful—it is a mere recitation of the obligation to make visually delivered materials available to individuals who are blind or low vision with no confirmation or enforcement mechanism—the United States objects to the proposed settlement agreement. Though the common settlement fund would secure monetary relief for the California Class, the Class Website failed to serve the accessibility needs of California Class members to obtain relief. These failings do not support the award of significant attorneys' fees. The court should reject the unfair, unreasonable, and inadequate proposed settlement.

Respectfully submitted this 2nd day of February, 2026.

| | |
|---|---|
| CRAIG H. MISSAKIAN<br>United States Attorney<br>Northern District of California | HARMEET K. DHILLON<br>Assistant Attorney General<br>Civil Rights Division |
| MICHAEL A. KEOUGH<br>Assistant United States Attorney<br>U.S. Attorney's Office<br>Northern District of California<br>1301 Clay Street, Suite 340S<br>Oakland, California 94612-5217<br>Telephone: (510) 637-3721<br>Facsimile: (510) 637-3724<br>michael.keough@usdoj.gov | R. JONAS A. GEISSLER<br>Deputy Assistant Attorney General<br>Civil Rights Division<br><br>/s/ David W. Knight<br>KEVIN J. KIJEWSKI<br>Deputy Chief<br>DAVID W. KNGIHT<br>Trial Attorney<br>Disability Rights Section<br>Civil Rights Division<br>U.S. Department of Justice<br>950 Pennsylvania Ave., N.W. - 4CON<br>Washington, DC 20530<br>Telephone: (202) 305-5361<br>david.knight@usdoj.gov |