Thiago M. Coelho, SBN 324715
*thiago@wilshirelawfirm.com*
Jennifer M. Leinbach, SBN 281404
*jleinbach@wilshirelawfirm.com*
Jesenia A. Martinez, SBN 316969
*jesenia.martinez@wilshirelawfirm.com*
Jesse S. Chen, SBN 336294
*jchen@wilshirelawfirm.com*
**WILSHIRE LAW FIRM, PLC**
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

*Attorneys for Plaintiff Juan Alcazar and the
Nationwide and California Classes*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN ALCAZAR, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FASHION NOVA, INC., a California corporation; and DOES 1 to 10, inclusive,<br><br>Defendants. | Case No.: 4:20-cv-01434-JST<br><br>*Hon. Jon S. Tigar*<br><br>**PLAINTIFF'S RESPONSE TO STATEMENT OF INTEREST OF THE UNITED STATES**<br><br>Complaint Filed:  February 26, 2020<br>Trial Date:        None |

## I.      INTRODUCTION

Plaintiff Juan Alcazar ("Plaintiff") respectfully disagrees with the United States Department of Justices' (the "DOJ") assessment of the Settlement. ECF No. 214 (the "Statement"), *see also* ECF No. 200-2.[1] The Settlement provides an excellent recovery to the Settlement Classes. As a direct result of the Settlement, Defendant Fashion Nova, Inc. ("Defendant") has implemented a sweeping range of accessibility improvements to its website to resolve the alleged violations of Title III of the Americans with Disabilities Act (the "ADA") and California's Unruh Civil Rights Act that gave rise to this action. Those improvements fully and directly resolve the DOJ's enforcement and compliance concerns. Furthermore, the Settlement, once approved, will provide the 5,838 California Sub-Class Members that submitted valid claims with monetary compensation. This demonstrates both that the Settlement Website was accessible to Settlement Class Members and that the relief provided by the Settlement is meaningful and substantial. Plaintiff responds to each of the DOJ's arguments below:

First, the Settlement provides for substantial and meaningful injunctive relief by requiring that Defendant implement website accessibility policies and bring its website in substantial compliance with the WCAG 2.1 guidelines. Far from lacking teeth, that is a legal obligation that will be enforceable by Plaintiff, its counsel, and the Court, upon Court approval.  Indeed, since the Settlement was finalized, Defendant has implemented, inter alia, the following: (1) multiple enhancements to the website designed to improve accessibility consistent with WCAG 2.1, (2) the retention of accessibility consultant Deque Systems, who have been engaged to implement a company-wide accessibility strategy with an aim towards site-wide compliance with WCAG level 2.1 or better and to conduct periodic accessibility audits and end-user screen reader accessibility testing, (3) the development of a plugin tool to help ensure continued website accessibility at the development stage, (4) employee accessibility training, (5) the designation of two employees to coordinate with Deque to implement aforementioned accessibility efforts, (6) the posting of a

---

[1] All capitalized terms, unless stated otherwise, shall have the same meaning as defined in the Amended Settlement Agreement and Release.

PLAINTIFF'S RESPONSE TO STATEMENT OF INTEREST OF THE UNITED STATES

public-facing "Accessibility Policy" on the Fashion Nova website, and (7) the implementation of a publicly-available contact email that will allow customers to contact Fashion Nova to quickly address any accessibility issue that they may encounter. Declaration of Jennifer M. Leinbach in Support of Plaintiff's Response to Statement of Interest to the United States ("Leinbach Decl."), ¶¶3-5. These extensive and substantial accessibility improvements, implemented in compliance with the Settlement, address and satisfy each form of injunctive relief listed as a concern in the DOJ's Statement. *Id.*; see also Statement at 6-8.

*Second*, the Settlement Website was fully accessible to screen reader users during the Claim Period. This is readily apparent by the over 10,000 valid claims,5,838 of which were made by California Sub-Class Members, that legally blind Class Members made during the notice period. *See* Declaration of Trevor Jones on Behalf of Settlement Administrator ("Jones Decl."), ¶¶7. The alleged accessibility issues raised by the DOJ's Statement either did not exist or otherwise did not impact Class Members. The Settlement Website had a functioning Visual Focus Indicator and legally blind screen reader users do not require a color contrast visual indicator. *See* Declaration of Trevor Jones on Behalf of Settlement Administrator ("Jones Decl."), ¶¶9-10. Additionally, the Claim Form properly announced all questions and allowed users to select all options without confusion. *Id.*, ¶¶11-14. Finally, the alt-text used on the Settlement Website did not confuse class members, as screen readers correctly announced each action taken on the website. *Id.*, ¶15.

*Last*, the Settlement is the result of half a decade of hard-fought litigation by Plaintiff and Class Counsel and, to Class Counsel's knowledge, constitutes the second-highest ADA civil rights website settlement in history. It not only ensures that the Fashion Nova website will be accessible to legally-blind individuals such as Plaintiff going forward, but also provides for actual, monetary relief to 5,838 California Sub-Class Members. Contrary to harming Settlement Class Members, the Settlement provides an exceptional recovery. This Court is not required to follow the DOJ's recommendation and should not do so here in light of this excellent result. In fact, many other courts have granted final approval of class action settlements where similar DOJ statements were submitted. *See, e.g.*, *In re Dial Complete Mktg. and Sales Prac. Litig.,* Case No.

2

PLAINTIFF'S RESPONSE TO STATEMENT OF INTEREST OF THE UNITED STATES

1:11-md-02263 (D. N.H., August 18, 2011), ECF Nos. 252 (DOJ statement of interest filed); 260 (granting final approval and requested attorney's fee award despite DOJ statement recommending otherwise); *Chapman v. Tristar Prods., Inc.,* No. 16-CV-1114, 2018 WL 3752228, at *12 (N.D. Ohio Aug. 3, 2018) (same); *Nosalek v. MLS Prop. Info. Network, inc., et al.,* Case No. 1:20CV12244 (D. Mass. December 17, 2020), ECF Nos. 290 (DOJ statement of interest filed); 402 (granting final approval); 403 (granting fee motion). So too here. Final approval of the Settlement and Plaintiff's fee request should be granted.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a legally blind individual that relies on screen reading software to navigate the internet. Plaintiff brought suit against Defendant alleging that its website, www.fashionnova.com (the "Website") was not properly coded for screen readers and thus not accessible to the legally blind.

The Settlement now sought to be finally approved by Plaintiff is the result of five years of hard-fought litigation, extensive discovery and motion practice and arm's length negotiations that culminated in both parties accepting a mediator's proposal by the Honorable Amy D. Hogue (Ret.), a highly experienced complex class action mediator.

The Court granted preliminary approval of the Settlement on May 14, 2025. *See* ECF No. 203. In doing so the Court approved Plaintiff's notice program and found that the Settlement was likely to result in a fair, reasonable and adequate recovery for the Settlement Classes. Subsequently, Plaintiff's counsel and the Settlement Administrator, CPT Group, Inc. ("CPT") carried out the notice program. Plaintiff moved for an award of attorneys' fees and expenses on September 11, 2026 (ECF No. 210) and for final approval of the Settlement on December 12, 2025 (ECF No. 213).

The class reaction further supports the reasonableness of the benchmark request because, to date, no class member has objected and only one California class member opted out.[2] *See* ECF

---

[2] One California Class Member chose to opt out, but not in response to the Settlement. Instead, that Class Member contacted Class Counsel to request exclusion after receiving notice that a class had been certified in this action. *See* ECF Nos. 121, 121-01.

PLAINTIFF'S RESPONSE TO STATEMENT OF INTEREST OF THE UNITED STATES

No. 213-4, ¶16. Additionally, 10,321 valid claims, including 5,843 California claims, were made. *Id*. at ¶15.

Despite this overwhelmingly positive response to the Settlement by the legally blind community, the DOJ filed a Statement of Interest on February 2, 2026 recommending that the Court deny final approval. *See* ECF No. 214 (the "Statement"). For the foregoing reasons, the Court should reject the United States' arguments and grant final approval of the Settlement.

III.   ARGUMENT

**A. As a Direct Result of the Settlement, Defendant Has Implemented All of the Accessibility Measures Raised by the DOJ**

The Settlement Agreement requires Defendant to implement remedial measures to ensure that its Website is in substantial compliance with the WCAG 2.1 standards, including the implementation of a WCAG-compliant website accessibility policy. ECF No. 200-2, §2. The value created by this injunctive relief is substantial: it will cost Defendant an estimated $60,000 to implement initially and $42,000 annually to maintain. ECF No. 213-2, ¶13.

The DOJ's suggestion that the Settlement lacks meaningful, programmatic safeguards because it does not expressly require recurring third-party audits, end-user testing, or designated accessibility personnel (Statement at p.7) is incorrect. Once approved, the Settlement will be enforceable in the event Defendant fails to ensure the continued accessibility of its website.

Indeed, Defendant has already begun implementing these very measures as part of its ongoing WCAG conformance efforts. Leinbach Decl. ¶¶3-5.[3] Consistent with the Settlement Agreement's authorization for Defendant to consult a Website Accessibility Resource, Defendant has retained Deque Systems, Inc. ("Deque") to audit the Website for accessibility, provide remediation recommendations, and support Defendant's active accessibility work through continued accessibility updates to the Website with an aim to voluntarily achieve compliance with

---

[3] Class Counsel met and conferred with counsel for Defendant prior to filing this Statement. Counsel for Defendant confirmed the below information to Class Counsel and has reviewed this Section III.A on Plaintiff's Response. Leinbach Decl., ¶2. Defendant will join Plaintiff and Class Counsel in their response to the DOJ's Statement as to this Section III.A only. *Id.* Defendant has represented to Class Counsel that they will file a separate declaration attesting to the same and confirming Defendant's post-Settlement accessibility implementations. *Id.*

4

PLAINTIFF'S RESPONSE TO STATEMENT OF INTEREST OF THE UNITED STATES

WCAG 2.2, which is a further improved standard to the WCAG 2.1 standard required by the Settlement. *Id.* ¶3; *see also* ECF No. 200-2, §2.

Deque's engagement is ongoing and includes follow-up assessments—such as periodic accessibility audits and end-user screen-reader accessibility testing—and active improvement of any accessibility hurdles identified through those assessments. Leinbach Decl., ¶4. Defendant has also appointed two internal employees to coordinate and interface with Deque, is in the process of deploying development-stage tools to help detect and prevent accessibility hurdles, and is receiving Deque-provided training and developer-maintenance guidance aligned with current WCAG best practices (including WCAG 2.2). *Id.* ¶4. Finally, Defendant has posted a public-facing accessibility policy and has provided a dedicated contact email address for users to report accessibility issues so they can be addressed promptly. *Id.*

Put simply, and as a direct result of the Settlement, Defendant has implemented each and every one of the injunctive relief provisions that the DOJ's Statement expressed concern about. Leinbach Decl., ¶5. Fashion Nova is voluntarily seeking compliance with the WCAG 2.2 standard instead of the WCAG 2.1 standard set forth by the Settlement (WCAG 2.2 is an improvement upon 2.1), and therefore will meet more updated accessibility standards than what the DOJ has required from its own accessibility settlements. *See id.; see also* Declaration of Thiago M. Coelho in Support of Plaintiff's Response to Statement of Interest of the United States ("Coelho Decl.") ¶¶3-5, Ex. 1-3 (requiring conformance with WCAG 2.0).

Furthermore, even if Defendant had not done so, Rule 23 does not require this Settlement to mirror the most prescriptive injunctive terms found in other agreements in order to provide fair, reasonable, and adequate relief. Courts have approved ADA website accessibility settlements without requiring specific personnel appointments or rigid audit schedules so long as the settlement secures a concrete, forward-looking commitment to bring the website into compliance with WCAG. *See, e.g., Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365, 385-86 (E.D.N.Y. 2017) (approving ADA website accessibility settlement requiring defendant to bring its website into compliance with WCAG 2.0 guidelines without provisions for specific appointments or audit schedules).

5

PLAINTIFF'S RESPONSE TO STATEMENT OF INTEREST OF THE UNITED STATES

The DOJ's past disability rights resolutions further confirm there is no single required template for website accessibility injunctive relief, and that DOJ resolutions have included website provisions focused primarily on achieving WCAG conformance, without separately imposing an ongoing independent audit or user testing cadence within the website term itself. For example, in *The United States of America v. Hilton Worldwide, Inc.*, Civil Action No. 101924 (D.D.C. 2010), the court issued a Consent Decree which merely required that Hilton's primary domain and brand websites to comply with WCAG 2.0 Level A by a set deadline (excluding third party advertising and linked domains) and which only required DOJ notification, a cure period, and alternative dispute resolution for enforcement. Coelho Decl.  ¶3, Ex. 1. It did not require a recurring independent audit or user testing program, nor did it include monetary relief for legally blind individuals. *Id.*

Similarly, the settlement agreement entered into by the DOJ and the Carnival Corporation in *The United States of America v. Carnival Corp.*, DJ No. 202-17M-206, Civil Action No. 13-0472-CG-C (S.D. Ala. 2014) only required Carnival's websites to reach conformance with WCAG 2.0 Level A and AA within 18 months and to add an accessibility policy and appoint ADA officers. *Id., ¶4,* Ex. 2. It did not require ongoing accessibility testing with a specified cadence and a defined end user testing group and did not include monetary relief for legally blind individuals. *Id.* Likewise, the settlement agreement entered into by the DOJ and Newsum, Inc., DJ No. 202-15-190 (2013), only required that Newseum's website's visual and audio content conform to WCAG 2.0 Level A and AA by an overall remedial deadline, and did not lay out a recurring testing and verification schedule for the website term. *Id.*, Ex. 3. It too did not include monetary relief for legally blind individuals. *Id*.

Regardless, here Defendant *has* implemented every single from of injunctive relief that the DOJ's Statement raised concerns about. Even before the DOJ's filing, Defendant took steps to enhance the accessibility of its website, retained an accessibility consultant to conduct regular accessibility audits and end-user accessibility testing, appointed accessibility employees, adopted and posted an accessibility policy statement, implemented an accessibility strategy, begun accessibility training for its staff, and created a means for users to contact it to immediately

6

PLAINTIFF'S RESPONSE TO STATEMENT OF INTEREST OF THE UNITED STATES

remediate accessibility issues. Leinbach Decl., ¶¶3-5. These meaningful and substantial accessibility improvements, earned as a direct result of and incompliance with the Settlement, resolve the DOJ's concerns and are in line with those approved in *Murphy v. Le Sportsac, Inc.*, 2023 WL 375903 (W.D. Pa. 2023) and *Murphy v. Eyebobs, LLC*, 638 F.Supp.3d 463 (W.D. Pa. 2021).

### B.  The Settlement Website is Fully Accessible

Next, the DOJ contends that the Settlement Website was not accessible to screen reader users during the notice period. As an initial matter, the fact that 10,321 valid claims, including 5,838 valid California claims, were submitted by legally blind Settlement Class Members during the claims period demonstrates that the Settlement Website was in fact fully accessible and is sufficient to rebut this argument alone. Prior to the start of the Notice Program, and the Settlement Website going live, Class Counsel spoke with CPT to ensure that the Settlement Website would be accessible to Settlement Class Members. Leinbach Decl., ¶6. Specifically, class counsel and CPT conferred on May 30, 2025 regarding the Settlement Website's screen reader compatibility. *Id*. On June 2, 2025, CPT confirmed that the Settlement Website was fully accessible. *Id*. CPT did a quality control check on accessibility by implementing a multi-layered accessibility approach to the Settlement Website that integrated a comprehensive accessibility suite and included quality assurance testing and independent accessibility audits. Jones Decl., ¶5. Nevertheless, Plaintiff addresses each of the DOJ's accessibility arguments as follows:

*First*, the DOJ contends that the Settlement Website lacked a visual focus indicator or low-color contrast focus indicators that could have assisted low-sighted individuals in locating the "Submit Claim" button. Statement at p. 9. This is incorrect, as the Settlement Website provided a clear visual focus indicator once a screen reader user navigated to the "Submit" button. *Id.*, ¶7. Further, whether the Settlement Website provided these indicators is immaterial, as whether the Settlement Website lacked such indicators would not and did not substantially impact Settlement Class Members, who are screen-reader users that rely on auditory navigation cues, not visual ones. *See id.*, ¶¶7-8.

PLAINTIFF'S RESPONSE TO STATEMENT OF INTEREST OF THE UNITED STATES

*Second*, the DOJ contends that certain elements of the Claim Form, such as certain claim form questions, a checkbox near the Attestation and Signature portion of the form, the presence of two submit buttons, and the inability for claim form errors to be read by screen readers, created accessibility issues for screen reader users. Statement at p. 9-10. The DOJ is incorrect as to each of these alleged barriers. The necessary claim form questions were properly announced to screen reader users and were programmed under the standard WCAG 2.1, 1.31 implementation method. *Id.*, ¶9. The Attestation and Signature checkbox had no functional impact on claim submission and did not affect a user's ability to navigate or submit a claim form. *Id.*, ¶10. Both Submit buttons on the Claim Form functioned correctly and allowed claims to be submitted regardless of which was pressed. *Id.*, ¶11. Finally, if a claim form was submitted with an error, a user's screen reader would return to the top of the form and read the entire text of the page, including the error messages. *Id.*, ¶12.

*Last*, the DOJ contends that the Complaint, Amended Settlement Agreement, Long Form Notice, Claim Form and Opt Out Form lacked proper alt-text, such as reading open settlement agreement rather than download settlement agreement when accessing the download icon. Statement at p. 10. While the alt text for the download icon read not read download settlement agreement, this did not inhibit its functionality. When a screen reader user selected the download icon, the document would download and the screen reader would correctly announce that the document had been downloaded. *Id.*, ¶13. Screen reader users would thus have been fully alerted as to what selecting the download icon did. *Id*.

**C. Plaintiff and Class Counsel Have Achieved an Excellent Recovery for the Class**

After half a decade of hard-fought litigation, Plaintiff and Class Counsel have successfully negotiated a Settlement that provides for substantial and meaningful recovery for the Settlement Classes. While the DOJ cites Plaintiff and Class Counsel's ADA litigation history to aver that they are merely opportunistic serial litigants (Statement at p.4 n.2), this implication is improper and misplaced. *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2008) (holding that "[t]he attempted use of past litigation to prevent a litigant from pursuing a valid

8

PLAINTIFF'S RESPONSE TO STATEMENT OF INTEREST OF THE UNITED STATES

claim in federal court warrants our most careful scrutiny" and as such, "we must be particularly cautious about affirming credibility determinations that rely on a plaintiff's past ADA litigation."). In fact, both the California Supreme Court and the Ninth Circuit have "made clear that a plaintiff's motivation is irrelevant to his ability to recover" under the ADA and Unruh Act. *Gilbert v. 7-Eleven, Inc.*, 157 F.4th 1057, 1066-67 (9th Cir. 2025). Additionally, Wilshire Law Firm, PLC employs over 100 attorneys and has filed and litigated not just hundreds of ADA actions, but also hundreds of personal injury, employment, and consumers actions as well. Coelho Decl., ¶10. Put simply, Plaintiff conducts a public service and is entitled to be represented by his counsel of choice in those endeavors. Neither his nor Class Counsel's litigation history provides a basis to attack the quality of the Settlement here.

As detailed in Class Counsel's Motion for Attorneys' Fees and Costs (ECF No. 210), the requested cost reimbursement is reasonable and reflects the actual out of pocket litigation expenses that were necessary to achieve the Settlement. Class Counsel maintained expense records in the ordinary course, reviewed the time and expense entries and supporting documentation for accuracy and reasonableness, made reductions in the exercise of billing judgment, and excluded all time spent preparing the fee and expense application. The $1,230,102.19 in expenses they seek is also below the cap disclosed in the class notice. These expenses were driven primarily by the expert intensive work required to establish and defend classwide statutory damages and to prosecute the case through discovery, class certification, and the subsequent dispositive and decertification challenges. For example, $1,121,145.92 was incurred for experts, consultants, translators, and investigators, including Dr. Jon Krosnick and supporting teams to design and field an accessible bilingual survey using probability-based panel methodology, extensive cognitive and accessibility pretesting, and weighting to benchmark data so that the Court could evaluate classwide access barriers in statutory damages units. This expert work provided Plaintiff with the necessary leverage to obtain the excellent settlement for the Classes. The remaining costs were the types routinely billed to paying clients in complex litigation, including court reporting and deposition expenses ($34,164.25), class notice administration ($43,841.99), mediation fees ($7,950.00), and legal and online research ($21,508.85), plus modest

9

filing, service, travel, and delivery costs. In short, the costs were reasonable in amount, necessary to build the evidentiary record and litigate the case through the key merits and class issues, and instrumental in securing the substantial nonreversionary recovery and injunctive relief.

The DOJ's observation that a portion of the $5.15 million common fund will be used for attorneys' fees (Statement at p. 5), does not render the fee request unreasonable or disproportionate. Class Counsel seeks only the benchmark fee of 25 percent of the common fund, and the lodestar cross check confirms the request is conservative rather than a windfall. Class Counsel devoted 2,185.82 hours to this litigation, yielding a lodestar of $1,729,284 at current rates, so the requested $1,287,500 fee represents a negative multiplier of approximately 0.74. This benchmark request reasonably compensates counsel for prosecuting a procedurally and substantively complex ADA and Unruh class action for more than four years on a purely contingent basis through class certification, extensive discovery and expert work, and high stakes motion practice, while facing substantial risks from summary judgment, decertification and expert admissibility challenges, and while litigating against well resourced, top tier defense counsel. The result achieved for the California Class is excellent: the settlement secures a $5.15 million nonreversionary cash fund. To Class Counsel's knowledge, this makes the Settlement the second highest ADA civil rights website settlement to date in history. Coelho Decl., ¶7.

Further, while the DOJ notes that it has routinely crafted settlement agreements providing meaningful relief to disabled individuals (Statement at 7), Plaintiff is not aware of any DOJ-negotiated ADA accessibility settlement that provided for monetary relief to legally blind individuals. By contrast, the Settlement that Plaintiff has secured will provide not only a WCAG-compliant Fashion Nova Website to all, but also monetary compensation of up to $4,000 each to 5,838 California Sub-Class Members. That is meaningful relief to the Settlement Class. Final approval should be granted.

## IV.   CONCLUSION

For the foregoing reasons, as well as the reasons set forth in Plaintiffs' Motion for Attorneys' Fees and Costs (ECF No. 210) and Motion for Final Approval (ECF No. 213), the Court should grant final approval of the settlement.

PLAINTIFF'S RESPONSE TO STATEMENT OF INTEREST OF THE UNITED STATES

Dated:  February 9, 2026

Respectfully submitted,

By:  /s/ Thiago M. Coelho

Thiago M. Coelho
**WILSHIRE LAW FIRM, PLC**
*Attorneys for Plaintiff Juan Alcazar and the Nationwide and California Classes*

11

PLAINTIFF'S RESPONSE TO STATEMENT OF INTEREST OF THE UNITED STATES